**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

Stragent, LLC, et al.,

    *Plaintiffs*,

    v.

Intel Corporation,

    *Defendant*.

Case No. 6:11-cv-421

**ORDER AND OPINION ADOPTING REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE REGARDING LACK OF STANDING**

Before the court are co-plaintiffs Stragent, LLC's ("Stragent") and TAG Foundation's

("TAG") (collectively, "plaintiffs") Objections to the Report and Recommendation of the

Magistrate Judge to Dismiss Co-Plaintiff TAG Foundation for Lack of Standing, Feb. 25, 2014,

ECF No. 268 ("Pls.' Objections"), as well as defendant Intel Corp.'s ("Intel") response. Having

fully considered the plaintiffs' arguments, the court **ADOPTS** the magistrate judge's report and

recommendation that Intel's Motion to Dismiss for Lack of Standing, May 1, 2013, ECF No. 102

("Mot. to Dismiss"), be **GRANTED WITHOUT PREJUDICE.**

**BACKGROUND**

Prior to March 2010, Stragent owned U.S. Patent Nos. 6,848,072 ("the '072 Patent") and

7,028,244 ("the '244 Patent") (collectively, "asserted patents"). On March 18, 2010, Stragent

assigned these patents to the SeeSaw Foundation, now known as TAG. Mot. to Dismiss Ex. 1

("assignment"). Shortly thereafter, on April 22, 2010, Stragent and TAG executed an Exclusive

Patent License Agreement, Mot. to Dismiss Ex. 2 ("EPLA"), whereby TAG granted to Stragent a

1

worldwide, transferable, exclusive license under the [asserted patents] with the right to sublicense others, to (i) make, have made, use, sell, offer to sell, import and lease any products, (ii) use and perform any method, process, and/or services, and (iii) otherwise practice any invention in any manner, such that Stragent has full right to enforce and/or sublicense the [asserted patents] without any restriction, subject to the [listed] encumbrances.

EPLA § 2.1. On August 10, 2011, plaintiffs filed this lawsuit, alleging, *inter alia*, that Intel infringes the asserted patents. On May 1, 2013, Intel filed a motion to dismiss TAG as a co-plaintiff, arguing that TAG lacked constitutional standing to bring the instant suit because TAG transferred all substantial rights in the asserted patents to Stragent in the EPLA. On January 29, 2014, the magistrate judge issued a report recommending the court grant Intel's motion to dismiss TAG for lack of standing without prejudice. The plaintiffs filed objections to this report on February 25, 2014, and the defendant responded on February 28, 2014.

## DISCUSSION

"A patent owner may transfer all substantial rights in the patents-in-suit, in which case the transfer is tantamount to an assignment of those patents to the exclusive licensee, conferring standing to sue solely on the licensee." *Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1358-59 (Fed. Cir. 2010) (citing *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SpA*, 944 F.2d 870, 873-74 (Fed. Cir. 1991)); *see Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1189 (Fed. Cir. 2007); *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed. Cir. 2000).

In *Mann*, the Federal Circuit explained that while its decisions "have never purported to establish a complete list of the rights whose holders must be examined to determine whether a licensor has transferred away sufficient rights to render an exclusive licensee the owner of a patent[,] . . . we have listed at least some of the rights that should be examined." *Mann*, 604 F.3d at 1360. These rights include: (1) "the exclusive right to make, use, and sell products or services

2

under the patent," *id.* (citing *Propat*, 473 F.3d at 1193-94); (2) "the scope of the licensee's right to sublicense," *id.*; (3) "the nature of license provisions regarding the reversion of rights to the licensor following breaches of the license agreement," *id.* at 1360-61; (4) "the right of the licensor to receive a portion of the recovery in infringement suits brought by the licensee," *id.* at 1361; (5) "the duration of the license rights granted to the licensee," *id.*; (6) "the ability of the licensor to supervise and control the licensee's activities," *id.*; (7) "the obligation of the licensor to continue paying patent maintenance fees," *id.*; and (8) "the nature of any limits on the licensee's right to assign its interests in the patent." *id.*; *see Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001); *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 240 F.3d 1016, 1018 (Fed. Cir. 2001); *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1378-79 (Fed. Cir. 2000); *Vaupel Textilmaschinen*, 944 F.2d at 875. TAG does not contest that four of the eight factors listed in *Mann* weigh in favor of a finding that all substantial rights were transferred. *See* EPLA §§ 2.1 (TAG granting to Stragent "a worldwide, transferable, exclusive license under the [asserted patents], with the right to sublicense others, to (i) make, have made, use, sell, offer to sell, import and lease any products, (ii) use and perform any method, process, and/or services, and (iii) otherwise practice any invention in any manner, such that Stragent has full right to enforce and/or sublicense the [asserted patents] without any restriction) (*Mann* factors 1, 2, and 6), 2.2 (TAG granted to Stragent "the exclusive right, but not obligation, to control and/or cause filing(s), prosecution, and/or maintenance in connection with the [asserted patents] and any and all priority patent applications/patents, divisions, continuations, reissues, reexaminations, renewals, foreign counterparts, and/or extensions thereof. . . . All expenses due and/or incurred under this Section 2.2 will be paid directly by Stragent.") (*Mann* factors 6 and 7), 3.3 ("Stragent may license or otherwise encumber one or

3

more [asserted patents] subject to this Agreement . . . .") (*Mann* factor 6), 4.4 ("Stragent will have the exclusive right, but not the obligation, to maintain, enforce, or defend any [asserted patents] and the exclusive rights, . . . to monetize the Patents pursuant to Section 3.1, including but not limited to licensing them to third parties.") (*Mann* factor 6).

The Federal Circuit has clarified that "the nature and scope of the licensor's retained right to sue accused infringers is the most important factor in determining whether an exclusive license transfers sufficient rights to render the licensee the owner of the patent." *Mann*, 604 F.3d at 1361; *see AsymmetRx, Inc. v. Biocare Med., LLC*, 582 F.3d 1314, 1320-21 (Fed. Cir. 2009); *Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 979-80 (Fed. Cir. 2005); *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995). The parties do not contest that the EPLA transfers to Stragent the complete right to sue accused infringers. EPLA § 4.4.

The plaintiffs nevertheless contend that TAG has retained some rights under the EPLA, and these rights are sufficient to confer standing on TAG. Under the Federal Circuit's precedent, these arguments are unavailing. First, the plaintiffs claim that TAG has a reversionary interest (*Mann* factor 3) in the asserted patents, and that this interest constitutes a substantial right for the purpose of standing. The EPLA provides that it will terminate on April 26, 2019 (a year and a half before the patents expire), and at that time, "Stragent shall have an option to acquire all right, title and interest under the particular [asserted patents] for [a predetermined option exercise price]." EPLA § 7.8; *see* Def.'s Resp. to Pls.' Objections to Report and Recommendation of Magistrate Judge 8, Feb. 28, 2014, ECF No. 277 ("Def.'s Resp."). Thus, the EPLA grants Stragent the right to acquire the asserted patents as soon as the license ends and deprive TAG of any reversionary interest it might hold.

In *Prima Tek II*, the Federal Circuit clarified that a reversionary interest is not a substantial right where that interest is subordinate to the licensee's option to renew the license. *Prima Tek II*, 222 F.3d at 1378-79. TAG's reversionary interest here is limited by Stragent's "right to continue [any] legal enforcement or defense action" it begins before the license terminates. EPLA § 7.8.

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.* is not to the contrary. 434 F.3d 1336 (Fed. Cir. 2006). In *Aspex*, the license at issue stipulated that it would "expire on March 6, 2003, and *in no event later than March 16, 2006*, if [the licensee] exercised its one option to extend, after which all of the rights under the '747 patent that the agreement initially granted to [the licensee] would terminate." *Id.* at 1338 (emphasis added). Because the license specified a termination date beyond which the license could not be renewed, the Federal Circuit concluded that this reversionary interest constituted a substantial right. *Id.* at 1342-43. The defined termination date present in *Aspex* is distinguishable from indefinite renewability at issue in *Prima Tek II* and the present lawsuit where Stragent has the option "to acquire all right, title and interest under the [asserted patents]." EPLA § 7.8; *see Prima Tek II*, 222 F.3d at 1378 ("Significantly, the agreement does not specify a 'hard' termination date beyond which the license cannot be renewed.").

Next, the plaintiffs argue that TAG retains certain "unilateral termination rights" because "Stragent must exercise good-faith business judgment in monetizing the licensed patents and report such efforts to TAG annually" and "if at any point TAG incurs unwanted tax liabilities as a result of the [EPLA], it has the unilateral right to terminate the [EPLA]." Pls.' Objections 7 (citing EPLA § 3.3, 3.4 (good-faith business judgment), § 7.9 (tax liability)). But such termination provisions are "entirely consistent with an assignment." *Vaupel*, 944 F.2d at 875

(holding that termination provisions allowing the patentee to end the license if the licensee filed for bankruptcy or stopped production of the patented product were consistent with an assignment of substantial rights); *see Speedplay*, 211 F.3d at 1252 ("As we held in *Vaupel*, a licensor does not retain a substantial right in a patent merely by reserving a reversion in the patent contingent upon the licensee's financial distress or the licensee's cessation of production of machines embodying the patented invention." (internal citation omitted)). Moreover, if TAG terminated the agreement, Stragent retained the right to "acquire all right, title and interest," EPLA § 7.9, to the asserted patents for $110,000. EPLA § 7.9, Ex. A (Group 3). Thus, TAG's termination rights are toothless in the face of Stragent's purchase option.

In a similar vein, the plaintiffs contend that certain reporting requirements and admonitions that Stragent must exercise "good-faith business judgment" in the EPLA provide TAG with substantial rights such that the license does not constitute an assignment. *See* Pls.' Objections 10-11 (citing EPLA §§ 3.1, 3.3, 3.4, 3.5, 4.4). For example, § 3.4 states: "Stragent will provide [TAG] with a report of its good faith business judgment exercised under Section 3.1 to license the patents." However, in *Speedplay*, the Federal Circuit directly addressed this type of argument and found that a provision allowing the patent owner to inspect the licensee's "books and records regarding the exercise of rights under the agreement[,] . . . constitutes a policing mechanism, not a substantial proprietary right." 211 F.3d at 1252.

The plaintiffs next contend that the EPLA is not an assignment because the annual royalties TAG receives under the license deprive Stragent of all substantial rights. *See* Pls.' Objections 8-9. But as the Federal Circuit explained in *Propat*, "the fact that a patent owner has retained a right to a portion of the proceeds of the commercial exploitation of the patent, . . . does not necessarily defeat what would otherwise be a transfer of all substantial rights in the patent."

6

473 F.3d at 1191 (citing *Rude v. Westcott,* 130 U.S. 152, 162-63 (1889) (retention of portion of "sales, royalties, or settlements, or other source[s]" does not limit the assignment of patent)); *see Vaupel*, 944 F.2d at 875 ("[T]he right to receive infringement damages was merely a means of compensation under the agreement; this was not inconsistent with an assignment.").

Finally, the plaintiffs argue that TAG retained substantial rights in the asserted patents because Stragent possess the right to join TAG as party in any infringement suit. *See* Pls.' Objections 12-13. But TAG draws the wrong inference from this provision of the EPLA. Stragent does not need consent from TAG to file suit, and can join TAG without its consent. *See* EPLA § 4.4. Such a relationship indicates that Stragent, not TAG controls the patent rights.

Plaintiffs point to three other factors that they argue indicate Stragent's and TAG's intent to create a license, not an assignment. None of these factors bears on whether TAG has retained substantial rights in the patent and each is thus irrelevant.

In the alternative, the plaintiffs argue that even if the EPLA constitutes an assignment, TAG still has standing to join suit with Stragent. *See* Pls.' Objections 14-15. However, without at least some exclusionary rights in the asserted patents, there can be no legal injury from infringement, and therefore no constitutional standing to join the infringement suit. As the Federal Circuit held in *Morrow v. Microsoft Corp.*, "those that hold less than all substantial rights to the patent and lack exclusionary rights under the patent statutes [do not] meet the injury in fact requirement. They are not injured by a party that makes, uses, or sells the patented invention because they do not hold the necessary exclusionary rights. Plaintiffs in this category lack constitutional standing." 499 F.3d 1332, 1340-41 (Fed. Cir. 2007); *see also WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264-65 (Fed. Cir. 2010) ("[T]he touchstone of constitutional standing in a patent infringement suit is whether a party can establish that is has an

exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury."); *Sicom Sys., Ltd. v. Agilent Technologies, Inc.*, 427 F.3d at ("A nonexclusive license confers no constitutional standing on the licensee to bring suit or even to join a suit with the patentee because a nonexclusive licensee suffers no legal injury from infringement."). TAG lacks any exclusionary rights in the asserted patents.

For all the foregoing reasons, the Court **ADOPTS** the report and recommendations of the United States Magistrate Judge to **GRANT WITHOUT PREJUDICE** Intel's Motion to Dismiss Co-Plaintiff TAG Foundation for Lack of Standing.

Signed and ordered March 05, 2014.

_____

Hon. Timothy B. Dyk
United States Circuit Judge[*]

---

[*]    Of the United States Court of Appeals for the Federal Circuit, sitting by designation.