UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| Stragent, LLC, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>Intel Corporation,<br><br>*Defendant*. | Case No. 6:11-cv-421 |

**ORDER AND OPINION ON MOTION TO RECONSIDER MAGISTRATE JUDGE'S ORDER DENYING DEFENDANT'S MOTION TO EXCLUDE CERTAIN OPINIONS OF PLAINTIFFS' DAMAGES EXPERT CHRISTOPHER VELLTURO**

Before the court is Defendant Intel's Renewed Motion to Exclude Certain Opinions of Plaintiff's Damages Expert Christopher Vellturo, Mar. 3, 2014, ECF No. 279. The parties here agreed to submit the issue based on arguments made in motions previously filed before the magistrate judge. The court has determined to grant reconsideration in two pertinent respects. As a result, the court **GRANTS IN PART AND DENIES IN PART** Intel's Renewed Motion. As the magistrate judge concluded, Intel's Motion to Exclude Certain Opinions of Plaintiff's Damages Expert Christopher Vellturo, Dec. 6, 2013, ECF No. 183 ("Intel's Mot.") concerning the Lattice and Freescale licenses is denied. However, the court grants Intel's Motion with respect to Dr. Vellturo's testimony concerning hedonic regression analysis of the accused products. The court will also give the parties an opportunity to submit proposed jury instructions concerning the appropriate weight to be given to the Lattice and Freescale licenses.

**BACKGROUND**

Plaintiff Stragent, LLC ("Stragent") alleges that Intel infringes claims 12 and 16 of U.S. Patent No. 6,848,072 ("the '072 patent) and claim 1 of U.S. Patent No. 7,028,244 and seeks compensatory damages based on a reasonable royalty pursuant to 35 U.S.C. § 284 (2012). Plaintiff's Response in Opposition to Intel's Motion to Exclude Certain Opinions of Dr. Christopher Vellturo, Jan. 7, 2014, ECF No. 206. At trial, Stragent seeks to introduce two licenses for the patents-in-suit granted to third-party device manufacturers, Freescale and Lattice, and testimony from its expert on reasonable royalty damages, Dr. Vellturo. After briefing and argument by the parties, Magistrate Judge Love denied Intel's Motion to exclude portions of Dr. Vellturo's testimony concerning the licenses and quantitative analysis (hedonic regression analysis) assessing the value contributed by the patented invention to Intel's accused products. On March 3, 2014, Intel renewed its motion.

**DISCUSSION**

If a plaintiff proves that his patent has been infringed, he is entitled to an award of "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. A plaintiff who does not compete with the infringer in the marketplace cannot recover damages in the form of lost profits, but can recover a reasonable royalty. *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc). Under the hypothetical negotiation approach, a reasonable royalty is "the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). In other words, the negotiation is supposed to occur before any infringement or litigation, as if the parties were willing to negotiate a license.

The *Georgia-Pacific* factors are pertinent to determining what a reasonable royalty would be. *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Those factors include: royalties the patentee has received for licensing the patent-in-suit "proving or tending to prove an established royalty," fees the licensee has paid to use comparable patents, the nature and scope of such licenses, the commercial relationship between the parties, the utility and advantages of the patented invention, the extent of the infringer's use of the patented invention, the portion of the infringer's profit that "should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer," and the amount that the licensor and licensee would have mutually agreed upon "if both had been reasonably and voluntarily trying to reach an agreement." *Id*. at 1120.

Expert testimony is admissible "as an aid to the determination . . . of what royalty would be reasonable under the circumstances." 35 U.S.C. § 284. Under the Federal Rules of Evidence, an expert witness may offer opinion testimony if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. To ensure that the expert's testimony meets the requisite standard of "evidentiary reliability," the court must determine that it is "(1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590, 592 (1993). Key considerations are: whether the expert's theory "can be (and has been) tested"; whether "the theory or technique has been subjected to peer

review and publication"; the "known or potential rate of error"; and the "'general acceptance' . . . of a relevant scientific community." *Id*. at 593-94.

## I. STRAGENT'S LICENSES TO LATTICE AND FREESCALE

Dr. Vellturo relies on Stragent's licenses with Lattice and Freescale to establish an "economically reasonable benchmark set of rates that would inform the hypothetical negotiation," and then checks the appropriateness of that benchmark range in light of the *Georgia-Pacific* factors. Expert Report of Christopher A. Vellturo, Ph.D ¶ 146 ("Vellturo Report"). Dr. Vellturo concludes that the hypothetical negotiation between Intel and Stragent would also provide for a lump sum payment rather than a running royalty. *Id.* ¶ 144. To calculate what that sum would be, Dr. Vellturo first calculated imputed royalty rates from the Lattice and Freescale agreements, which only provided for lump sum payments. *Id.* ¶ 146. He derived royalty rates by dividing these lump sum payments by the covered products' earned and projected revenue. *Id.* ¶¶ 148-9, 152.[1] After analyzing the *Georgia-Pacific* factors, Dr. Vellturo multiplied a rate at the "lower end of the benchmark"—i.e., the 1.18% rate derived from the Freescale license rather than the 1.91% rate derived from the Lattice license, *id.* ¶¶ 149, 153—by "an estimate of [Intel's] Accused Product sales revenues." *Id.* ¶ 211, *see* ¶¶ 209-211. He thus concluded that "the appropriate lump sum amount," *id.* ¶ 210, of the hypothetical Intel-Stragent license would be $35,748,405 if it covered products sold in and outside the U.S., and $4,754,522 if it covered only U.S. sales. *Id.* ¶ 216.

Intel argues that Dr. Vellturo's testimony about the licenses should be excluded because they reflect litigation settlements. Stragent contends that these licenses are the most reliable

---

[1] Dr. Vellturo used revenue projections through the expiration of the patent to impute a rate from the Lattice license, but assumed a product life of five years for the rate imputed from the Freescale license. Id. ¶¶ 149 n.248, 153.

licenses in the record, are similar to licenses admitted in other patent cases, and cover substantially the same patents. Stragent does not dispute that the licenses arose out of litigation.

The Federal Circuit has a history of "longstanding disapproval of relying on settlement agreements to establish reasonable royalty damages." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012). Such agreements are not necessarily probative because "the hypothetical reasonable royalty calculation occurs before litigation and that litigation itself can skew the results of the hypothetical negotiation." *ResQNet.com, Inc., v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010). However, in *ResQNet*, the court upheld the admissibility of a license that arose out of litigation as it was "the most reliable license in th[e] record." *Id.*. By contrast, in *LaserDynamics*, the court found an abuse of discretion in the district court's decision to admit a settlement agreement into evidence when there were "twenty-nine licenses for the patent-in-suit in total, the vast majority of which are not settlements of active litigation . . . which are therefore far more reliable indicators of what willing parties would agree to in a hypothetical negotiation." 694 F.3d at 78.

While there is good reason to be skeptical about the probative value of licenses that may merely reflect the nuisance value of avoiding litigation, I note that, here, these licenses are the *only* licenses in the record and cover the patents-in-suit, plus one additional, closely-related patent. The court will not exclude this aspect of Dr. Vellturo's testimony from evidence, but Intel may present arguments and evidence at trial that the agreements are not probative of a reasonable royalty rate. Also, Intel may propose instructions that such licenses should be given less weight because they were entered into in the context of a litigation settlement.

## II. HEDONIC REGRESSION ANALYSIS

In assessing the appropriateness of the benchmark rates against the *Georgia-Pacific* factors, Dr. Vellturo conducted an analysis of the accused products separate from the licenses discussed above. According to Dr. Vellturo, he used multivariate hedonic regression to "estimate the value of the accused feature's contribution to the overall prices realized by Intel on the Accused Products." Vellturo Report ¶ 175. In order to estimate that value, Dr. Vellturo identified product features based on specifications on Intel's website and a list of 19 features related to reliability, availability, and service ("RAS") from Intel's internal documentation. *Id.* ¶ 185. Dr. Vellturo conceded that the RAS features "occur either collectively or not at all in a given Intel processor model" and that "their values cannot be estimated separately." *Id.* ¶ 188. After concluding that the combination of the 19 RAS features "represents 42.0% of the average selling price for the accused products," *id.* ¶ 193, Dr. Vellturo determined that the accused feature contributes 1/19th of that percentage, *i.e.*, 2.2% of the total selling price. *Id.* ¶ 194. In other words, he assigned an identical weight to each RAS feature.

Intel argues that hedonic regression analysis has not been shown to be reliable for the purpose of determining the value of individual microprocessor features as opposed to the extent to which price changes over time are due to product evolution instead of inflation. Intel also argues that attributing 1/19th of the combined value of the RAS features to the accused feature is arbitrary and has no factual support. Stragent, in addition to supporting the appropriateness of hedonic regression in this context, asserts that Dr. Vellturo's estimate for the individual contribution of the accused feature was conservative and, thus justifiable, in light of Intel's documentation.

The Supreme Court has emphasized that "[i]n *Daubert*, this Court held that Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony . . . is not only relevant but reliable.'" *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert*, 509 U.S. at 589). The *Daubert* factors require considering an expert's methodology not only with respect to its "reasonableness *in general*," *id.* at 153 ((emphasis in original), but also in light of "*the particular matter to which the expert testimony was directly relevant.*" *Id.* at 154 (emphasis in original). Accordingly, the Fifth Circuit has held that an "expert's testimony must be reliable at each and every step or else it is inadmissible." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007). Courts consistently exclude expert testimony as unreliable under *Daubert* when the "analytical gap between the studies on which [the expert] relied and his conclusions was simply too great." *Id.* (citing *Gen. Elec. v. Joiner,* 522 U.S. 136, 146-47 (1997)); *see also Wells v. Smithkline Beecham Corp.*, 601 F.3d 375, 381 (5th Cir. 2010) (upholding district court's exclusion of scientifically unreliable expert testimony); *Black v. Food Lion, Inc.*, 171 F.3d 308, 314 (5th Cir. 1999) (remanding damages issue because of district court's abuse of discretion in admitting expert testimony "unsupported by a specific methodology that could be relied upon.").

Even assuming that hedonic regression analysis could properly be used to calculate the value of the accused feature, I conclude that Dr. Vellturo's methodology relies on arbitrary assumptions that have no basis in the facts of this case or hedonic analysis in general. Dr. Vellturo's attribution of equal value to all 19 RAS features is not based on any theory that meets the *Daubert* criteria of verifiability, peer review or publication, an acceptable error rate, or general acceptance in the scientific community. 509 U.S. at 593-94. Indeed, Dr. Vellturo admitted that he could not separately estimate the value of the accused feature because all 19

RAS features were present in the same processor models. Vellturo Report ¶ 188. As a result, he merely "assign[ed] an equal value to each of the features . . . [which] in effect, attribute[d] 1/19th of the aggregate value of the RAS features to the patented feature." *Id.* ¶ 194. Dr. Vellturo failed to provide any "adequate basis for the opinion" that would provide the requisite indicia of expert reliability. *Knight*, 482 F.3d at 355 (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994) for the proposition that expert evidence is inadmissible if "the expert lacks 'good grounds' for his or her conclusions")).

I also note that in *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011), the Federal Circuit rejected using rule-of-thumb percentage estimates that are arbitrary, general, and "unrelated to the facts of th[e] case." *Id.* at 1318; *see also Frymire-Brinati v. KPMG Peat Marwick*, 2 F.3d 183, 186 (7th Cir. 1993) ("Admitting [expert's] 'fairly simple pass' into evidence just because he is an expert in accounting is problematic, for [the expert] conceded that he did not employ the methodology that experts in valuation find essential."). Utilizing guesswork is precisely what Stragent is attempting to do here with Dr. Vellturo's guess as to the value of the accused feature in connection with his hedonic analysis.

Dr. Vellturo himself admitted, "I am not, nor do I hold myself out to be, a technical expert in these technologies." Vellturo Report ¶ 13. Stragent attempts to justify Dr. Vellturo's estimate on the ground that it is "quite conservatively low," *Id.* ¶ 194, because the feature is listed as item number 3 in a priority sorting of premium features in an internal Intel document.. Despite Stragent's assertions, a "conservative opinion in that sense does not equate to a scientific one." *Ayers v. Robinson*, 887 F. Supp. 1049, 1060 (N.D. Ill. 1995). Contrary to Stragent's theory, Intel's internal documents, which describe various product features accompanied by numerical priority ratings, do not support Dr. Vellturo's approach. Those documents do not suggest that the

priority ratings are based on the features' relative contributions to product prices. *See* Intel's Mot. at 13 n.2. Moreover, relying on such "internal documentation in reaching the conclusion . . . is not the scientific method; rather, it is rife with bias and variability." *Wells*, 601 F.3d at 381 n.30. Dr. Vellturo's own description of hedonic regression analysis suggests that such subjective assessments are not reliable indicators of consumer marketplace behavior. *See Kumho*, 526 U.S. at 155 (noting that "the expert seemed to deny the sufficiency of his own . . . methodology.").

Dr. Vellturo's opinion that 2.2% of the price of the accused products is attributable to the accused feature lacks the "valid scientific connection to the pertinent inquiry" that is required "as a precondition to admissibility" under Rule 702. *Daubert*, 509 U.S. at 592. There is no scientific basis for Dr. Vellturo's arbitrary assumption about the value of the accused feature. In this respect, Dr. Vellturo's testimony fails "to satisfy either *Daubert's* factors *or any other* set of reasonable reliability criteria." *Kumho*, 526 U.S. at 158 (emphasis in original); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. at 146 (1997) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."). The jury will not be permitted to hear Dr. Vellturo's testimony based on the results of his hedonic regression analysis.

## CONCLUSION

For all the foregoing reasons the Court **DENIES IN PART AND GRANTS IN PART** Intel's Renewed Motion to Exclude Certain Opinions of Dr. Christopher Vellturo.

1   Signed and ordered March 6, 2014,

2

3   _____

4   Hon. Timothy B. Dyk
5   United States Circuit Judge[2]

---

[2]   Of the United States Court of Appeals for the Federal Circuit, sitting by designation.