1

1         UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF TEXAS
2               TYLER TEXAS

3   STRAGENT, LLC, ET AL     |  DOCKET 6:11CV421
                              |
4                            |
    VS.                       |  MARCH 6, 2014
5                            |
                              |
6   INTEL CORPORATION         |  WASHINGTON, D.C.

7   ----------------------------------------------------------

8         VOLUME 1 OF 1, PAGES 1 THROUGH 98

9       REPORTER'S TRANSCRIPT OF PRETRIAL HEARING

10       BEFORE THE HONORABLE TIMOTHY B. DYK
          UNITED STATES FEDERAL CIRCUIT JUDGE
11
    ----------------------------------------------------------
12

13  APPEARANCES:

14  FOR THE PLAINTIFFS:    ERIC M. ALBRITTON
                           ALBRITTON LAW FIRM
15                         111 WEST TYLER STREET
                           LONGVIEW, TEXAS 75606
16
                           BARRY BUMGARDNER
17                         NELSON BUMGARDNER CASTO
                           313 WEST 7TH STREET
18                         SUITE 300
                           FORT WORTH, TEXAS 76107
19
                           MICHAEL E. JOFFRE
20                         MELANIE L. BOSTWICK
                           KELLOGG HUBER
21                         1615 M STREET NW, SUITE 400
                           WASHINGTON, DC 20036
22

23  FOR THE DEFENDANT:     CHAD S. CAMPBELL
                           TYLER BROWN
24                         PERKINS COIE, LLP
                           2901 N. CENTRAL AVENUE
25                         SUITE 2000
                           PHOENIX, ARIZONA 85012

```
 1                         TIMOTHY J. FRANKS
                          AARON MATZ
 2                        PERKINS COLE, LLP
                          2901 N. CENTRAL AVENUE
 3                        SUITE 2000
                          PHOENIX, ARIZONA 85012
 4

 5

 6   COURT REPORTERS:     CHRISTINA L. BICKHAM, CRR-RMR
                          TONYA B. JACKSON, RPR-CRR
 7                        FEDERAL OFFICIAL REPORTER
                          300 WILLOW, SUITE 239
 8                        BEAUMONT, TEXAS  77701

 9

10

         PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
11           TRANSCRIPT PRODUCED BY COURT REPORTER.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1      (OPEN COURT, ALL PARTIES PRESENT.)

2           THE COURT:  Good morning.  I'd like to begin

3  by taking an inventory of what issues there are for me to

4  decide this morning.  And I should tell you that this

5  morning posted two orders, one relating to standing; and

6  I've approved the magistrate's decision on standing.  So,

7  the sole plaintiff here will be Stragent.

8           And the other issue relates to the Stragent

9  expert report on damages; and with respect to that, I

10  will allow testimony about the two licenses; but I will

11  not allow the hedonic analysis because I've concluded

12  that it is unreliable.  You'll be able to review those

13  opinions during a recess, and you can ask any questions

14  that you'd like to about it.

15           Why don't we begin by having counsel identify

16  themselves.

17           MR. ALBRITTON:  Thank you very much, your

18  Honor.  Eric Albritton on behalf of the plaintiff.  With

19  me is Barry Bumgardner, Melanie Bostwick, and Mike

20  Joffre; and we're ready to proceed, your Honor.

21           THE COURT:  Okay.

22           MR. CAMPBELL:  Good morning, your Honor.  Chad

23  Campbell for Intel.  I'm joined by my colleagues Tim

24  Franks and Aaron Matz.  We also have from Intel Chris

25  Kyriacou and Tina Chappell.

Pretrial Hearing

4

1    THE COURT: Okay. Thank you.

2    Now, I've received the objections to the

3 preliminary instructions; and I'm going to make all the

4 changes that both sides proposed, with one exception; and

5 that is with respect to the damages instruction. Let me

6 see if I can find this.

7    I'll have to come up with the language later

8 on.

9    And then I've received the objections with

10 respect to some of the exhibits. I have not had a chance

11 to review those objections. I'll do that during one of

12 the recesses that we have so that we can address that.

13    And then I have some concerns about some of

14 the final instructions and want to discuss that,

15 particularly the instructions concerning invalidity which

16 seems to me -- which seem to me to be somewhat abstract

17 and complicated. And I'd like to be able to simplify

18 them, and I'm going to ask each side to give me new

19 proposed instructions on invalidity hopefully by the end

20 of the day tomorrow.

21    And I think for the moment -- and also a new

22 verdict form.

23    Are there other items that we should be

24 addressing today besides those?

25    MR. ALBRITTON: Not on behalf of the

1  plaintiff, your Honor.

2          UNIDENTIFIED SPEAKER:  I'm not aware of

3  anything either.

4          THE COURT:  Okay.  Well, why don't we begin

5  with claim construction argument.  I have concluded that

6  there is a claim construction issue here that I need to

7  resolve; so, I don't want to hear argument on whether

8  there is a claim construction issue but, rather, argument

9  on the merits of the two sides' claim constructions.

10          Why don't we begin by giving each side 15

11  minutes to address the 3 claim construction issues, and

12  then we'll see where we go from there.

13          So, Mr. Campbell, why don't you begin.

14          MR. CAMPBELL:  Thank you, your Honor.  I

15  thought it would be useful to begin by framing what the

16  dispute is about and I have just a demonstrative

17  *PowerPoint* that we printed out and I believe that there

18  is a copy available for the court.  It is a simple

19  demonstration at the beginning of what an incremental

20  computation, when we're talking about a CRC operation, is

21  all about.  In computers, obviously we're dealing with

22  digital math, sometimes called modulo 2 mathematics.  And

23  a CRC is a polynomial division into input data.  We can

24  address the issue and think about it in base ten

25  mathematics that we're all used to because the principles

Pretrial Hearing

6

1   are largely the same.

2          And, so, what I've got here on Slide Number 2

3   is an illustration of what would happen if we needed to

4   divide a deviser, which would be the polynomial

5   Number 19, into a much larger value --

6          THE COURT:  Yeah.  I think I understand the

7   basics of it so --

8          MR. CAMPBELL:  Okay.  Well, if I could just

9   invite you to turn then to Slide 3 and then Slide 4.  The

10  one point that I think is useful to grasp is that if we

11  were limited like this calculator to just six digits and

12  we had a larger number that we had to divide by the

13  deviser 19, we could chop it up just like you would do

14  back in grade school days, into smaller groupings of

15  numbers, divide the number into it and find the remainder

16  and then carry that remainder forward.  And, so, we would

17  move forward in chunks at a time.

18          And the key point, if you look at Slide 4, is

19  that the remainder that we're showing here, which is two

20  steps into the computation of the entire value, is the

21  remainder not only of the first remainder and the next

22  chunk of data but it is also the remainder of the first

23  two chunks of data.  And as we proceed forward to Slide 5

24  and repeat the process again, each time we increment, the

25  remainder from the last value or the last iteration,

Pretrial Hearing

7

1  which is the current state in the language of the

2  patents, is concatenated or combined with the next chunk

3  of data and then the division is made off of that number

4  and you update the remainder.

5          THE COURT:  Now, is that always the case; or

6  are there iterations of these CRC checks that work on,

7  let's say, a 32 -- 32 bits of data and then make a

8  determination with respect to each chunk as to whether

9  there is an error in it without carrying forward the

10  remainder?

11          MR. CAMPBELL:  It depends on the protocol and

12  the calculation circuit itself.

13          THE COURT:  So, the answer is it is possible

14  in some iterations to do it that way without --

15          MR. CAMPBELL:  It is.

16          THE COURT:  -- carrying forward the remainder.

17          MR. CAMPBELL:  Yes.  For example, if you look

18  at Column 4 of the patent, near the bottom --

19          THE COURT:  Uh-huh.

20          MR. CAMPBELL:  This would be Column 4 at about

21  line 59.  There is a list there of polynomials that could

22  be used for different degree CRC calculations.  The one

23  that says "CRC-8" happens to be a very well-known

24  polynomial that is used for a family of protocols called

25  "ATM."  And in particular it is not used for packets of

Pretrial Hearing

8

1   information but, rather, for the header portion of

2   packets.  It's an optional thing that you can do with the

3   ATM family of protocols.  But that particular CRC

4   computation, CRC-8, if applied to the ATM AAL2 EC

5   calculation, would actually generate a CRC of 8 bits; and

6   the header that it's calculating that over is 32 bits

7   wide.

8             So, if you had a 32-bit ALU with 32-bit wide

9   calculating capability --

10            THE COURT:  That would be the processor,

11  right?

12            MR. CAMPBELL:  Yes.

13            THE COURT:  Yeah.

14            MR. CAMPBELL:  That one would be able to

15  conclude in one iteration.  Each of the --

16            THE COURT:  One clock cycle, you mean.

17            MR. CAMPBELL:  It depends again on how

18  pipelined the machine is set up to be.  You could set up

19  a circuit so that you are only calculating a few of these

20  at a time if you wanted to.

21            THE COURT:  But wouldn't a 32-bit processor do

22  32 -- process 32 bits at a time in parallel?

23            MR. CAMPBELL:  Yes.

24            THE COURT:  Yeah.

25            MR. CAMPBELL:  The one that's disclosed here

1  in the provisional application and suggested in the

2  patent is 32 bits wide.  And if all you had were 32 bits

3  to run through, you could run it through if you set up

4  your circuit as an XOR, exclusive-or, gate, meaning to do

5  it all in parallel, you could do it in one clock cycle.

6          THE COURT:  Well, your point -- or one of your

7  points is that the CRC circuit doesn't have to process a

8  whole packet at once; it's going to do it in 32-bit

9  chunks.  That's --

10          MR. CAMPBELL:  Yes and --

11          THE COURT:  But I'm not sure there is a

12  disagreement about that.  I read Dr. Stone's supplemental

13  expert report, and I'm not sure that he's saying anything

14  different than that.

15          MR. CAMPBELL:  I actually think that he is for

16  the following reason.  If we look at the other

17  polynomials that are in that list in the patent, each of

18  the others -- the CRC-32, the CRC-16, and the CRC-10 --

19  those also are very well-known polynomials that are used

20  for network communications like Ethernet or some of the

21  ATM families like the adaptation layer 5 or the

22  adaptation layer 3/4.  There is another one called

23  "HTLC."  Each of those is far larger than 32 bits; and,

24  therefore, if you had a 32-bit calculating circuit, you

25  simply could not process the --

Pretrial Hearing

10

1          THE COURT:  You'd have to break it up into

2  chunks, right?

3          MR. CAMPBELL:  You would.  You would have to

4  break it up into chunks.

5          THE COURT:  But I'm not sure that he's

6  suggesting that the patent does anything different than

7  that.

8          MR. CAMPBELL:  We believe that he is.  And the

9  reason we believe that he is is because the prior art

10  does exactly that.  So --

11          THE COURT:  But I thought he was pretty clear

12  that he wasn't saying the entire packet had to be

13  processed at once.

14          MR. CAMPBELL:  Okay.  I think I understand

15  what the court is referring to, and I can clear that up

16  if we look at another part of the patent.  I've got a

17  couple of things collected together that might be helpful

18  at Slide 21.

19          At Slide 21 we're showing Figure 3 and then

20  some of the language from Columns 4 and 5 that pertain to

21  Figure 3.  Figure 3 is a basic embodiment where we have

22  different calculating CRC circuits.  The patent goes on

23  in Column 4 -- and I'm referring now on the left-hand

24  side to the top portion -- to explain that you could

25  implement each of those calculating circuits using a

1  serial calculation circuit where you just processed one

2  bit at a time.  The patent does disclose that, and

3  Dr. Stone opines in his report that such an

4  implementation would not lie outside the reach of

5  claim 12 but it would lie outside the reach of claim 16

6  because it's doing one bit at a time.

7          THE COURT:  Right.

8          MR. CAMPBELL:  Okay.  Our point about the

9  problem with his approach has to do with a different

10  embodiment that's also disclosed with reference to

11  Figure 3.  If you look down at the last paragraph on

12  Slide 21 --

13          THE COURT:  But where -- I thought your

14  contention was that he was saying that the entire packet

15  has to be processed at once in parallel.

16          MR. CAMPBELL:  He is, and here's why.  It --

17          THE COURT:  Well, let me just ask you to sit

18  down for one moment.  Let me just ask Mr. Albritton if

19  that is, in fact, what Dr. Stone is saying so that we can

20  see if we're on the same page about this.

21          MR. ALBRITTON:  Mr. Joffre -- if it pleases

22  the court, Mr. Joffre --

23          THE COURT:  Sure.

24          Is my understanding of Dr. Stone correct or

25  incorrect?

1          MR. JOFFRE:  He is not saying that you have to

2    process an entire packet at once.  What he's saying is

3    that there has to be a CRC result under the court's

4    construction.  And the way that you generate a CRC

5    result -- that's the thing that -- and everybody here has

6    agreed generally what a CRC result is.  That's thing you

7    use for error checking.  If you take whatever the input

8    data is, divide it by the hardwired polynomial, you will

9    get the CRC result.  That's what --

10          THE COURT:  Is the difference here between the

11   parties that Stragent says that you can't carry forward

12   the remainder; it has to be on a 32-bit by 32-bit basis?

13   Am I misunderstanding here?  I'm just -- I'm confused as

14   to what the -- I understand the disagreement about the

15   shift register and whether there can be shear shift

16   register.  We'll talk about that later.

17          MR. JOFFRE:  Right.

18          THE COURT:  But I am not clear as to what the

19   difference here between the parties is, say, in the

20   definition of "input."  It seems to me as though you are

21   both agreeing that input is not the entire packet, that

22   it's broken down into, let's say, 32-bit segments.

23          MR. JOFFRE:  Right.  What the disagreement, I

24   think, is -- and I can be corrected by Intel.  The

25   disagreement is the question what do you run the

1  calculation on.  So, in some sense the packet issue is a

2  sideline.  The question is do you have a CRC result

3  within --

4            THE COURT:  Everybody seems to agree that it

5  doesn't have to process the entire packet at once, right?

6            MR. JOFFRE:  Right.  The question lies in

7  whether or not the -- what you put into the circuit, what

8  that -- making one CRC result, whether that has to be the

9  full -- the full data that will be subsequently checked

10 by the CRC.

11           So, for example, if you have --

12           THE COURT:  Well, if it's a 32-bit processor,

13 you can only do 32 bits at once, right?

14           MR. JOFFRE:  That's right.  And in that

15 embodiment that's right.  That's what you would do.

16           And, so, the point being is that after those

17 32 bits, if you put in those 32 bits into the circuit,

18 the result you must get is a CRC result, which is the CRC

19 check which is used for error checking.  So, if you have

20 32 bits, the thing that you have to have at the end of

21 the day is a CRC result.  What you're not allowed

22 to have --

23           THE COURT:  The CRC result would be either

24 zero or something that's not zero.  And if it's zero,

25 there is no error; and if it's greater than zero, there

1  is an error.

2          MR. JOFFRE:  Well, in the actual checking

3  portion.  In the second CRC operation where you are

4  comparing -- making sure that the data across the line

5  was transmitted correctly, that's right.  You do the CRC

6  operation and the end result should be remainder of zero.

7  And that's, in fact, the whole point of doing the CRC

8  computation.

9          The question ultimately is do you have, under

10  the claim language, a CRC operation which is an operation

11  performed using CRC polynomials to generate a CRC result

12  to be used in error checking.  And the question then

13  is -- all right.  So, what is it that you need to

14  actually do to create the CRC result.  And that's defined

15  by the court as well.  It is the CRC result, the thing

16  that you're making at the end of the day, is a value

17  equal to the remainder of the input data divided by the

18  CRC polynomial.

19          So, if you take some chunk of data that you're

20  going to want to --

21          THE COURT:  So, no carrying forward of the

22  remainder is what you're saying.

23          MR. JOFFRE:  What I'm saying is you -- yes.

24  You cannot have -- what you're not allowed to do is to do

25  a computation, call it a CRC computation, but then at the

1  end of the day you don't get a CRC result because in that

2  instance --

3            THE COURT:  Because you have to carry it

4  forward.

5            MR. JOFFRE:  Yeah.  Then you --

6            THE COURT:  I mean, that seems to be -- this

7  aspect of it, that seems to -- if I understand correctly,

8  that seems to be the difference between the parties as to

9  whether you can carry forward a remainder and be within

10  the claim language or not.

11            MR. JOFFRE:  Right.  And the question in

12  the -- specifically, to put it to a specific point, in

13  the prior art, the hydrogen atom prior art, what happens

14  is you don't stick the entire value that you're going to

15  create a CRC result in for.  What you do is you run a

16  chunk of the data through, less than the whole amount

17  through, once.  You get some number that is not the CRC

18  result; it's a -- (indiscernible) residue.  And then you

19  use that in order to -- with the additional next chunk of

20  data to again create another residue.  And we're saying

21  that operation is not a CRC operation as defined

22  by the --

23            THE COURT:  Yeah.  I can understand that.

24  That's the -- apart from the shear and the shift

25  register, whatever, that seems to be the main -- perhaps

1  the only point of disagreement between the parties.  Am I

2  understanding correctly?

3           MR. JOFFRE:  I think there is the shared issue

4  of circuitry.  There is also whether or not -- the

5  question becomes also what does parallel decomposition

6  mean.  And I think parallel decomposition -- there's been

7  some fights about what -- one bit versus multiple bits.

8  The whole point of parallel decomposition is that --

9           THE COURT:  You've got to do all 32 bits at

10  one time.

11           MR. JOFFRE:  Right.  I mean, the question

12  is -- if you have a parallel decomposition under

13  claim 16, it says exclusive-or gates configured in a

14  parallel decomposition of the serial CRC calculation

15  circuit.  So, you have to take the CRC calculation

16  circuit and then decompose it into a parallel form.

17  That's what our position is.

18           Their position, I believe, if I'm fairly

19  characterizing it, is no you don't need to decompose the

20  entire serial CRC circuit.  As long as there is some XOR

21  gates in there that are in parallel, then that will

22  suffice to meet the claim language.  And we would say no

23  that's not a decomposition of the circuit.  That's just a

24  serial CRC circuit that happens to have two XOR gates in

25  parallel.

1          THE COURT:  Okay.  Well, I'm not sure that I

2    fully understand that; but let's hear from Mr. Campbell

3    on the other point.  So, let's see if there is agreement

4    here.

5          Are you --

6          MR. CAMPBELL:  I actually think that was

7    helpful.

8          THE COURT:  Yeah.

9          MR. CAMPBELL:  And I'd like to explain why.

10   If I could direct the court to Column 3 near the bottom,

11   there is a discussion there about what a CRC result is.

12   And we would preface this, your Honor, first by noting

13   that when you're doing an incremental calculation, you

14   are feeding 32 bits into the circuit, dividing those 32

15   bits by a polynomial, and looking for the remainder.

16   What counsel just referred to as a "residue" is a

17   remainder of that division.  It is the polynomial divided

18   into the data that was put into the circuit.

19          THE COURT:  Is the difference between you as

20   to whether the remainder can be carried forward or

21   whether each 32-bit thing has to be treated independently

22   and the error check occurs with respect to the 32-bit

23   block without carrying forward a remainder?  Is that a --

24          MR. CAMPBELL:  Based on what I just heard,

25   this is what I believe the difference to be.  We regard

1  those residues as CRC results.  The plaintiff does not.

2  And their theory is that the portion of the court's claim

3  construction that says "to be used in error checking"

4  refers solely to a CRC value that gets appended to a

5  packet and sent along.  That's fundamentally the

6  difference that they're talking about with respect to

7  hydrogen.  Hydrogen does create those check zones that go

8  on packets.  It does so incrementally.  And they're

9  suggesting to the court that those incremental polynomial

10  divisions are not CRC results.

11          THE COURT:  And not within the claim.

12          MR. CAMPBELL:  And not within the claim.

13          THE COURT:  And that's the basic difference

14  with respect to what we've been talking about.

15          MR. CAMPBELL:  That is correct.

16          THE COURT:  Okay.  And how am I supposed to

17  resolve that issue?  What helps me in the specification?

18          MR. CAMPBELL:  Okay.  If we look at

19  Column 3 -- I'm going to take the court to two different

20  places.  I want to answer your question first by focusing

21  on what they rely upon.  Column 3 near the bottom.  They

22  say that the patent says at line 60 at Column 3 "The CRC

23  operation operates on a block of data as a unit.  The

24  block of data can be conceptualized as a single (large)

25  numerical value.  The CRC algorithm divides this large

1    value by a number (the CRC polynomial or generator

2    polynomial) leaving the remainder, which is the CRC

3    result."

4                It then goes on to say "The CRC result can be

5    sent or stored along with the original data," and it

6    proceeds from there.

7                They are arguing that the only thing that

8    would qualify as a CRC result in that paragraph is a

9    remainder value that actually gets appended to a patent

10   and sent along.  We think that's incorrect for several

11   reasons, and I'd like to just walk through the top two or

12   three briefly with the court.

13               THE COURT:  They're saying that this language

14   doesn't allow you to carry forward the remainder.

15               MR. CAMPBELL:  I don't think they're saying

16   that it would not allow you to carry forward the

17   remainder.  What they're saying is the only thing that

18   qualifies at the end of the day --

19               THE COURT:  Under the patent.

20               MR. CAMPBELL:  -- under the patent is the very

21   last thing, so that these divisions by the polynomial of

22   data that's input to the circuit 32 bits at a time do not

23   qualify as CRC results.  We say that they do qualify as

24   CRC results because they are used in error checking.

25   They are necessary in order to get to a final answer.  If

1  you don't have them, you can't get to the final answer.

2          THE COURT:  Well, they're saying that each

3  32-bit thing is independent and each -- the result of

4  running this operation under each 32-bit block is a CRC

5  result.  Whereas you're saying that within the claim is

6  an embodiment in which the remainder is carried forward

7  and the CRC result is the aggregation, if you will, of

8  those remainders at the end of the data packet.  Am I --

9  is that correct?

10          MR. CAMPBELL:  Dr. Stone does not --

11          THE COURT:  No, but --

12          MR. CAMPBELL:  It is not quite correct.

13          THE COURT:  Okay.

14          MR. CAMPBELL:  And I'd like to explain why.

15  Dr. Stone does not disagree that the hydrogen chip

16  ultimately produces a CRC result.  He is saying that the

17  only time it produces the CRC result is when you've

18  gotten to the very last iteration and you're done

19  processing a packet, for example.

20          THE COURT:  Right.

21          MR. CAMPBELL:  We're trying to say yes, that's

22  a CRC result, we agree; but the earlier iterations are

23  also CRC results within the language of the specification

24  and the understanding of skill in the art and

25  particularly with reference to embodiments that would be

1    read out of these claims otherwise.

2              So, let me just try one more time.  When I

3    went through that example with the division at the

4    beginning, each of those iterations produced a remainder

5    which was a division of data input to the circuit by a

6    polynomial.  And, so, that -- under what's taught here

7    and what's generally understood, that is a CRC

8    calculation; that's a CRC result.  The question is what

9    are you going to do with it.  Are you going to stick that

10   one on the end of a packet or are you going to feed it

11   back in its current state so that you can process another

12   32 bits on the way to some sort of final conclusion?

13             THE COURT:  Okay.

14             MR. CAMPBELL:  Okay.  Now, fundamentally the

15   problem that we see can be illustrated by pointing to

16   some other claims that aren't asserted but that use the

17   same language of the claims that are asserted, like input

18   data and CRC circuits.  If we look at claim 1 of the '072

19   which is at Column 6, it talks about instructions that

20   indicate CRC operations are to be executed and then a

21   plurality of CRC circuits that perform the operation.

22   And at the last final step of the method, you actually

23   generate the CRC result with the selected CRC circuit.

24   That's the independent claim.

25             If we go down to dependent claim 2, there is a

1  further requirement that you append the CRC result to the

2  input data and transmit the input data and the appended

3  CRC result over the network.

4          So, the idea that the only CRC result that

5  would qualify as a CRC result that the patent is talking

6  about is one that gets -- you know, the final answer is

7  intention here.

8          THE COURT:  But it seems to me that this claim

9  language doesn't talk about carrying the interim results,

10  if you will, forward and aggregating them.  It just talks

11  about carrying the result forward.

12          MR. CAMPBELL:  This one talks about appending

13  the CRC result to a packet and sending the packet to

14  another machine that's then going to do a calculation to

15  see if it gets the same CRC result so that it can compare

16  and conclude whether the --

17          THE COURT:  Right.

18          MR. CAMPBELL:  That's what it's talking about.

19          The incremental calculations that we're

20  talking about qualify as CRC results because they are

21  polynomial divisions of input data.  They don't happen to

22  be appended to a packet.  Instead, they are used to move

23  to the next batch of data and continue the calculation.

24          Now, that style of computing is actually

25  described in the specification with reference to

Pretrial Hearing

23

1  Figure 3, Column 4 and Column 5.  And I think we can just

2  look at Figure 3 to get the basic point here, and then

3  I'd like to take the court to some language in Column 4

4  which helps to clarify this.

5          Figure 3, at the top -- well, there is a

6  dashed line, first of all, indicating that these are

7  circuits inside of an ALU.  I mean, that isn't debated.

8  This is part of the ALU in Figure 2.  But you'll notice

9  that it's got an input CRC data line.  It's a bus that

10  feeds in data into, you know, each of these circuits --

11  it is shared.  But that input CRC data line, as the

12  specification describes, includes two things.  It

13  includes what are called "input data," "portions," and

14  current CRC state or "current state."  And that can be

15  found, if you flip to Column 4 --

16          THE COURT:  Where is the reference here to

17  "current state"?

18          MR. CAMPBELL:  It's in Column 4, your Honor.

19          THE COURT:  All right.

20          MR. CAMPBELL:  At about line 36.  It's

21  discussing Figure 3 there.  It says, "The selected

22  circuit 305-308 performs the CRC operation on the input

23  data and outputs the CRC results.  Although the input CRC

24  data is shown in Figure 3 as being input on a single data

25  line, CRC circuits 305-308 may include two inputs: input

1  data and current state value.  These two inputs can be

2  concatenated together and conceptually considered as a

3  single input value."

4           Now, the reason it's called "current state"

5  and then an input data portion and the reason it's

6  referring to concatenation goes back again to the way in

7  which these things typically operate because the packets

8  are so large and the circuits that calculate the CRCs are

9  not big enough to handle them all in one go.  So, current

10 state is a reference to what is the existing state,

11 what's the existing remainder, what's the existing

12 residual that we're using.  The input data portion is

13 what's the next chunk of data that I need to process.

14 Those two things are concatenated together, fed into the

15 circuit, and you go again.  And you keep going until

16 you're done.

17           So, that is an embodiment here that shows this

18 idea of using, you know, an incremental style of

19 calculation to get to a final result; and you have more

20 than one CRC result along the way because you have more

21 than one iteration where you are taking input data,

22 dividing it by a polynomial, and looking for the

23 remainder.

24           THE COURT:  Okay.  Anything else on this

25 point?

1          MR. CAMPBELL:  The only last point that I

2    would make is that there is a passage at Column 5 that

3    makes completely clear that you can do Figure 3 either

4    using serial implementation or a parallel implementation.

5    If you look at line 47, it points out that although the

6    discussion above has been about a serial circuit, in

7    alternative implementations, you can implement them in a

8    parallel fashion.

9          If we consider the polynomials that are listed

10   in the patent at Column 4, with one exception, the others

11   are all polynomials that are used for packets that are

12   too big to calculate all at once; and it would require an

13   incremental style of calculation.  So, if you combine the

14   idea that you're going to have these big packets, clearly

15   Figure 3 talks about being able to do it incrementally

16   with the disclosure here that points you to these

17   protocols that have packet sizes that are too big to do

18   all at once, then, your Honor, we would submit that we

19   should not be construing the claims to exclude what the

20   patent's teaching us to use the disclosure for.

21          THE COURT:  I'm not sure that they are

22   disagreeing with you about that.  I mean, it seems to me

23   that the real difference between you is whether the

24   patent is limited to doing 32 bits at once and coming up

25   with a CRC result or whether -- and then saying that's

1  the end of the matter or whether you're treating the CRC

2  result that you get there as an interim result and

3  carrying it forward.  That seems to be the difference

4  between the two of you.  Am I misstating it?

5          MR. CAMPBELL:  I don't believe that that's the

6  difference between us.  And maybe I could make the

7  example very concrete.  Some of the prior art performs

8  calculations to correspond to these very polynomials and

9  the protocols that they go with.  So, all these big

10 network protocols that have large packet sizes, the prior

11 art addresses handling those.  And it does so by using,

12 you know, 32 bits at a time, the incremental style of

13 calculation until you get to the final answer where

14 you've processed everything that you want to.  You take

15 that value, you append it to the packet, and you send it

16 along.

17          Their argument is that that style of computing

18 a CRC is outside the reach of claim 12 and also outside

19 the reach of claim 16, and we are arguing that that's not

20 so, that the patent actually teaches you to do it that

21 way, that those things are inside the reach of

22 claim 12 --

23          THE COURT:  In that part of claim 4 that

24 you've shown me.

25          MR. CAMPBELL:  Correct.  And the provisional

1   application also has some instruction in it.  It's

2   incorporated by reference that it's similar.

3                THE COURT:  Well, let's go to the provisional

4   application and this sharing issue.  I don't get much out

5   of that Federal Circuit case that you cited.  The claim

6   construction decisions tend not to be easy to carry

7   forward into other technology and other patents.  And

8   when I look at the provisional application, it does seem

9   to be rather different from what we're dealing with here

10  in the sense that it doesn't even, as I read it, mention

11  separate circuits.  So, to the extent that it shows

12  sharing, I'm not sure that that's what is reflected in

13  the two patents that we're dealing with here.  So, could

14  you address that?

15               MR. CAMPBELL:  Yes, I can.  I would start with

16  Figure 3.  And actually I --

17               THE COURT:  Figure 3 of the --

18               MR. CAMPBELL:  Of the patent.

19               THE COURT:  Of the patent.

20               MR. CAMPBELL:  I've actually highlighted it in

21  a way that I think will help me explain this to the

22  court.  It's on Slide 19.

23               THE COURT:  Am I right that there is no

24  reference in the provisional to separate circuits?

25               MR. CAMPBELL:  The court is correct that there

1   are fewer details about how the circuits are put together

2   in the provisional than there is in Figure 3, with a

3   couple of exceptions; and that's what I'd like to talk

4   about are the exceptions here.

5              THE COURT:  Just a second.  I need to --

6              MR. CAMPBELL:  Of course.

7              THE COURT:  Yeah.

8              MR. CAMPBELL:  Okay.  At Slide 19 of the

9   handout -- I'm sorry.  I was meaning to refer to this

10  slide right here (indicating) first.

11             THE COURT:  Okay.

12             MR. CAMPBELL:  First of all, let me preface

13  this by saying that we don't disagree that there needs to

14  be a first circuit and a second circuit and we think the

15  claim language itself tells you what needs to be

16  separate.  The first circuit needs to have its own

17  hardwired polynomial, and the second circuit needs to

18  have its own hardwired polynomial.  There isn't a debate

19  between the parties here about hardwired polynomials

20  existing in the prior art and being separate.

21             The discussion here is whether there are other

22  things about the way the processors are organized that

23  cause those separate hardwired polynomials to collapse

24  into one circuit or not.

25             THE COURT:  Right.  And you both seem to agree

1    that the provisional shows sharing, right?

2             MR. CAMPBELL:  The provisional shows sharing

3    but does not necessarily show you that sharing means one

4    circuit.  And that's what I wanted to direct the court's

5    attention to in this highlighted Figure 3.

6             If we think about the style of computation

7    that Figure 3 shows when you're using 32 bits at a time

8    and you're feeding in the current state and input data

9    concatenated together on that input CRC data line, there

10   is a feedback path there that is shared among each of --

11   it is the way you get -- it's the same feedback way that

12   you get data into each of the circuits.  So, the CRC-32,

13   the CRC-16, the CRC-10, and the CRC-8 all have a common

14   feedback bus where the current state and the data that

15   you're going to feed to that circuit travel.  When you're

16   going to update --

17            THE COURT:  Well, which is the feedback bus?

18   How do I know what that is?

19            MR. CAMPBELL:  Okay.  When you're doing

20   incremental style of calculation --

21            THE COURT:  No, in the Figure 3 what --

22            MR. CAMPBELL:  Okay.  There are two parts to

23   this.  And, your Honor, I apologize for this; but when

24   you go back out to Figure 2, you can see an ALU that is a

25   trapezoidal shape like this.

1            THE COURT:  Right.

2            MR. CAMPBELL:  And it has an output -- a

3  single output that goes around and connects back up to

4  the bus and then inputs coming from the top.  So, in

5  Figure 3 the ALU out at the bottom is where the CRC

6  result goes.  You update the current state by storing it

7  in a register.  And then when you need to use that

8  current state for another iteration, it comes in on the

9  input data line down into the circuits; and you compute

10  another cycle.

11            THE COURT:  Okay.  But this seems to be a

12  different argument than reliance on the provisional.  I

13  was addressing first whether the provisional does you

14  much good.

15            MR. CAMPBELL:  Okay.

16            THE COURT:  And I'm -- and it does seem to me

17  that the provisional is sufficiently different from the

18  specification and the claims of the two patents that

19  we're addressing here that it's not all that helpful.

20            MR. CAMPBELL:  I would reference -- or respond

21  to that --

22            THE COURT:  I know it's incorporated, but

23  still.

24            MR. CAMPBELL:  Yeah.  Let me tell you why the

25  provisional is relevant.  It is incorporated by

1  reference; and, so, first of all, we know that an ALU

2  that's 32 bits wide with a 32-bit bus is something that

3  the inventor had in mind for his invention.  The other

4  thing that we know is that the provisional describes four

5  specific functions or instructions as "CRC operations."

6  That's a term that shows up in the claims.  And if you

7  look at each of those instructions -- it will say, for

8  example, CRC-32.  It's got an Operand A, and then it's

9  got Current State B.  So, that is a reference in the

10 provisional to this style of incremental computation

11 where you've got protocols of packets that are too big to

12 do 32 bits at a time.  That's why we think the

13 provisional is relevant.  It teaches that incremental

14 style of calculation.  If we move to the patent and look

15 at Figure 3, that's saying --

16          THE COURT:  But what does that have to do with

17 sharing?

18          MR. CAMPBELL:  In order to do the incremental

19 computation, you have to capture the polynomial division

20 from the first iteration and hold onto it.  You may have

21 to hold onto it for a while because in an ALU you're not

22 necessarily going to be able to go right back on the next

23 cycle.  There might be something else that the ALU wants

24 to do.  So, you have to capture it and hold onto it until

25 you're ready to use it again.

1          So, by engaging in that style of computing a

2   CRC and calling those incremental calculations "CRC

3   operations," that informs us what the patentee had in

4   mind when we move to the main disclosure in the

5   specification.

6          THE COURT:  But why -- I mean, it strikes me

7   that the two different styles of computation, if I

8   understand correctly, could just as easily be done with

9   sharing or without.  Is that correct?

10          MR. CAMPBELL:  It depends on what you mean by

11   "sharing."  We don't think in the prior art that there is

12   sharing between the actual CRC circuits.  Dr. Stone takes

13   a different view because he's saying that, well, there's

14   a common register where the residue gets written and you

15   have to take that residue as the current state to feed it

16   back on iteration; so, therefore --

17          THE COURT:  Well, that does seem to be an

18   issue that's not claim construction.

19          MR. CAMPBELL:  It depends, your Honor, on

20   whether that would be required for the embodiments that

21   are disclosed.  In other words, it is an issue of claim

22   construction because Dr. Stone is trying to use a

23   particular embodiment and say, well, that embodiment is

24   like the prior art and inside the reach of the claims.

25   We're saying no, the prior art is like a different

1  embodiment inside the reach of the claims and you're

2  trying to read that one outside of it.

3          So, there is a debate, we acknowledge, between

4  what qualifies as the circuit and whether these things

5  that Dr. Stone says are shared should be part of that

6  conversation.  But even if it is, our position is that

7  his argument is taking alternative embodiments that are

8  within the reach of the disclosure and moving them beyond

9  the reach of the claims.

10          THE COURT:  Well, yeah, I understand that.

11  But you both seem to agree that sharing is an issue here;

12  and I'm just trying to understand why a particular method

13  of computation as opposed to another suggests that there

14  is no sharing.  Because if I understand correctly, either

15  method could be performed with or without these shared

16  components.  No?

17          MR. CAMPBELL:  In the way that it is prepared,

18  in the way that it's described in the specification, the

19  things that Dr. Stone is pointing to in the prior art as

20  being shared have to be used to get data into each of the

21  circuits.  You can't get data into the CRC-32 in Figure 3

22  or the CRC-16 in Figure 3 or the others without using the

23  same feedback pathway that's shown here.  There isn't

24  another way to do it.

25          So, if you're doing incremental computation,

1  you've got a single output, you've got a register file in

2  Figure 2 where you could hold onto it, and then you've

3  got to feed it back in on this input CRC data.  And those

4  are the same things that he's saying in the prior art are

5  shared and therefore collapse everything into a single

6  circuit.

7          And, so, if he's right about that, what he's

8  done is essentially to exclude an embodiment that's

9  taught in the specification.  And the way that he gets

10 there -- he has many different pieces to the puzzle --

11 are basically the three terms that we presented to the

12 court for construction.

13         THE COURT:  So, what you're saying is that the

14 patent describes a method of computation which can only

15 be accomplished if they're sharing.

16         MR. CAMPBELL:  Can only be accomplished if

17 you're doing -- it discloses -- I'm hesitating for the

18 following reason.  A circuit designer could choose, you

19 know, to implement a circuit in a couple of different --

20 circuit or circuits in different ways.

21         So, for example, we have prior art where, you

22 know, there is no sharing.  There is independent, you

23 know, feedback pathways.  That's not very efficient.

24 That's not the way people would typically do it, and it's

25 not the way the provisional suggests that you should do

1  it or that the patent figures suggest that you should do

2  it.  You want to be efficient and not unnecessarily use

3  things or double up on things where if you're only going

4  to be doing the computation with one circuit or the

5  other, you know, you use them together.  And the patent

6  in Column 4 specifically teaches that these particular

7  circuits in Figure 3 are only going to be used one at a

8  time.  It says the instruction is going to indicate which

9  one you're going to use and that's the one that performs

10 the operation.

11        So, the mere fact that you have, you know, a

12 pathway in common to get the data into those circuits we

13 don't think means that they are sharing.  They aren't

14 sharing.  Dr. Stone says, well, in the prior art that

15 common feedback pathway does mean that it's sharing.  So,

16 his argument as applied to what's taught here would

17 exclude an embodiment that we think a person of ordinary

18 skill in the art would conclude is inside the reach of

19 the claims and not outside.

20        THE COURT:  Okay.  Well, let's hear from

21 Mr. Joffre and then we'll -- you'll have another chance.

22        You might as well start with the sharing

23 issue.

24        MR. JOFFRE:  So, the sharing issue, I think,

25 is -- has come up in this way; but it's in some sense a

Pretrial Hearing

36

shorthand.  What we've always maintained -- and it's

fairly clear in the Stone reports -- is that the claim

requires a first circuit configured to perform a first

CRC operation.  So, there has to be one that's configured

to perform a first CRC operation.

There has to be a second CRC circuit that is

configured to perform a second CRC operation.

THE COURT:  Okay.  So, they're saying --

putting aside the provisional application which doesn't

seem to me to be all that helpful, what they are saying

is that the specification contemplates a computational

method in which there is sharing rather than separation.

What's the answer to that?

MR. JOFFRE:  There's an easy answer.  There

are two embodiments.  The first embodiment is shown on

Column 5, line 37.  The first one is "As described

above" -- "Multiple CRC operations, each potentially

using a different polynomial, may be implemented in

separate CRC circuits.  The appropriate CRC circuit to

use for a particular CRC operation is indicated in the

CRC instruction."

It then moves on to Column 5, lines 43 to 46.

"In alternate implementations, instead of using four

separate CRC circuits 305-308, a single CRC circuit could

be used that includes four separate hardwired

Pretrial Hearing

37

1  polynomials.  At any given time, only one of the four

2  hardwired polynomials may be in use by the circuit."

3         That second alternative embodiment is what's

4  found in claim 6 which is not asserted in this case.  As

5  it says in claim 6, there is a circuit -- I'm reading now

6  from Column 6 around line 40.  There is a circuit

7  "generating the CRC result using the CRC circuit, the

8  input data, and a selected one of the hardwired

9  polynomials."

10        So, the issue is that the patent discloses one

11 form of CRC circuit where there is a CRC circuit and

12 you're allowed to choose different hardwired polynomials

13 within that circuit.  There is a second embodiment where

14 you're talking about a first circuit and a second

15 circuit, and that is the patent that -- the claim that is

16 being asserted --

17        THE COURT:  But I understood him to be

18 saying -- maybe I misunderstood.  I understood him to be

19 saying in the embodiment where you have separate

20 circuits, that there is nonetheless a description in the

21 specification of doing a computation which involves a

22 sharing of the feedback pathways.

23        MR. JOFFRE:  And, in fact, that's not true.

24 So, if you look at page -- it's 19 of their slides.

25 You'll see a lot of highlighted -- they've highlighted it

1  for you, Figure 3; and they are talking about those

2  feedback paths.  And they are talking about they're

3  sharing of those feedback paths.

4          If I can direct you to Column 4, lines 50-51.

5  Those lines are not part of the CRC circuit.  Rather,

6  this --

7          THE COURT:  I'm sorry.  Where are you?

8  Column 4?

9          MR. JOFFRE:  Column 4, lines 50-51.  You can

10  also see this also up around 31.

11          But it says, "CRC calculating circuits

12  305-308" -- the things -- the CRC circuits as shown in

13  this embodiment are those 305, the 306, the 307, the 308.

14  Those are the circuits that are both found in the claim;

15  that's the circuits that are shown in the figure.  So, to

16  talk about all of the other stuff around them that might

17  be shared is in some sense irrelevant for the purposes of

18  the claim.

19          THE COURT:  Wait.  I'm not sure that I

20  understand this sentence.  Let's see.  "CRC calculating

21  circuits may be implemented similar to circuit 400."

22          MR. JOFFRE:  Right.  That's on the next page.

23          Figure 4 shows the registers and the actual

24  calculation of a CRC result.

25          THE COURT:  Well, are you saying that the

1  highlighted pathways here are not feedback pathways?

2          MR. JOFFRE:  We are saying they are not part

3  of the CRC circuit.

4          THE COURT:  They're not -- so, how are they

5  identified as not being part of the CRC circuit?

6          MR. JOFFRE:  Because they list 305, 306, 307,

7  and 308 in the patent as the CRC circuits.  CRC

8  circuits -- you can see this also on Column 4, lines 25.

9  "CRC circuits 305-308 may execute CRC operations based on

10  32, 16, 10, and 8 bit polynomials, respectively."  It's

11  305, 306, 307, 308, the boxes, that are the CRC circuits.

12  So, to --

13          THE COURT:  And the highlighted pathways are

14  what?

15          MR. JOFFRE:  Those are just -- those are ways

16  that the data gets into a CRC --

17          THE COURT:  Input?

18          MR. JOFFRE:  Yeah.

19          THE COURT:  All right.

20          MR. JOFFRE:  They're input and output.

21          So, to talk about how that step is shared is

22  irrelevant to the point of whether or not the CRC

23  circuits can share information.

24          THE COURT:  Okay.  I understand what you're

25  saying.

1          MR. JOFFRE:  Okay.  So, the whole -- the point

2    here is that you have to have two circuits, and they each

3    have to be configured to perform a CRC operation.  That

4    means they have to each be able to generate a CRC result.

5    The reason why this is a fight is because in the hydrogen

6    atom prior art --

7          THE COURT:  I understand.

8          MR. JOFFRE:  So, I don't have to elaborate.

9          And there's only ever one CRC result.  So, you

10   could reconfigure the hydrogen atom to perform a

11   different CRC result, to provide a second CRC result; but

12   you don't have two, at the same time, circuits.  And

13   that's why this whole -- you have to be able to calculate

14   two (indiscernible).  That's not the point.  The point is

15   for there to be anticipation there actually has to be two

16   circuits that are configured at the same time.

17   Otherwise, you don't meet the claim language.

18          THE COURT:  Okay.  Let's just pause on that.

19   I'd like to hear from Mr. Campbell on this last point

20   before -- and we'll come back to you.

21          So, what's your response to the contention

22   that the highlighted pathways in Slide 19, whatever it

23   is, are not part of the CRC circuits?

24          MR. CAMPBELL:  Okay, your Honor.  I have two

25   things to say in response to that.  First of all, he

1    pointed to a portion of the specification that talks

2    about a serial implementation; and that's not what we're

3    discussing.  He took the court directly to a portion in

4    Column 4 where it talks about CRC calculation circuit

5    400.  And the figure in -- the CRC circuit at Figure 4 is

6    a serial circuit.  There is a different way to do

7    Figure 3, and you have to go over to Column 5 to pick up

8    the language there.

9            And at the very bottom of the column it says

10   "additionally," at line 50, "although CRC circuit 400 is

11   shown as a serial calculation circuit" --

12           THE COURT:  I'm sorry.  Which line is this?

13           MR. CAMPBELL:  Line 50.

14           THE COURT:  50.  Okay.  Yeah.

15           MR. CAMPBELL:  So, "although CRC circuit 400

16   is shown as a serial calculation circuit, in alternate

17   implementations it could be done in a parallel fashion."

18   It says "such a parallel embodiment could be implemented

19   as a circuit exclusive-or gates.  The difference between

20   exclusive-or gates and what's shown in Figure 4 is that

21   exclusive-or gates can't hold state.  You put data in,

22   and it just passes right through.  The serial computation

23   circuit in Figure 4 has flip-flops or registers that do

24   hold state.

25           THE COURT:  But still, how do I know that the

1   highlighted portion on Slide 19 is referring to a pathway

2   within the circuit as opposed to an input pathway --

3            MR. CAMPBELL:  Think of it this way, your

4   Honor.  If we just look at Figure 4, this is the serial

5   circuit.  The patent says --

6            THE COURT:  Which slide are you looking at?

7            MR. CAMPBELL:  I'm looking at Figure 4.  It's

8   not in my slide deck.  I'm sorry.

9            THE COURT:  Okay.

10           Yeah.

11           MR. CAMPBELL:  If we look at Figure 4, the

12  patent expressly says that this is showing us a CRC

13  circuit.  It's got a series of registers; but

14  importantly, at the far right-hand corner, it has an

15  input.  It --

16           THE COURT:  Yeah.  But what are you saying are

17  the shared pathways?  The line at the bottom?

18           MR. CAMPBELL:  No.  Your Honor, the thing that

19  would be shared is this arrow right here, this little

20  one, the one where it first comes in, the data -- it's

21  concatenated and it first comes into this circuit.

22           THE COURT:  How is it labeled?

23           MR. CAMPBELL:  It's to the right of 422.

24           THE COURT:  The arrow coming in to the right

25  of --

1          MR. CAMPBELL:  Yes.

2          THE COURT:  Yeah.

3          MR. CAMPBELL:  The arrow coming in to the

4   right is showing you how the data, which is labeled 431

5   and 432, are fed into the circuit.  So, there is an

6   input --

7          THE COURT:  Yeah.  But are you contending

8   that's a shared feedback pathway?  That doesn't seem to

9   be.

10          MR. CAMPBELL:  It is a shared feedback pathway

11  for the following reason.  You have to remember that this

12  Figure 4 is illustrative; and if you look at Figure 3,

13  each of those boxes, it's going to have something like

14  Figure 4 in it if you're doing a serial implementation.

15          And the input CRC data, the way that you get

16  these CRC values over here that are state -- current

17  state in Figure 4 into the circuit is on that common bus

18  that feeds into each of them.

19          THE COURT:  Yeah, but that sounds like an

20  input.

21          MR. CAMPBELL:  It is an input, but the input

22  is necessary in order to do the incremental style of

23  computation.

24          THE COURT:  Okay.  I think I understand what

25  you're saying.

1    Why don't we go back to Mr. Joffre and you can

2  comment on this last thing and then we'll move on to the

3  other point.

4    MR. JOFFRE:  Sure.  I think, as was

5  acknowledged, Figure 4, this computation here, that --

6  whatever is shown as 400, that lies inside those boxes.

7  So --

8    THE COURT:  It's labeled like 410, 411?

9    MR. JOFFRE:  Yeah.

10    THE COURT:  Yeah.

11    MR. JOFFRE:  So, that all lies inside.  So, to

12  talk about other things out there that might be shared,

13  that's not -- I don't take anything from 400 to challenge

14  what we are saying.  We're saying yes, there's four

15  separate circuits and they are all doing things

16  separately, or could be doing things -- well, they're all

17  configured, rather, to each do a CRC calculation.

18    THE COURT:  This Figure 4 does show sharing;

19  but what you would say, it's sharing of the input

20  pathway.

21    MR. JOFFRE:  Right.  They are all -- yeah.

22  There are multiple different -- you only -- the data

23  comes in; and, so, it has to go to the circuits.

24    THE COURT:  Okay.  All right.  So, why don't

25  we move on away from the sharing issue into the input

 1   issue.  But I think we're going to need to hear from

 2   Mr. Joffre in response to what Mr. Campbell said before.

 3              MR. CAMPBELL:  I'm sorry.  Which point are we

 4   going to be addressing?

 5              THE COURT:  Well, I think the -- it seemed to

 6   me that as part of this discussion, you somewhat narrowed

 7   the remaining disagreements here.  And if I understand

 8   correctly, the fundamental disagreement -- maybe it's not

 9   the only disagreement -- is whether the carrying forward

10   of the remainder takes an embodiment outside or takes

11   prior art outside of the scope of the claims here.  Does

12   that statement of the issue make sense to you?

13              MR. JOFFRE:  I heard that.  I don't believe

14   that it takes it -- that there is an exclusion of

15   embodiments in the way he suggests.  The reason being --

16              THE COURT:  But it is --

17              MR. JOFFRE:  I --

18              THE COURT:  You've got to tell me whether I'm

19   understanding this right or not, the disagreement between

20   the two of you.  It seems to me that the fundamental

21   disagreement is whether the CRC result is the result that

22   you get from processing or doing the CRC computation on,

23   say, a 32-bit chunk --

24              MR. JOFFRE:  Right.

25              THE COURT:   -- or whether the patent

Pretrial Hearing

46

1  contemplates embodiments in which the remainder is

2  carried forward into some later stage of the computation.

3          Does that make sense to you as a statement of

4  the disagreement between you?

5          MR. JOFFRE:  I think that's right.  I think

6  what we're -- I think our point is simply that in that

7  instance when we're specifically talking about the

8  hydrogen prior art, we're asking whether or not -- does

9  this residual that it creates at the end of the day, is

10 that a CRC result, is essentially what the question is.

11 And what we're saying is when you go through once and you

12 get this number, it is not a value that is then used to

13 perform error checking.  So, therefore, going through

14 this thing and getting --

15         THE COURT:  Under the patents.

16         MR. JOFFRE:  Under the patent claim and under

17 what the court's previous construction of "CRC result"

18 is.  If you go through once, you get some thing; it's not

19 used for error checking.  All it's used for is it's some

20 number that will be used -- you know, put through the

21 circuit again and again and again and again and

22 eventually at the end of the day --

23         THE COURT:  The hydrogen embodiment, you're

24 talking about?

25         MR. JOFFRE:  Yes.

Pretrial Hearing

47

1           THE COURT:  Yes.

2           MR. JOFFRE:  And eventually you will get to a

3  thing that is a CRC result.  And it's not simply us that

4  is pointing to that final thing that is used for error

5  checking as the CRC result.  In making his invalidity

6  contentions why the hydrogen prior art reads onto this

7  claim, Dr. Stark pointed to that end result because that

8  is the CRC result, well-known in the art, that you get to

9  use error checking.  So, it is the final thing at the end

10  of the day.  It's not this iterative -- not every time

11  you go around the loop do you get a CRC result.

12           And, so, our point is you can't use that one

13  value through as an indication that you have produced a

14  CRC result.

15           THE COURT:  Your view is that's an interim

16  result.

17           MR. JOFFRE:  Right.

18           THE COURT:  It's not a CRC result.

19           MR. JOFFRE:  That's --

20           THE COURT:  The CRC result has to be the final

21  result.

22           MR. JOFFRE:  That's right.

23           THE COURT:  All right.

24           MR. JOFFRE:  That would be the narrowing of

25  the dispute.

1          THE COURT:  Okay.  So, what -- have I missed

2    anything?  It seems to me that this is boiling down to

3    the dispute that we just discussed which I might

4    characterize as the "interim versus final results

5    dispute" and the "sharing dispute."  Is there -- am I

6    missing something?  Is there another dispute here?

7          MR. JOFFRE:  There is the final dispute which

8    is about parallel decomposition.  And, so, I can quickly

9    sum up what that dispute is --

10          THE COURT:  Okay.

11          MR. JOFFRE:  -- if you would care to --

12          THE COURT:  Go ahead.

13          MR. JOFFRE:  So, the dispute here is what does

14   it mean to decompose a serial circuit in parallel.  And

15   what we say is when you decompose under the claim

16   language, you have to create a configuration of exclusive

17   XOR gates that are configured in a parallel

18   decomposition -- i.e., in parallel -- and it has to the

19   decomposition of the serial CRC calculation circuit.

20   And, so, what we say is under that language, what you

21   need to do is to take the CRC serial circuit that's found

22   in, for example, Figure 4 and then decompose it into

23   parallel components.

24          What you're not allowed to do and what --

25   because it just doesn't make sense given the claim

1 language, is to say, well, as long as I have within that

2 serial CRC circuit any two XOR gates that are set up in

3 parallel, that is a parallel decomposition of the

4 circuit.  We would say no, that's not -- the whole point

5 of it is -- in reading the claim language itself, is no

6 you have to decompose the circuit into parallel.  And,

7 so, that is why this fight boils down -- comes up in the

8 hydrogen atom.  The --

9             THE COURT:  I'm not sure that I'm following

10 this.  Try again.

11             MR. JOFFRE:  Okay.  So --

12             THE COURT:  I'm -- you referred to XO gates.

13 Is that -- what's an XO gate?

14             MR. JOFFRE:  So, the XOR gates are the gates

15 that the bits go through that can be seen on Figure 4.

16 For example, you'll see 420 as an example.  They are

17 essentially gates where -- they are very, very simple

18 gates where it has two inputs and an output.  And if you

19 have an input -- if the two inputs are the same, the end

20 result is going to be zero; but if the two inputs are

21 different -- i.e., a one and a zero -- you're going to

22 get one.  So, that's all that the gate does.  It just

23 basically does very simple mathematical -- or it can be

24 reduced to a very simple mathematical computation.

25             THE COURT:  Okay.  So, what's the difference

50

1  between?

2          MR. JOFFRE:  The question is whether or not --

3  this is shown here in Figure 4 as a serial circuit.  The

4  reason being is you take the -- you put in the data.  You

5  shift everything once.  You shift everything -- and if

6  you shift enough times, you'll eventually get the CRC

7  result.

8          THE COURT:  What do you mean "if you shift

9  enough times"?

10          MR. JOFFRE:  So, the data comes in from the

11  right-hand side.  You'll see the input data --

12          THE COURT:  Uh-huh.

13          MR. JOFFRE:  -- is 101 -- you'll see that at

14  434, for example.

15          THE COURT:  Yeah.

16          MR. JOFFRE:  You put each one of those into

17  the register as shown in 410, 411, 412, 413.  You put

18  those in, feed them in.  They're just memory.  And then

19  what you do is you shift every clock cycle.  And, so, the

20  result -- whatever was found in the register 410 will go

21  back to all those places shown in those arrows.  You'll

22  see one goes back to the XOR gates -- each of the XOR

23  gates.  Every other bit gets shifted over one.

24          And, so, basically what you're doing is you're

25  pushing the bits through the circuit.  And as you do

1    that, the end result of doing that is it turns out

2    cleverly to be equivalent of a mathematical computation

3    of dividing a data by the wired polynomial.  So, it is

4    basically a very clever way of doing math very quickly.

5              And, so, you do that through this serial

6    arrangement.  What is not shown in any figure, however,

7    is that you can do -- instead of doing this sort of one

8    end at a time in a serial fashion -- and it's not in any

9    figure -- is you can -- it says you can do it in parallel

10   fashion.  So, you set up the gates in parallel with one

11   another so that all of the gates would see the same

12   initial input.

13             It's much more complicated than what's shown

14   here, but how to break up a circuit into either a serial

15   or a parallel decomposition is well-known.

16             The question that everybody seems to have

17   focused on is are you allowed to simply have any two

18   gates, any two pieces of circuitry in parallel, in

19   however small amount, or whether or not you have to

20   decompose the entire CRC circuit into a parallel

21   arrangement.

22             THE COURT:  You mean 32 bits at once?  Is

23   that --

24             MR. JOFFRE:  Yes.

25             And, so, what -- the way that this has been

1  characterized is well, you know, how quickly can you do

2  that computation.  If you have parallel arrangement, the

3  nice benefit of having a parallel arrangement is that you

4  can do computations much more quickly because you're

5  cheating in all of the data at once.  And this was shown

6  primarily in the Stone infringement report.  He described

7  how one would break up a circuit in parallel in -- I

8  believe it was paragraph 70.

9           So, the question lies in do you have to take

10  the entire circuit and create a parallel arrangement or

11  can you take any little piece of it and make it parallel;

12  and that is sufficient to meet claim 16.

13           THE COURT:  Well, I'm not sure that I'm

14  following this.  I thought the dispute was about whether

15  it had to parallel process all 32 bits at once or

16  parallel processing each bit -- each separate bit was

17  sufficient or whether it -- in other words, whether it

18  had to parallel process the entire input or could do it a

19  bit at a time.  Am I understanding?

20           MR. JOFFRE:  That is another way to

21  characterize the dispute.  Because this is written in a

22  structural format, it's basically talking about how do

23  you set up circuits together.  This is the way that --

24  the end result of the circuits are going to be whether or

25  not you can do the entire CRC calculation in a parallel

1  circuit which would --

2          THE COURT:  For the 32 bits.

3          MR. JOFFRE:  Yes, all 32 bits.

4          -- or whether or not you have to -- whether or

5  not you can say, well, you do two bits at a time.  And,

6  so, this goes back to Intel's iteration point, that no

7  it's not -- you don't need to do the entire CRC

8  calculation at once; you can sort of break it up.

9          And what we are saying is no, when you are

10 decomposing a circuit, a serial -- it says it's parallel

11 decomposition of a serial CRC calculation circuit.  What

12 that means is the end result is that you have to be able

13 to do whatever that CRC circuit was able to do in

14 parallel.

15         THE COURT:  Okay.  So, what is it in the

16 specification that tells me that your view is right, that

17 it has to do all 32 bits at once?

18         MR. JOFFRE:  So, the one place -- there is not

19 much detail in the specification on parallel.  But the

20 one place that it is found is in Column 5, line 49.  So,

21 you see "Additionally, although CRC circuit 400 is shown

22 as a serial CRC circuit, in alternative implementations,

23 the CRC circuit can be implemented as a parallel

24 decomposition of the serial circuit shown in" 400.

25         So, you took 400 and you've turned it into a

1  serial -- (reading) can be implemented as a parallel

2  decomposition of that circuit.  Such a parallel

3  embodiment could be implemented as a circuit of XOR

4  gates.  Although the parallel implementation would be

5  much more -- much more complex, it has the virtue that it

6  could generate the CRC result in as little as one clock

7  cycle.

8            THE COURT:  So, why does that tell me that

9  it's not -- that it's 32 bits at a time rather than 1 bit

10  at a time or 2 bits at a time?

11            MR. JOFFRE:  The reason being is that -- what

12  that says is if you take all the data -- in the serial

13  embodiment you have to go through many clock cycles in

14  order to push the data through the serial circuit.  Here

15  it says you don't need to do that.  You take the entire

16  chunk of data through the parallel limitation, you will

17  get within one clock cycle the end result.  So, it's

18  many, many, many times faster.

19            THE COURT:  Okay.  I think I understand.

20            Let's hear again from Mr. Campbell.

21            MR. CAMPBELL:  Thank you, your Honor.

22  Referring back to that same passage of the specification,

23  it says that the "parallel implementation would require a

24  more complex circuit," but "has the virtue of generating

25  the CRC result in as little as one clock cycle," clearly

1  connoting that it depends.  It depends on a number of

2  things.  It could calculate it in one clock cycle if you

3  didn't have more data.

4        THE COURT:  Well, do you agree that a clock

5  cycle in a 32-bit chip means processing all 32 bits

6  within the single clock cycle?  Am I understanding that

7  correctly?

8        MR. CAMPBELL:  It depends.  It can be, yes.

9        And just to frame this dispute, to take it out

10  to just a slightly higher level briefly, the prior art

11  does 32 bits at a time.  Okay?  So, there's no debate

12  about that.  The prior art circuits that we're talking

13  about process 32 bits at a time.

14        Dr. Stone is saying it doesn't count because

15  some of the packets that they work on are bigger than

16  that; and, so, they're going to have to break it up and

17  do it, you know, a couple of times before they get all

18  the way through the packet.  He's saying that you have to

19  do everything all at once.  We think, with due respect,

20  that that's crazy because --

21        THE COURT:  I'm not -- it might be, but I'm

22  not sure he's saying that.

23        MR. CAMPBELL:  Well, I would invite the court

24  to read the deposition testimony of Dr. Stone that we've

25  submitted as Exhibit 1, starting at about page 57 all the

1  way through 63.  We walked through several of the

2  protocols that are reflected by the polynomials that are

3  listed in the patent here and asked him, okay, if we're

4  going to take the teachings of Figure 2 and Figure 3 and

5  we're going to try to build a circuit that satisfies the

6  reach of claim 16, would it make any sense to even try?

7  And he said no.  It has no practical purpose for -- for

8  those kind of big protocols, you know, with a 32-bit

9  machine, it just makes no sense because what he's saying

10  fundamentally is the only thing that a parallel

11  decomposition could cover in claim 16 is everything all

12  at once.

13          THE COURT:  And not just 32 bits --

14          MR. CAMPBELL:  Correct.  And I pointed out

15  earlier, your Honor, that --

16          THE COURT:  Well, suppose I were to say

17  parallel decomposition means you've got to be able to

18  process 32 bits in parallel rather than doing it serially

19  with 1 or 2 bits at a time.

20          MR. CAMPBELL:  Then Dr. Stone's --

21          THE COURT:  You would be happy?

22          MR. CAMPBELL:  I mean, we -- I don't think

23  that's the right construction, your Honor; but it

24  wouldn't exclude the -- you know, the prior art.

25          THE COURT:  Well, that's another question

1    which is going to be for the jury, not for me.  But --

2            MR. CAMPBELL:  I just don't see the principal

3    basis on which you could say 32.  If you look at that

4    passage in the specification, I mean, it plainly says

5    that you're going to have a serial calculation that's

6    turned into a parallel decomposition.  And if you --

7            THE COURT:  Well, what serial calculation --

8    I'm not following it.  Where does it say that?

9            MR. CAMPBELL:  Okay.  All right.  If we -- I

10   apologize, your Honor.  Let me slow down just twice and

11   point you to two specific things.  The language at

12   line 48 of Column 5 is talking about CRC circuit 400.

13   And then it continues on that line.  It --

14           THE COURT:  It's shown as a serial --

15           MR. CAMPBELL:  It's a serial CRC circuit.

16           THE COURT:  So, that means it's not parallel

17   decomposition, right?

18           MR. CAMPBELL:  Correct.  Serial means one bit

19   at a time.

20           THE COURT:  Yes, so not parallel.

21           MR. CAMPBELL:  Right.  So, one bit at a time.

22           If we go to claim 16 and look at what the

23   claim actually says --

24           THE COURT:  Okay.

25           MR. CAMPBELL:  It is a dependent claim off of

1  claim 12, and it talks about things that the first and

2  second CRC circuits must comprise.  So, they need to

3  include but they are not limited to these things.  And

4  those things that they have to include are "exclusive-or

5  gates," otherwise known as "XOR gates," "configured as a

6  parallel decomposition of a serial calculation circuit."

7          So, what the claim language on its face is

8  telling us is your first circuit needs to have something,

9  something very specific.  It needs to have exclusive-or

10  gates that are arranged as a parallel decomposition of

11  what a serial circuit would do one bit at a time.

12          Now, there isn't anything in the specification

13  that teaches you that that's limited to 32 bits.  It

14  simply isn't serial.  You process multiple things at the

15  same time; so, two or more bits need to be processed at

16  the same time to satisfy the language of claim 16.  If

17  you're doing 32 bits at a time, that's great; but if

18  you're doing fewer than 32 bits at a time that's also

19  within the reach of that claim.

20          THE COURT:  So, that's the basic difference

21  between you?

22          MR. CAMPBELL:  Yes.  And then one final point,

23  your Honor.

24          THE COURT:  Would processing one bit at a time

25  be parallel?  No.

1        MR. CAMPBELL:  It is not because that is the

2  definition of serial.

3        THE COURT:  Right.

4        MR. CAMPBELL:  And I could give you a --

5  actually this example may help just a little bit.  I

6  mean, computers today are different; but back in the old

7  days when we first had PCs, you know, you had to pay

8  attention to what kind of port you had to get to the

9  printer.  Back in the old-old days, it was a serial

10  connection where just one bit literally would flow out

11  over the wire at a time.  They made it faster by coming

12  up with parallel ports where you had more than one bit

13  that would flow out over the wire at a time but not all

14  of the bits would flow out over the wire at the same

15  time.  You still would have the situation where you're

16  processing multiple bits at the same time and you're just

17  moving along.

18        Another illustration that I think might help

19  is if you think about a single lane road.  The cars are

20  all lined up bumper to bumper.  Only one can get through

21  at a time.  You can parallelize that process by adding

22  additional lanes.  If you add two, you are now letting

23  cars travel in parallel.  And you can make it even more

24  parallel by adding additional lanes.  But once you get

25  out of the single lane where you're not doing one bit at

1  a time, you are now in the parallel world where you are

2  processing -- you're working on multiple bits of data at

3  the same time.

4          THE COURT:  But if I understand correctly what

5  they're saying, is that if you've got a 32-bit chip, that

6  it has to be able to process all 32 bits in parallel.  Am

7  I -- does that make sense?

8          MR. CAMPBELL:  That is not what Dr. Stone is

9  saying.

10          THE COURT:  No, but -- that seems to be what

11  they're saying today.  Is that -- am I --

12          MR. CAMPBELL:  It is not.  It is not what

13  they're saying.  What they are saying is -- let's just

14  take an example.  Let's say you had a 32-bit machine and

15  you had a packet that you wanted to calculate a CRC for

16  that's 50,000 bits long.  Some of the protocols here are

17  like that.  They would say that your 32-bit machine

18  calculating 32 bits at a time is not a parallel

19  decomposition because it's not processing all of the bits

20  at the same time.

21          THE COURT:  All 32 at one time.

22          MR. CAMPBELL:  No, all 50,000.

23          THE COURT:  No, I don't think they're saying

24  that.

25          MR. CAMPBELL:  That is what they are saying,

1  your Honor.

2           THE COURT:  Well, let's ask Mr. Joffre that.

3           Are you saying it has to be able to process

4  all 50,000 at one time?

5           MR. JOFFRE:  No, not -- what we're saying is

6  that if you have a CRC result, then you have to

7  parallel -- you have to process the input data in order

8  to -- at one time in order to get to the input -- to the

9  CRC result.

10           THE COURT:  Am I correct that what you're

11  saying is if you've got a 32-bit processor, it has to be

12  able to process 32 bits in parallel?  Is that accurate?

13           MR. JOFFRE:  Yes.  And the point -- and the

14  reason why that's true is because you have to have a

15  parallel decomposition of a serial CRC circuit.  So, if

16  you had -- you were able to do a 32-bit serial CRC

17  calculation, you would want to be able to do that -- you

18  would have to decompose the circuit so that it could do

19  that process, you know, parallel configuration.  That's

20  what we're saying.

21           And, so, to start talking about there's huge

22  packets, that's fine; but the question lies in whether or

23  not you have -- when you have CRC results.  And, so, if

24  you have a CRC result and you have input data, take the

25  input data, you put it through a parallel decomposition

1  of a circuit, and that -- which turns out to be basically

2  one clock cycle, you will produce the CRC result in

3  that -- using that parallel decomposition.

4           THE COURT:  Okay.  All right.  Any final word,

5  Mr. Campbell?

6           MR. CAMPBELL:  Just one, your Honor.  If you

7  just take that recent example, if you have a 32-bit

8  circuit and your packet is bigger than 32 bits, you

9  obviously aren't going to be able to process all of those

10  bits in one clock cycle.

11           THE COURT:  Well, right.  That seems to make

12  sense.

13           MR. CAMPBELL:  And, so, they're arguing that

14  if you cannot process it in a single clock cycle, you

15  don't have a parallel decomposition.  We're saying that

16  the specification, if you look at it, it says it could be

17  completed in as little as one clock cycle.  It's worded

18  that way precisely because it's not necessarily going to

19  be.  It's going to depend on how much data you've got to

20  process.

21           So, the notion that if you've got a 32-bit

22  circuit, can you process a packet that's bigger than that

23  is the core of the dispute and would be within the reach

24  of claim 16; and that deposition testimony that I cited

25  the court to makes crystal-clear what the disagreement

1 between the parties is on this.

2           THE COURT:  Okay.  Thank you.

3           Coming back to the preliminary instructions,

4 under Heading 8 Stragent suggested "slightly favors

5 infringement."  The only change I'm making in the

6 proposed revisions is to delete the language "slightly

7 favors."  So, with that, I think I've got my preliminary

8 instructions.

9           Now, is there any objection to those

10 instructions with these changes?

11           MR. JOFFRE:  No, your Honor.

12           THE COURT:  Mr. Campbell?

13           MR. CAMPBELL:  No objection.

14           THE COURT:  Okay.  Thank you.

15           All right.  So, I'm going to take a break now;

16 and I think -- why don't I give you about half an hour.

17 We'll come back at ten of 12:00.  And what I'm going to

18 try to do is to give you the actual claim constructions

19 for these three items and allow you to comment on them or

20 object to them or whatever.  And I'm going to try to look

21 at the exhibit objections so that I can deal with

22 those -- well, maybe we'd better make it 12:00 rather

23 than ten of 12:00.  And that will give you an opportunity

24 also to look at the two orders that I've entered and see

25 if you have any questions about those.

Pretrial Hearing

64

1          Okay.  So, let's take a recess until 12:00.

2          (Recess.)

3          THE COURT:  All right.  I've done a draft

4    claim construction order which my assistant will bring

5    down in a few minutes and what I would suggest is that we

6    take an hour break for lunch after we get that to give

7    you an opportunity to look at it.  You can make any

8    objections or suggest any changes in the order, and then

9    hopefully we'll be done with it.  And what I want to be

10   sure is that we get any objections to the order on the

11   record so that we don't have to go through this again at

12   the charge conference.  Okay?

13          Now, before we do that, I've been through the

14   exhibits and the objections; and I guess the first

15   question I have is have you both had a chance to read the

16   two orders that were posted this morning?

17          UNIDENTIFIED SPEAKER:  No, sir.  They have not

18   been posted.

19          THE COURT:  They have not?

20          UNIDENTIFIED SPEAKER:  No, sir.

21          THE COURT:  Okay.  We'll check on that.  We'll

22   try to get that done now and -- so that you can look at

23   it during the next break.

24          UNIDENTIFIED SPEAKER:  Yes, sir.  I --

25          THE COURT:  Basically, I mean, in simplified

1  form, I've determined that there is a lack of standing on

2  the part of the other plaintiff.  I'm going to allow you

3  to introduce and rely on these licenses that were the

4  result of a settlement.  I am going to entertain

5  instruction that those perhaps should be -- those should

6  be given lesser weight than the ordinary licenses.

7           And with respect to the hedonic analysis, I've

8  excluded that.  And that, it seems to me, would make moot

9  this effort to rely on the Hitt report.

10          Let me ask Mr. Campbell if that's true.

11          MR. CAMPBELL:  If the hedonics information is

12  not going to be presented, then Dr. Hitt and his report

13  don't have anything to do with the issues before the

14  court.

15          THE COURT:  So, that issue would be moot.

16          MR. ALBRITTON:  I think your orders, your

17  Honor, make there really only two live disputes; so, I

18  think that would take care of the Hitt report.  Also,

19  your ruling would resolve the issues related to those TAG

20  documents.  So, those are not at issue.

21          I believe that the --

22          THE COURT:  Well, let's just be clear about

23  it.  So, since I'm going to allow you to rely on the

24  licenses, that would mean that there is no longer a

25  dispute as to Exhibit Numbers 39, 48, 49, 50, 51, 52, and

Pretrial Hearing

66

1  53 and 54, 55, 64, and 248; is that correct?

2          MR. ALBRITTON:  Your Honor, I think that is

3  partially correct.  I certainly agree that that resolves

4  the disputes with respect to Plaintiff's Exhibit 50

5  through 55, 64 and 248.  The 39, 48, and 49, I would

6  think that Intel has got a different view of --

7          THE COURT:  Oh, I'm sorry.  You're right.

8  Yeah.  I'm going to -- with respect to -- yes.  That's a

9  different issue.  39, 48, and 49, I'm going to allow

10  those to be admitted for a limited purpose.  And, so,

11  that resolves that one, I think, right?

12          MR. ALBRITTON:  Yes, sir.  And then the only

13  remaining issue then, your Honor, would be --

14          THE COURT:  So, just to be clear --

15          MR. ALBRITTON:  Yes, sir.  I'm sorry.

16          THE COURT:  39, 48, and 49 are admitted for

17  limited purpose.

18          50, 51, 52, 53, 54, 55, 64, and 248 are

19  admitted.

20          And then 192 through 196, those are excluded

21  because the issues become moot, correct?

22          MR. ALBRITTON:  Yes, sir.  We understand that

23  you would not allow them to be admitted.

24          THE COURT:  Right.

25          MR. ALBRITTON:  Yes, sir.

Pretrial Hearing

67

```
 1          THE COURT:  And then with respect to 146, 147,
 2   and 148, we're going to -- I'm reserving on those
 3   depending on what happens at the trial.
 4          MR. ALBRITTON:  That's correct.
 5          THE COURT:  And then with DTX 186, that's moot
 6   because of my ruling with respect to the hedonics
 7   analysis, right?
 8          MR. ALBRITTON:  Yes, sir.
 9          THE COURT:  And then the remaining one is 226,
10   227, and 228 which is the file histories.  I'm going to
11   exclude those.
12          Does that take care of everything?
13          MR. ALBRITTON:  Yes, sir, it does.
14          MR. CAMPBELL:  Yes, your Honor.
15          THE COURT:  Okay.  So, I assume that you need
16   a little time to review those and need to consult with
17   your experts.  Should we -- is 45 minutes enough to do
18   that?  Do you want to take a moment just to look at them
19   quickly?  You can take a moment now if you want.
20          MR. ALBRITTON:  45 minutes is very acceptable
21   to the plaintiffs, your Honor.
22          THE COURT:  Mr. Campbell?
23          MR. CAMPBELL:  That will be fine, your Honor.
24          THE COURT:  Okay.  So, why don't we resume at
25   1:00, then.  Okay?  Thank you.
```

1           (Recess.)

2           THE COURT:  Okay.  What I'd like to do is do

3    this in two steps with respect to the draft claim

4    construction order.  The first is to ask whether there

5    are any suggestions that each of you has to make it

6    clearer or to correct an obvious error in here.  I

7    obviously don't want you to reargue the whole set of

8    claim construction issues.

9           And then second, once we have a final claim

10   construction that I have adopted, I'm going to ask each

11   of you which parts of it you object to and why and to ask

12   you to propose an alternative in each case so that we

13   have a clear record as to what objections there were to

14   the claim construction.

15           So, why don't we start with Mr. Campbell on

16   this first phase here.  Are there any language changes

17   that you would propose in here?

18           MR. CAMPBELL:  Your Honor, I understand that

19   you don't want to hear objections and reargument.  I

20   guess I would have a comment or two about the first one

21   so that we at least understand what the court is

22   proposing here.

23           I've read these constructions together; and as

24   I've read them together, I will simply advise the court

25   that I do not understand these constructions to be

1  precluding the application of claim 12 to a processor

2  that is set up and intended to compute CRC results for

3  packets that are larger than 32 bits.  I'm not

4  understanding this construction to foreclose that.  If it

5  does foreclose that, if that's what the intent is, then I

6  do think that we are reading out explicit embodiments

7  that are described in the specification.

8              THE COURT:  Well, I am not adopting a

9  construction that the claims require the capability of

10 processing the entire set at one time.  I am not saying

11 that it requires that.  I am saying that it is within the

12 claims if it can process a batch, say, 32 bits at a time;

13 but it does not require that it be able to process the

14 entire transmission or whatever at one time.

15             MR. CAMPBELL:  That is my understanding as I

16 read through the proposed claim constructions together,

17 your Honor.

18             THE COURT:  Well, are there any changes that

19 you're proposing here?

20             MR. CAMPBELL:  Well, for example, in the first

21 one --

22             THE COURT:  Well, let's take them one at a

23 time and then --

24             MR. CAMPBELL:  Sure.

25             THE COURT:  -- I'll go between you and

1  Mr. Albritton.

2          As to the first one, what changes, if any, do

3  you propose?  I'm not asking now for your objections.

4  You'll get a chance to do that.  I'm just asking for any

5  proposed changes to make it clearer or easier to

6  understand.

7          MR. CAMPBELL:  Your Honor, I think if we were

8  to insert anything at all, we would need to insert a

9  clarification that the fact that two different CRC

10  circuits under some circumstances will have an output

11  register or a feedback path where the output of those

12  circuits will be used is not foreclosed by the

13  construction if there are other circumstances where the

14  computation of the CRC result under the remaining

15  constructions that the court has adopted does not involve

16  any kind of sharing.

17          THE COURT:  I'm not sure that I understand

18  that.  What specific language change are you proposing?

19          MR. CAMPBELL:  We have a first and second

20  circuits in the '072 patent claim 12 and a plurality of

21  CRC circuits in claim 1 that are separate circuits that

22  do not share an output register or feedback paths.  What

23  I am simply wanting to clarify, your Honor, is that the

24  existence of a common feedback path or an output register

25  where a CRC result that is otherwise calculated is placed

 1  does not foreclose that processor from reading within the

 2  reach of the claims.

 3          So, for example, if there are some

 4  circumstances where in the computation of a CRC result an

 5  output register is used and the incremental calculation

 6  is fed back on the way to getting to the final outcome,

 7  the mere fact of such an output register does not by

 8  itself mean that the device is outside the reach of the

 9  claims.

10          THE COURT:  Well, let's hear from

11  Mr. Albritton.

12          MR. ALBRITTON:  Mr. Joffre will speak on that.

13          THE COURT:  I'm sorry.  Mr. Joffre, right.

14          MR. JOFFRE:  I apologize.  I'm not sure I

15  understand Mr. Campbell's change.  So, I -- we have no

16  objection to this language.  We think it's clear.  It's

17  separate circuits that do not share output registers or

18  feedback paths.  So, I'm not -- I don't quite understand

19  what his proposal is; so, it's hard for me to object.

20          It sounds like he's making an invalidity

21  argument, and I just -- I'm sorry.  I apologize.  I just

22  don't have a way to respond to it.  We are perfectly fine

23  with this language.

24          THE COURT:  Okay.

25          MR. CAMPBELL:  Would the court like to hear

1   our objection?

2             THE COURT:  We'll go through the objections

3   when we finish this first phase.  The first phase is to

4   try and clarify it.  And I'm not going to adopt the

5   clarification that you suggested because I'm not sure

6   that I understand it.  But you can frame it in terms of

7   an objection later on and propose language that you think

8   should go in.  Okay?

9             MR. CAMPBELL:  Okay.

10            THE COURT:  So, let's do the second one.  Do

11  you have any suggestions with respect to the second one?

12            MR. CAMPBELL:  We don't have any suggestions

13  for the second one.  Again, we've read these together.

14  And given the court's construction of "input data," I

15  believe I understand what is here; and I don't have

16  anything specific to propose.

17            THE COURT:  Okay.  Mr. Joffre, how about the

18  second one?

19            MR. JOFFRE:  No objections.

20            THE COURT:  Okay.  The third one?

21            MR. CAMPBELL:  Again, your Honor, I don't have

22  anything specific to propose here.  I think we understand

23  what the court has done.

24            THE COURT:  Okay.  Mr. Joffre?

25            MR. JOFFRE:  We just have one minor

1 clarification.

2         THE COURT:  Okay.

3         MR. JOFFRE:  In the definition, "input data"

4 is (reading) the block of data equivalent in size to the

5 processor's capacity, we would recommend -- this is

6 unclear to us a little bit, and we would recommend

7 instead of using the word "processor" you put in "CRC

8 circuits."

9         The reason why this is unclear is -- I think

10 we've all today been arguing about what's been input into

11 the CRC circuit.  The reason there is some lack of

12 clarity, which is the word "processor" alone, is that if

13 we look at Figure 2, you'll see that the entire figure is

14 a network processor; and on the left side, going into

15 network processor there is input, in Figure 2.

16         THE COURT:  Yeah.

17         MR. JOFFRE:  And then if we go to figure --

18 that's not what we've been arguing about.  We've been

19 arguing about, in Figure 3, the input CRC data that goes

20 into the individual CRC circuits.

21         And, so, for example, the statements that are

22 on Column 4 around lines 35-36, those are the input CRC

23 data that we've been talking about.  In fact, the 32 bits

24 that is referred to in the parenthetical, it says at

25 Column 4, lines 45 through 46, "In one possible

1    implementation, the input CRC data is four bytes long."

2    That input CRC data is that input CRC data at Figure 3.

3            So, we would just clarify that "input data" is

4    the block of data equivalent in size to the CRC circuit's

5    capacity, e.g., 32 bits for the CRC circuit.

6            THE COURT:  Okay.  Mr. Campbell, what's your

7    reaction to that?

8            MR. CAMPBELL:  Your Honor, I -- it depends on

9    whether we're talking about an instant in time or over

10   time.  The processor capacity I think actually does

11   correspond in the figures to the capacity of the number

12   of bits that can be fed at one time into the circuits in

13   Figure 3.  So, I don't quite understand the distinction

14   that's being suggested; and I am concerned that we will

15   slip from what the court has indicated here to a larger

16   period of time that (indiscernible) instead of a

17   snapshot, I'm hearing a bit of an argument about needing

18   to look at a longer period of time.

19           If you look at Figure 2, there is a bus that

20   connects the input registers, the output registers, and

21   the ALU.  That bus is what feeds into the CRC circuits.

22   So, the processor --

23           THE COURT:  The processor capacity limits what

24   can be done in a single clock cycle, right?

25           MR. CAMPBELL:  Correct.  If we're talking

 1  about --

 2          THE COURT:  I think I'm going to leave this

 3  one the way it is.

 4          What about the fourth one?

 5          MR. CAMPBELL:  I'm sorry.  The fourth one,

 6  again, reading the constructions together, I don't have

 7  any suggestions for that one.

 8          THE COURT:  Okay.  Mr. Joffre?

 9          MR. JOFFRE:  That's clear.

10          THE COURT:  Okay.  So, now let's go back to

11  Number 1 and get on the record whatever objections there

12  are, starting with Mr. Campbell.

13          MR. CAMPBELL:  Yes, your Honor.  Just very

14  briefly --

15          THE COURT:  Why don't I read it into the

16  record so the record is clear.  The first construction is

17  the "first and second circuits" in '072 patent claim 12

18  and the "plurality of CRC circuits" in '244 patent

19  claim 1 are separate circuits that do not share an output

20  register or feedback paths.

21          MR. CAMPBELL:  Our objection to this

22  particular instruction, your Honor, arises from the face

23  of the claim language in claim 12 and also claim 1 of the

24  '244.  I'll simply refer to claim 12 in my comments here.

25          The claim sets out (reading) a first cyclic

1 redundancy check circuit that is configured to perform a

2 first CRC operation on input data, and then includes the

3 requirement that the first CRC operation being performed

4 uses a first polynomial --

5        THE COURT:  You don't need to state the basis

6 for your argument.  All I'm looking for is do you have an

7 objection to this first claim construction and what is

8 your language that you would substitute for it.

9        MR. CAMPBELL:  Your Honor, we would substitute

10 for this language that the first and second circuits in

11 claim 12 are circuits that have independent hardwired

12 polynomials.  The first circuit has its own hardwired

13 polynomial, and the second circuit has its own hardwired

14 polynomial.  And there is no other requirement that

15 should be imported into the meaning of the first and the

16 second circuit because that's what the claim language

17 itself says they need to have.

18        THE COURT:  Okay.  I think your objection is

19 cleared up now.

20        Mr. Joffre, is there any Stragent objections

21 to the first construction?

22        MR. JOFFRE:  No, your Honor.

23        THE COURT:  Okay.  Let's move on to the second

24 one, then.  So, Mr. Campbell, is there an objection to

25 the second construction?

1           I'll read that into the record.  (Reading) A

2   CRC output result or CRC result is a value equal to the

3   complete remainder of the input data divided by a CRC

4   polynomial, but not a partial remainder or interim result

5   that is carried forward for use in a successive operation

6   of the same circuit.

7           MR. CAMPBELL:  Yes.  Our objection is that we

8   believe that the language after the comma but should be

9   stricken from the construction, that a CRC calculation

10  that proceeds incrementally and generates a CRC

11  computation and successive requirements would have

12  multiple CRC results that would qualify within the

13  meaning of the claim language.

14          THE COURT:  Okay.  Mr. Joffre, is there any

15  objection to that?

16          MR. JOFFRE:  No objection.

17          THE COURT:  Okay.  So, let's go on to

18  Number 3, then, which is (reading) input data is the

19  block of data equivalent in size to the processor

20  capacity, e.g., 32 bits for a 32-bit processor but not

21  necessarily entire data package from which a complete CRC

22  result is to be calculated by performing a CRC operation.

23          Mr. Campbell, is there an objection to that?

24          MR. CAMPBELL:  We do not object to that, your

25  Honor.

1           MR. JOFFRE:  We don't object, your Honor.

2           THE COURT:  Okay.  You should stand up.

3           MR. JOFFRE:  Oh, sorry.

4           THE COURT:  Okay.  The final one is (reading)

5    a parallel decomposition of a serial CRC circuit is a

6    circuit that calculates a CRC result by processing all

7    bits of the input data at one time instead of a lesser

8    number of bits such as 2.

9           Mr. Campbell, do you have an objection to

10   that?

11          MR. CAMPBELL:  No, your Honor.  Subject to the

12   objection that I made with respect to Number 1, aside

13   from that, we don't have anything further.

14          THE COURT:  Okay.  Mr. Joffre?

15          MR. JOFFRE:  No, your Honor.

16          THE COURT:  Okay.  All right.  Good.  We'll

17   issue this order this afternoon.

18          Did you-all have a chance to see the orders

19   which were entered in the docket?  Did you have a chance

20   to review that?

21          MR. ALBRITTON:  Briefly, your Honor.  We

22   didn't have a chance to study them in great detail, but

23   we looked at them briefly.

24          THE COURT:  Do you have any questions based on

25   your review?

1          MR. ALBRITTON:  No questions that require

2   clarification at this point, your Honor, no.

3          THE COURT:  Okay.  Mr. Campbell, how about

4   you?

5          MR. CAMPBELL:  I have not had -- I have not

6   been able to get access to them quite yet and I haven't

7   read them, but I don't have any questions.  I understand

8   what the court has said earlier today.

9          THE COURT:  Okay.  Well, I have a few final

10  items here.

11          First of all, have the parties stipulated to

12  the level of skill in the art?

13          MR. BUMGARDNER:  It's been opined --

14          THE COURT:  You need to say who you are

15  because the person making the transcript otherwise

16  wouldn't be able to figure it out.

17          MR. BUMGARDNER:  Certainly, your Honor.  Barry

18  Bumgardner on behalf of Stragent.

19          It is contained in the expert opinions.  I

20  believe it does differ slightly, although I don't believe

21  there are dramatic differences.  I believe Stragent's

22  person with ordinary skill in the art is a little bit

23  lesser skill than the one of Intel but -- I might have

24  that backwards, and Mr. Campbell can correct me.  They

25  are not the same, but they're close.

80

1          MR. CAMPBELL:  They are very close, your

2  Honor.

3          THE COURT:  Maybe the two of you could get

4  together and come up with a single definition so that the

5  jury doesn't get confused.

6          MR. CAMPBELL:  Sure.

7          MR. BUMGARDNER:  I think we can, your Honor.

8          THE COURT:  Okay.  That would be good.

9          Now, I need to know what questions counsel

10  want me to ask at the jury *voir dire*.  Have you submitted

11  questions?  What's your position on that?

12          MR. ALBRITTON:  We didn't submit any specific

13  questions, your Honor.  We would just ask the court to

14  inquire as to the jurors' -- where they work.  This will

15  be on the jury questionnaire, of course; but it might --

16          THE COURT:  On the -- aren't there standard

17  questions that are put on the screen?

18          MR. ALBRITTON:  The way -- it varies a little

19  bit in Marshall with what Judge Gilstrap, for instance,

20  does than what Judge Davis does.  I believe Judge Davis'

21  standard is he even asks them to say what their hobby is.

22  What I would just respectfully suggest is that the court

23  ask are they married, what do they do for a living, and

24  if they are retired what did they do before they retired,

25  what does their spouse do for a living, and if the spouse

1  is retired what did the spouse do prior to retirement;

2  and really there is nothing else in particular, your

3  Honor.  Just basic biographical information that the

4  court thinks is appropriate.

5          THE COURT:  I don't have any problem with

6  that.

7          Mr. Campbell, is there anything else that you

8  think ought to be in there?

9          MR. CAMPBELL:  Your Honor, Judge Davis'

10  standard question is as Mr. Albritton suggested, to

11  simply ask them at the beginning what they like to do in

12  their free time; and we think that would be a good thing

13  to ask.

14          THE COURT:  Okay.  That's fine.

15          MR. ALBRITTON:  We're certainly not going to

16  object to that, your Honor.

17          THE COURT:  So, the two of you will get

18  together and agree on what gets put up on the screen for

19  the jurors to address?

20          MR. CAMPBELL:  Yes.

21          MR. ALBRITTON:  Yes, sir.

22          THE COURT:  Okay.  Good.

23          And then I've asked you to come up with a

24  document for the jury that sets forth the claims

25  incorporating the language of claim 12 into claim 16 and

1    also setting forth the court's claim construction.  So,

2    why don't we call that document "List of Asserted Claims

3    and Court's Construction of Claim Terminology."  And if

4    you could get together and come up with proposed language

5    by close of business tomorrow that I could review, that

6    would be helpful.

7             MR. ALBRITTON:  Your Honor, could you

8    repeat -- "List of Asserted Claims and"?

9             THE COURT:  "Court's Construction of Claim

10   Terminology."

11            If you want to suggest calling it something

12   else, I'm happy to entertain it; but that seemed to me to

13   be descriptive.

14            MR. ALBRITTON:  Yes, sir.  That sounds fine to

15   us, your Honor.

16            THE COURT:  Okay.  So, why don't you both get

17   together and come up with a document which you jointly

18   submit -- and I can look at it over the weekend -- by the

19   close of business tomorrow.

20            Then, as I think I mentioned, I'd like to get

21   supplemental revised claim constructions for the

22   invalidity contentions.  It seems to me it would be a lot

23   clearer to the jury if, for example, there were an

24   instruction that says "Intel claims that claim 10 is

25   invalid because it was anticipated by the" -- whatever,

1  the hydrogen reference or whatever, so that there is

2  something specific in the instructions that the jury

3  could focus on saying "I'm supposed to be determining

4  anticipation with respect to this one reference and

5  obviousness with respect to a combination of

6  such-and-such references."

7           Is there any problem in doing that,

8  Mr. Campbell?

9           MR. CAMPBELL:  No, your Honor.  We'd be happy

10  to do that.

11           THE COURT:  Okay.

12           MR. ALBRITTON:  That's agreeable to us, your

13  Honor.

14           THE COURT:  Okay.  Then why don't you do that

15  and again plan to get me those supplemental instructions

16  by the close of business tomorrow.  Okay?

17           And then you also need, I think, to agree on a

18  new verdict form because we're going to ask for separate

19  verdicts on the wafers and the chips.  Can you get

20  together and get me a revised proposed verdict form?

21           MR. ALBRITTON:  Yes, sir, we will.

22           THE COURT:  Okay.  And I think that's it.

23           I just want to caution Stragent.  Now that

24  I've issued -- or am about to issue this claim

25  construction order, Dr. Woods has to be careful not to

1 start supplementing my claim construction order or adding

2 other claim constructions.  Okay?

3              MR. ALBRITTON:  Yes, sir.  We are very

4 cognizant of that fact, and Dr. Stone will adhere

5 strictly to the court's constructions.

6              THE COURT:  Did I say "Woods"?  I meant

7 Stone.  Okay.

8              MR. ALBRITTON:  Well, it's all a matter of --

9 wood, stone...

10              THE COURT:  All right.  And the same would be

11 true for Intel's expert witnesses.

12              Is there anything else that either one of you

13 would like to raise now?

14              Mr. Albritton?

15              MR. ALBRITTON:  I don't believe so, your

16 Honor.  Nothing on behalf of the plaintiff.

17              THE COURT:  Okay.

18              MR. CAMPBELL:  I don't have any --

19              MR. ALBRITTON:  I do have one question just as

20 a matter of procedure.  If one of the parties were

21 inclined to make an offer of proof for appellate

22 purposes, does the court have a preference on how that's

23 done?  Sometimes Judge Davis will, for instance, just let

24 the parties do a written offer of proof.  Would that be

25 satisfactory to the court, or would the court like to

Pretrial Hearing

1  hear the witness live as to any matters?  And I'm not

2  certain that there will be that; but there may be issues

3  for Intel, may be issues for us.  So, that was my first

4  question.

5          And the second question was as to timing.

6  Should that be done -- does that need to be done before

7  that witness testifies or just before the party rests its

8  case?  I just didn't know what the court's preference

9  was.

10          THE COURT:  So, the predicate assumption here

11  is that I've sustained an objection to part of the

12  witness' testimony and you want to have a proffer as to

13  what the witness would testify to?

14          MR. ALBRITTON:  Yes, possibly, your Honor.

15  So, like, for instance, if there was to be an offer of

16  proof made with respect to the hedonic regression, for

17  instance.

18          THE COURT:  Oh, I see.  Yeah, that could be

19  done in writing.  That's not a problem.  And you could do

20  that before the close of your case.

21          MR. ALBRITTON:  Thank you very much, your

22  Honor.

23          THE COURT:  But is there any other issue other

24  than --

25          MR. ALBRITTON:  No, sir.  There may be issues

1  that Intel would want.  I don't know.  But that was one

2  that just came to mind as a potential issue with respect

3  to our case.

4          THE COURT:  Okay.  Mr. Campbell?

5          MR. CAMPBELL:  I don't have anything further

6  for the court today.

7          THE COURT:  Okay.  Thank you both, counsel.  I

8  appreciate your coming here.  I think that your choice to

9  do that was a good one.  That made it a lot easier for me

10  and hopefully easier for you, too.

11          MR. ALBRITTON:  Thank you very much.

12          MR. CAMPBELL:  Thank you.

13          THE COURT:  Okay.  Thank you.

14          (Proceedings adjourned.)

15

16                    CERTIFICATION

17          I certify that on this date, March 6, 2014,
   the foregoing is a correct transcript from the electronic
18  sound recording of the proceedings in the above-entitled
   matter.
19

20                    /s/
                    TONYA B. JACKSON, RPR-CRR
21
                    /s/
22                  CHRISTINA L. BICKHAM, RMR-CRR

23

24

25

'072 [3] - 21:18, 70:20, 75:17
'244 [2] - 75:18, 75:24

**/**

/s [2] - 86:20, 86:21

**1**

1 [9] - 21:18, 54:9, 55:25, 56:19, 70:21, 75:11, 75:19, 75:23, 78:12
10 [2] - 39:10, 82:24
101 [1] - 50:13
12 [11] - 11:5, 26:18, 26:22, 58:1, 69:1, 70:20, 75:17, 75:23, 75:24, 76:11, 81:25
12:00 [4] - 63:17, 63:22, 63:23, 64:1
146 [1] - 67:1
147 [1] - 67:1
148 [1] - 67:2
15 [1] - 5:10
16 [11] - 11:5, 16:13, 26:19, 39:10, 52:12, 56:6, 56:11, 57:22, 58:16, 62:24, 81:25
186 [1] - 67:5
19 [7] - 6:5, 6:13, 27:22, 28:8, 37:24, 40:22, 42:1
192 [1] - 66:20
196 [1] - 66:20
1:00 [1] - 67:25

**2**

2 [13] - 5:22, 6:2, 21:25, 23:8, 29:24, 34:2, 54:10, 56:4, 56:19, 73:13, 73:15, 74:19, 78:8
2014 [1] - 86:17
21 [3] - 10:18, 10:19, 11:12
226 [1] - 67:9
227 [1] - 67:10
228 [1] - 67:10
248 [3] - 66:1, 66:5, 66:18
25 [1] - 39:8

**3**

3 [36] - 5:11, 6:9, 10:19, 10:21, 11:11, 17:10, 18:19, 18:21, 18:22, 23:1, 23:2, 23:5, 23:21, 23:24, 25:3, 25:15, 27:16, 27:17, 28:2, 29:5, 29:7, 29:21, 30:5, 31:15, 33:21, 33:22, 35:7, 38:1, 41:7, 43:12, 56:4, 73:19, 74:2, 74:13, 77:18
3/4 [1] - 9:22
305 [3] - 38:13, 39:6, 39:11
305-308 [5] - 23:22, 23:25, 36:24, 38:12, 39:9

306 [3] - 38:13, 39:6, 39:11
307 [3] - 38:13, 39:6, 39:11
308 [3] - 38:13, 39:7, 39:11
31 [1] - 38:10
32 [48] - 7:7, 8:6, 8:22, 9:2, 9:23, 13:13, 13:17, 13:20, 16:9, 17:14, 19:22, 21:12, 25:24, 26:12, 29:7, 31:2, 31:12, 39:10, 51:22, 52:15, 53:2, 53:3, 53:17, 54:9, 55:5, 55:11, 55:13, 56:13, 56:18, 57:3, 58:13, 58:17, 58:18, 60:6, 60:18, 60:21, 61:12, 62:8, 69:3, 69:12, 73:23, 74:5, 77:20
32-bit [25] - 8:8, 8:21, 9:8, 9:24, 12:12, 12:22, 13:12, 17:21, 17:22, 20:3, 20:4, 31:2, 45:23, 55:5, 56:8, 60:5, 60:14, 60:17, 61:11, 61:16, 62:7, 62:21, 77:20
35-36 [1] - 73:22
36 [1] - 23:20
37 [1] - 36:16
39 [4] - 65:25, 66:5, 66:9, 66:16

**4**

4 [35] - 6:9, 6:18, 7:18, 7:20, 10:20, 10:23, 23:1, 23:3, 23:15, 23:18, 25:10, 26:23, 35:6, 38:4, 38:8, 38:9, 38:23, 39:8, 41:4, 41:5, 41:20, 41:23, 42:4, 42:7, 42:11, 43:12, 43:14, 43:17, 44:5, 44:18, 48:22, 49:15, 50:3, 73:22, 73:25
40 [1] - 37:6
400 [10] - 38:21, 41:5, 41:10, 41:15, 44:6, 44:13, 53:21, 53:24, 53:25, 57:12
410 [3] - 44:8, 50:17, 50:20
411 [2] - 44:8, 50:17
412 [1] - 50:17
413 [1] - 50:17
420 [1] - 49:16
422 [1] - 42:23
43 [1] - 36:22
431 [1] - 43:4
432 [1] - 43:5
434 [1] - 50:14
45 [3] - 67:17, 67:20, 73:25
46 [2] - 36:22, 73:25
47 [1] - 25:5
48 [5] - 57:12, 65:25, 66:5, 66:9, 66:16
49 [5] - 53:20, 65:25, 66:5, 66:9, 66:16

**5**

5 [10] - 6:23, 9:21, 10:20, 23:1, 25:2, 36:16, 36:22, 41:7, 53:20, 57:12
50 [6] - 41:10, 41:13, 41:14, 65:25, 66:4, 66:18
50,000 [3] - 60:16, 60:22, 61:4
50-51 [2] - 38:4, 38:9
51 [2] - 65:25, 66:18
52 [2] - 65:25, 66:18
53 [2] - 66:1, 66:18

54 [2] - 66:1, 66:18
55 [3] - 66:1, 66:5, 66:18
57 [1] - 55:25
59 [1] - 7:21

**6**

6 [5] - 21:19, 37:4, 37:5, 37:6, 86:17
60 [1] - 18:22
63 [1] - 56:1
64 [3] - 66:1, 66:5, 66:18

**7**

70 [1] - 52:8

**8**

8 [3] - 8:5, 39:10, 63:4

**A**

AAL2 [1] - 8:4
able [18] - 4:17, 8:14, 25:15, 31:22, 40:4, 40:13, 53:12, 53:13, 56:17, 60:6, 61:3, 61:12, 61:16, 61:17, 62:9, 69:13, 79:6, 79:16
above-entitled [1] - 86:18
abstract [1] - 4:16
acceptable [1] - 67:20
access [1] - 79:6
accomplished [2] - 34:15, 34:16
accurate [1] - 61:12
acknowledge [1] - 33:3
acknowledged [1] - 44:5
actual [4] - 14:2, 32:12, 38:23, 63:18
adaptation [2] - 9:21, 9:22
add [1] - 59:22
adding [3] - 59:21, 59:24, 84:1
additional [3] - 15:19, 59:22, 59:24
Additionally [1] - 53:21
additionally [1] - 41:10
address [5] - 4:12, 5:11, 5:24, 27:14, 81:19
addresses [1] - 26:11
addressing [4] - 4:24, 30:13, 30:19, 45:4
adhere [1] - 84:4
adjourned [1] - 86:14
admitted [4] - 66:10, 66:16, 66:19, 66:23
adopt [1] - 72:4
adopted [2] - 68:10, 70:15
adopting [1] - 69:8
advise [1] - 68:24
afternoon [1] - 78:17
aggregating [1] - 22:10
aggregation [1] - 20:7

**agree** [8] - 13:4, 20:22, 28:25, 33:11, 55:4, 66:3, 81:18, 83:17
**agreeable** [1] - 83:12
**agreed** [1] - 12:6
**agreeing** [1] - 12:21
**agreement** [1] - 17:3
**ahead** [1] - 48:12
**Albritton** [5] - 11:18, 70:1, 71:11, 81:10, 84:14
**ALBRITTON** [31] - 4:25, 11:21, 65:16, 66:2, 66:12, 66:15, 66:22, 66:25, 67:4, 67:8, 67:13, 67:20, 71:12, 78:21, 79:1, 80:12, 80:18, 81:15, 81:21, 82:7, 82:14, 83:12, 83:21, 84:3, 84:8, 84:15, 84:19, 85:14, 85:21, 85:25, 86:11
**algorithm** [1] - 18:25
**allow** [7] - 19:14, 19:16, 63:19, 65:2, 65:23, 66:9, 66:23
**allowed** [5] - 13:21, 14:24, 37:12, 48:24, 51:17
**alone** [1] - 73:12
**alternate** [2] - 36:23, 41:16
**alternative** [5] - 25:7, 33:7, 37:3, 53:22, 68:12
**ALU** [9] - 8:8, 23:7, 23:8, 29:24, 30:5, 31:1, 31:21, 31:23, 74:21
**amount** [2] - 15:16, 51:19
**analysis** [2] - 65:7, 67:7
**answer** [8] - 7:13, 18:20, 19:25, 20:1, 22:6, 26:13, 36:13, 36:14
**anticipated** [1] - 82:25
**anticipation** [2] - 40:15, 83:4
**apart** [1] - 15:24
**apologize** [4] - 29:23, 57:10, 71:14, 71:21
**appellate** [1] - 84:21
**append** [2] - 22:1, 26:15
**appended** [4] - 18:4, 19:9, 22:2, 22:22
**appending** [1] - 22:12
**application** [6] - 9:1, 27:1, 27:4, 27:8, 36:9, 69:1
**applied** [2] - 8:4, 35:16
**appreciate** [1] - 86:8
**approach** [1] - 11:9
**appropriate** [2] - 36:19, 81:4
**arguing** [6] - 19:7, 26:19, 62:13, 73:10, 73:18, 73:19
**argument** [10] - 5:5, 5:7, 5:8, 26:17, 30:12, 33:7, 35:16, 71:21, 74:17, 76:6
**arises** [1] - 75:22
**arranged** [1] - 58:10
**arrangement** [5] - 51:6, 51:21, 52:2, 52:3, 52:10
**arrow** [3] - 42:19, 42:24, 43:3
**arrows** [1] - 50:21
**art** [25] - 10:9, 15:13, 20:24, 26:7, 26:11, 28:20, 32:11, 32:24, 32:25, 33:19, 34:4, 34:21, 35:14, 35:18, 40:6, 45:11, 46:8, 47:6, 47:8, 55:10, 55:12, 56:24, 79:12, 79:22

**aside** [2] - 36:9, 78:12
**aspect** [1] - 15:7
**asserted** [4] - 21:16, 21:17, 37:4, 37:16
**Asserted** [2] - 82:2, 82:8
**assistant** [1] - 64:4
**assume** [1] - 67:15
**assumption** [1] - 85:10
**ATM** [4] - 7:25, 8:3, 8:4, 9:21
**atom** [4] - 15:13, 40:6, 40:10, 49:8
**attention** [2] - 29:5, 59:8
**available** [1] - 5:18
**aware** [1] - 5:2

## B

**backwards** [1] - 79:24
**Barry** [1] - 79:17
**base** [1] - 5:24
**based** [3] - 17:24, 39:9, 78:24
**basic** [5] - 10:21, 18:13, 23:2, 58:20, 81:3
**basics** [1] - 6:7
**basis** [3] - 12:12, 57:3, 76:5
**batch** [2] - 22:23, 69:12
**become** [1] - 66:21
**becomes** [1] - 16:5
**begin** [4] - 5:4, 5:10, 5:13, 5:15
**beginning** [3] - 5:19, 21:4, 81:11
**behalf** [3] - 4:25, 79:18, 84:16
**benefit** [1] - 52:3
**better** [1] - 63:22
**between** [18] - 12:10, 12:19, 15:8, 16:1, 17:19, 25:23, 26:4, 26:6, 28:19, 32:12, 33:3, 41:19, 45:19, 46:4, 50:1, 58:21, 63:1, 69:25
**beyond** [1] - 33:8
**BICKHAM** [1] - 86:22
**big** [7] - 24:9, 25:12, 25:14, 25:17, 26:9, 31:11, 56:8
**bigger** [3] - 55:15, 62:8, 62:22
**biographical** [1] - 81:3
**bit** [21] - 11:2, 11:6, 16:7, 39:10, 50:23, 52:16, 52:19, 54:9, 57:18, 57:21, 58:11, 58:24, 59:5, 59:10, 59:12, 59:25, 73:6, 74:17, 79:22, 80:19
**bits** [60] - 7:7, 8:5, 8:6, 8:22, 9:2, 9:23, 13:13, 13:17, 13:20, 16:7, 16:9, 17:14, 17:15, 19:22, 21:12, 25:24, 26:12, 29:7, 31:2, 31:12, 49:15, 50:25, 51:22, 52:15, 53:2, 53:3, 53:5, 53:17, 54:9, 54:10, 55:5, 55:11, 55:13, 56:13, 56:18, 56:19, 58:13, 58:15, 58:17, 58:18, 59:14, 59:16, 60:2, 60:6, 60:16, 60:18, 60:19, 61:12, 62:8, 62:10, 69:3, 69:12, 73:23, 74:5, 74:12, 77:20, 78:7, 78:8
**block** [7] - 17:23, 18:23, 18:24, 20:4, 73:4, 74:4, 77:19
**boiling** [1] - 48:2
**boils** [1] - 49:7
**bottom** [6] - 7:18, 17:10, 18:21, 30:5,

41:9, 42:17
**boxes** [3] - 39:11, 43:13, 44:6
**break** [6] - 10:1, 10:4, 51:14, 52:7, 53:8, 55:16, 63:15, 64:6, 64:23
**briefly** [5] - 19:12, 55:10, 75:14, 78:21, 78:23
**bring** [1] - 64:4
**broken** [1] - 12:22
**build** [1] - 56:5
**BUMGARDNER** [3] - 79:13, 79:17, 80:7
**Bumgardner** [1] - 79:18
**bumper** [2] - 59:20
**bus** [8] - 23:9, 29:14, 29:17, 30:4, 31:2, 43:17, 74:19, 74:21
**business** [3] - 82:5, 82:19, 83:16
**bytes** [1] - 74:1

## C

**calculate** [5] - 24:8, 25:12, 40:13, 55:2, 60:15
**calculated** [2] - 70:25, 77:22
**calculates** [1] - 78:6
**calculating** [9] - 8:6, 8:9, 8:19, 9:24, 10:22, 10:25, 38:11, 38:20, 60:18
**calculation** [30] - 7:12, 8:5, 11:1, 13:1, 16:14, 16:15, 17:13, 21:8, 22:14, 22:23, 24:19, 25:13, 26:13, 29:20, 31:14, 38:24, 41:4, 41:11, 41:16, 44:17, 48:19, 52:25, 53:8, 53:11, 57:5, 57:7, 58:6, 61:17, 71:5, 77:9
**calculations** [4] - 7:22, 22:19, 26:8, 32:2
**calculator** [1] - 6:11
**Campbell** [20] - 5:13, 17:2, 40:19, 45:2, 54:20, 62:5, 63:12, 65:10, 67:22, 68:15, 74:6, 75:12, 76:24, 77:23, 78:9, 79:3, 79:24, 81:7, 83:8, 86:4
**CAMPBELL** [123] - 5:14, 6:8, 7:11, 7:15, 7:17, 7:20, 8:12, 8:14, 8:17, 8:23, 8:25, 9:10, 9:15, 10:3, 10:8, 10:14, 11:8, 11:16, 17:6, 17:9, 17:24, 18:12, 18:15, 18:18, 19:15, 19:20, 20:10, 20:12, 20:14, 20:21, 21:14, 22:12, 22:18, 23:18, 23:20, 25:1, 26:5, 26:25, 27:15, 27:18, 27:20, 27:25, 28:6, 28:8, 28:12, 29:2, 29:19, 29:22, 30:2, 30:15, 30:20, 30:24, 31:18, 32:10, 32:19, 33:17, 34:16, 40:24, 41:13, 41:15, 42:3, 42:7, 42:11, 42:18, 42:23, 43:1, 43:3, 43:10, 43:21, 45:3, 54:21, 55:8, 55:23, 56:14, 56:20, 56:22, 57:2, 57:9, 57:15, 57:18, 57:21, 57:25, 58:22, 59:1, 59:4, 60:8, 60:12, 60:22, 60:25, 62:6, 62:13, 63:13, 65:11, 67:14, 67:23, 68:18, 69:15, 69:20, 69:24, 70:7, 70:19, 71:25, 72:9, 72:12, 72:21, 74:8, 74:25, 75:5, 75:13, 75:21, 76:9, 77:7, 77:24, 78:11, 79:5, 80:1, 80:6, 81:9, 81:20, 83:9, 84:18, 86:5, 86:12

**Campbell's** [1] - 71:15
**cannot** [2] - 14:24, 62:14
**capability** [2] - 8:9, 69:9
**capacity** [6] - 73:5, 74:5, 74:10, 74:11, 74:23, 77:20
**capture** [2] - 31:19, 31:24
**care** [3] - 48:11, 65:18, 67:12
**careful** [1] - 83:25
**carried** [4] - 17:20, 20:6, 46:2, 77:5
**carry** [7] - 6:16, 12:11, 15:3, 15:9, 19:14, 19:16, 27:6
**carrying** [8] - 7:9, 7:16, 14:21, 17:23, 22:9, 22:11, 26:3, 45:9
**cars** [2] - 59:19, 59:23
**case** [7] - 7:5, 27:5, 37:4, 48:12, 85:8, 85:20, 86:3
**caution** [1] - 83:23
**certain** [1] - 85:2
**certainly** [3] - 66:3, 79:17, 81:15
**CERTIFICATION** [1] - 86:16
**certify** [1] - 86:17
**challenge** [1] - 44:13
**chance** [7] - 4:10, 35:21, 64:15, 70:4, 78:18, 78:19, 78:22
**change** [3] - 63:5, 70:18, 71:15
**changes** [7] - 4:4, 63:10, 64:8, 68:16, 69:18, 70:2, 70:5
**characterize** [2] - 48:4, 52:21
**characterized** [1] - 52:1
**characterizing** [1] - 16:19
**charge** [1] - 64:12
**cheating** [1] - 52:5
**check** [5] - 13:19, 17:22, 18:7, 64:21, 76:1
**checked** [1] - 13:9
**checking** [10] - 12:7, 13:19, 14:2, 14:12, 18:3, 19:24, 46:13, 46:19, 47:5, 47:9
**checks** [1] - 7:6
**chip** [3] - 20:15, 55:5, 60:5
**chips** [1] - 83:19
**choice** [1] - 86:8
**choose** [2] - 34:18, 37:12
**chop** [1] - 6:13
**CHRISTINA** [1] - 86:22
**chunk** [9] - 6:22, 7:2, 7:8, 14:19, 15:16, 15:19, 24:13, 45:23, 54:16
**chunks** [5] - 6:17, 6:23, 9:9, 10:2, 10:4
**Circuit** [1] - 27:5
**circuit** [111] - 7:12, 8:19, 9:4, 9:7, 9:24, 11:1, 13:7, 13:17, 16:15, 16:16, 16:20, 16:23, 16:24, 17:14, 17:18, 19:22, 21:5, 21:23, 23:22, 24:15, 25:6, 28:14, 28:16, 28:17, 28:24, 29:4, 29:15, 33:4, 34:6, 34:18, 34:19, 34:20, 35:4, 36:3, 36:6, 36:19, 36:24, 37:2, 37:5, 37:6, 37:7, 37:11, 37:13, 37:14, 37:15, 38:5, 38:21, 39:3, 39:5, 41:4, 41:5, 41:6, 41:10, 41:11, 41:15, 41:16, 41:19, 41:23, 42:2, 42:5, 42:13, 42:21, 43:5, 43:17, 46:21,

48:14, 48:19, 48:21, 49:2, 49:4, 49:6, 50:3, 50:25, 51:14, 51:20, 52:7, 52:10, 53:1, 53:10, 53:11, 53:13, 53:21, 53:22, 53:23, 53:24, 54:2, 54:3, 54:14, 54:24, 56:5, 57:12, 57:15, 58:6, 58:8, 58:11, 61:15, 61:18, 62:1, 62:8, 62:22, 73:11, 74:5, 76:1, 76:12, 76:13, 76:16, 77:6, 78:5, 78:6
**circuit's** [1] - 74:4
**circuitry** [2] - 16:4, 51:18
**circuits** [56] - 10:22, 10:25, 21:18, 21:21, 23:7, 23:10, 23:25, 24:8, 27:11, 27:24, 28:1, 29:12, 30:9, 32:12, 33:21, 34:20, 35:7, 35:12, 36:19, 36:24, 37:20, 38:11, 38:12, 38:14, 38:15, 38:21, 39:7, 39:8, 39:9, 39:11, 39:23, 40:2, 40:12, 40:16, 40:23, 44:15, 44:23, 52:23, 52:24, 55:12, 58:2, 70:10, 70:12, 70:20, 70:21, 71:17, 73:8, 73:20, 74:12, 74:21, 75:17, 75:18, 75:19, 76:10, 76:11
**circumstances** [3] - 70:10, 70:13, 71:4
**cited** [2] - 27:5, 62:24
**Claim** [2] - 82:3, 82:9
**claim** [79] - 5:5, 5:6, 5:8, 5:9, 5:11, 11:5, 14:10, 15:10, 16:13, 16:22, 18:2, 18:11, 18:12, 20:5, 21:18, 21:24, 21:25, 22:8, 26:18, 26:19, 26:22, 26:23, 27:5, 28:15, 32:18, 32:21, 36:2, 37:4, 37:5, 37:15, 38:14, 38:18, 40:17, 46:16, 47:7, 48:15, 48:25, 49:5, 52:12, 56:6, 56:11, 57:22, 57:23, 57:25, 58:1, 58:7, 58:16, 58:19, 62:24, 63:18, 64:4, 68:3, 68:8, 68:9, 68:14, 69:1, 69:16, 70:20, 70:21, 75:17, 75:19, 75:23, 75:24, 75:25, 76:7, 76:11, 76:16, 77:13, 81:25, 82:1, 82:21, 82:24, 83:24, 84:1, 84:2
**claims** [17] - 21:1, 21:16, 21:17, 25:19, 30:18, 31:6, 32:24, 33:1, 33:9, 35:19, 45:11, 69:9, 69:12, 71:2, 71:9, 81:24, 82:24
**Claims** [2] - 82:2, 82:8
**clarification** [4] - 70:9, 72:5, 73:1, 79:2
**clarify** [4] - 23:4, 70:23, 72:4, 74:3
**clarity** [1] - 73:12
**clear** [12] - 10:11, 10:15, 12:18, 25:3, 36:2, 62:25, 65:22, 66:14, 68:13, 71:16, 75:9, 75:16
**cleared** [1] - 76:19
**clearer** [3] - 68:6, 70:5, 82:23
**clearly** [2] - 25:14, 54:25
**clever** [1] - 51:4
**cleverly** [1] - 51:2
**clock** [15] - 8:16, 9:5, 50:19, 54:6, 54:13, 54:17, 54:25, 55:2, 55:4, 55:6, 62:2, 62:10, 62:14, 62:17, 74:24
**close** [6] - 79:25, 80:1, 82:5, 82:19, 83:16, 85:20
**cognizant** [1] - 84:4
**collapse** [2] - 28:23, 34:5
**collected** [1] - 10:17
**column** [1] - 41:9

**Column** [29] - 7:18, 7:20, 10:23, 17:10, 18:19, 18:21, 18:22, 21:19, 23:1, 23:3, 23:15, 23:18, 25:2, 25:10, 35:6, 36:16, 36:22, 37:6, 38:4, 38:8, 38:9, 39:8, 41:4, 41:7, 53:20, 57:12, 73:22, 73:25
**Columns** [1] - 10:20
**combination** [1] - 83:5
**combine** [1] - 25:13
**combined** [1] - 7:2
**coming** [5] - 25:24, 30:4, 42:24, 43:3, 59:11, 63:3, 86:8
**comma** [1] - 77:8
**comment** [3] - 44:2, 63:19, 68:20
**comments** [1] - 75:24
**common** [6] - 29:13, 32:14, 35:12, 35:15, 43:17, 70:24
**communications** [1] - 9:20
**compare** [1] - 22:15
**comparing** [1] - 14:4
**complete** [2] - 77:3, 77:21
**completed** [1] - 62:17
**completely** [1] - 25:3
**complex** [2] - 54:5, 54:24
**complicated** [2] - 4:17, 51:13
**components** [2] - 33:16, 48:23
**comprise** [1] - 58:2
**computation** [26] - 5:20, 6:20, 8:4, 14:8, 14:25, 29:6, 31:10, 31:19, 32:7, 33:13, 33:25, 34:14, 35:4, 37:21, 41:22, 43:23, 44:5, 45:22, 46:2, 49:24, 51:2, 52:2, 70:14, 71:4, 77:11
**computational** [1] - 36:11
**computations** [1] - 52:4
**compute** [2] - 30:9, 69:2
**computers** [2] - 5:21, 59:6
**computing** [3] - 22:24, 26:17, 32:1
**concatenated** [5] - 7:2, 24:2, 24:14, 29:9, 42:21
**concatenation** [1] - 24:6
**conceptualized** [1] - 18:24
**conceptually** [1] - 24:2
**concerned** [1] - 74:14
**concerning** [1] - 4:15
**concerns** [1] - 4:13
**conclude** [3] - 8:15, 22:16, 35:18
**concluded** [1] - 5:5
**conclusion** [1] - 21:12
**concrete** [1] - 26:7
**conference** [1] - 64:12
**configuration** [2] - 48:16, 61:19
**configured** [10] - 16:13, 36:3, 36:4, 36:7, 40:3, 40:16, 44:17, 48:17, 58:5, 76:1
**confused** [2] - 12:13, 80:5
**connection** [1] - 59:10
**connects** [2] - 30:3, 74:20
**connoting** [1] - 55:1
**consider** [1] - 25:9
**considered** [1] - 24:2
**Construction** [2] - 82:3, 82:9

**construction** [29] - 5:5, 5:6, 5:8, 5:11, 12:4, 18:3, 27:6, 32:18, 32:22, 34:12, 46:17, 56:23, 64:4, 68:4, 68:8, 68:10, 68:14, 69:4, 69:9, 70:13, 72:14, 75:16, 76:7, 76:21, 76:25, 77:9, 82:1, 83:25, 84:1

**constructions** [10] - 5:9, 63:18, 68:23, 68:25, 69:16, 70:15, 75:6, 82:21, 84:2, 84:5

**construing** [1] - 25:19
**consult** [1] - 67:16
**contained** [1] - 79:19
**contemplates** [2] - 36:11, 46:1
**contending** [1] - 43:7
**contention** [2] - 11:14, 40:21
**contentions** [2] - 47:6, 82:22
**continue** [1] - 22:23
**continues** [1] - 57:13
**conversation** [1] - 33:6
**copy** [1] - 5:18
**core** [1] - 62:23
**corner** [1] - 42:14
**correct** [18] - 11:24, 18:15, 20:9, 20:12, 26:25, 27:25, 32:9, 56:14, 57:18, 61:10, 66:1, 66:3, 66:21, 67:4, 68:6, 74:25, 79:24, 86:17
**corrected** [1] - 12:24
**correctly** [8] - 14:5, 15:7, 16:2, 32:8, 33:14, 45:8, 55:7, 60:4
**correspond** [2] - 26:8, 74:11
**counsel** [3] - 17:16, 80:9, 86:7
**count** [1] - 55:14
**couple** [4] - 10:17, 28:3, 34:19, 55:17
**course** [2] - 28:6, 80:15
**court** [30] - 5:18, 10:15, 11:22, 14:15, 17:10, 18:9, 18:19, 19:12, 23:3, 27:22, 27:25, 34:12, 41:3, 55:23, 62:25, 65:14, 68:21, 68:24, 70:15, 71:25, 72:23, 74:15, 79:8, 80:13, 80:22, 81:4, 84:22, 84:25, 86:6
**COURT** [222] - 4:1, 5:4, 6:6, 7:5, 7:13, 7:16, 7:19, 8:10, 8:13, 8:16, 8:21, 8:24, 9:6, 9:11, 10:1, 10:5, 10:11, 11:7, 11:13, 11:17, 11:23, 12:10, 12:18, 13:4, 13:12, 13:23, 14:21, 15:3, 15:6, 15:23, 16:9, 17:1, 17:8, 17:19, 18:11, 18:13, 18:16, 19:13, 19:19, 20:2, 20:11, 20:13, 20:20, 21:13, 22:8, 22:17, 23:16, 23:19, 24:24, 25:21, 26:23, 27:3, 27:17, 27:19, 27:23, 28:5, 28:7, 28:11, 28:25, 29:17, 29:21, 30:1, 30:11, 30:16, 30:22, 31:16, 32:6, 32:17, 33:10, 34:13, 35:20, 36:8, 37:17, 38:7, 38:19, 38:25, 39:4, 39:13, 39:17, 39:19, 39:24, 40:7, 40:18, 41:12, 41:14, 41:25, 42:6, 42:9, 42:16, 42:22, 42:24, 43:2, 43:7, 43:19, 43:24, 44:8, 44:10, 44:18, 44:24, 45:5, 45:16, 45:18, 45:25, 46:15, 46:23, 47:1, 47:15, 47:18, 47:20, 47:23, 48:1, 48:10, 48:12, 49:9, 49:12, 49:25, 50:8, 50:12, 50:15, 51:22, 52:13, 53:2, 53:15, 54:8, 54:19, 55:4, 55:21,

56:13, 56:16, 56:21, 56:25, 57:7, 57:14, 57:16, 57:20, 57:24, 58:20, 58:24, 59:3, 60:4, 60:10, 60:21, 60:23, 61:2, 61:10, 62:4, 62:11, 63:2, 63:12, 63:14, 64:3, 64:19, 64:21, 64:25, 65:15, 65:22, 66:7, 66:14, 66:16, 66:24, 67:1, 67:5, 67:9, 67:15, 67:22, 67:24, 68:2, 69:8, 69:18, 69:22, 69:25, 70:17, 71:10, 71:13, 71:24, 72:2, 72:10, 72:17, 72:20, 72:24, 73:2, 73:16, 74:6, 74:23, 75:2, 75:8, 75:10, 75:15, 76:5, 76:18, 76:23, 77:14, 77:17, 78:2, 78:4, 78:14, 78:16, 78:24, 79:3, 79:9, 79:14, 80:3, 80:8, 80:16, 81:5, 81:14, 81:17, 81:22, 82:9, 82:16, 83:11, 83:14, 83:22, 84:6, 84:10, 84:17, 85:10, 85:18, 85:23, 86:4, 86:7, 86:13
**Court's** [2] - 82:3, 82:9
**court's** [8] - 12:3, 18:2, 29:4, 46:17, 72:14, 82:1, 84:5, 85:8
**cover** [1] - 56:11
**crazy** [1] - 55:20
**CRC** [196] - 5:20, 5:23, 7:6, 7:22, 8:3, 8:5, 9:7, 10:22, 12:3, 12:4, 12:6, 12:9, 13:2, 13:8, 13:10, 13:18, 13:21, 13:23, 14:3, 14:5, 14:7, 14:10, 14:11, 14:14, 14:15, 14:18, 14:25, 15:1, 15:15, 15:17, 15:21, 16:14, 16:15, 16:20, 16:24, 17:11, 18:1, 18:4, 18:10, 18:22, 18:25, 19:1, 19:2, 19:4, 19:8, 19:23, 19:24, 20:4, 20:7, 20:16, 20:17, 20:22, 20:23, 21:7, 21:8, 21:18, 21:20, 21:21, 21:23, 22:1, 22:3, 22:4, 22:5, 22:13, 22:15, 22:20, 23:9, 23:11, 23:14, 23:22, 23:23, 23:25, 24:20, 25:25, 26:1, 26:18, 29:9, 30:5, 31:5, 32:2, 32:12, 34:3, 36:4, 36:5, 36:6, 36:7, 36:17, 36:19, 36:20, 36:21, 36:24, 37:7, 37:11, 38:5, 38:11, 38:12, 38:20, 38:24, 39:3, 39:5, 39:7, 39:9, 39:11, 39:16, 40:4, 40:7, 40:9, 40:11, 40:23, 41:4, 41:5, 41:10, 41:15, 42:12, 43:15, 43:16, 44:17, 45:21, 45:22, 46:10, 46:17, 47:3, 47:5, 47:8, 47:11, 47:14, 47:18, 47:20, 48:19, 48:21, 49:2, 50:6, 51:20, 52:25, 53:7, 53:11, 53:13, 53:21, 53:22, 53:23, 54:6, 54:25, 57:12, 57:15, 58:2, 60:15, 61:6, 61:9, 61:15, 61:16, 61:23, 61:24, 62:2, 69:2, 70:9, 70:14, 70:21, 70:25, 71:4, 73:7, 73:11, 73:19, 73:20, 73:22, 74:1, 74:2, 74:4, 74:5, 74:21, 75:18, 76:2, 76:3, 77:2, 77:3, 77:9, 77:10, 77:12, 77:21, 77:22, 78:5, 78:6
**CRC-10** [2] - 9:18, 29:13
**CRC-16** [3] - 9:18, 29:13, 33:22
**CRC-32** [4] - 9:18, 29:12, 31:8, 33:21
**CRC-8** [3] - 7:23, 8:4, 29:13
**CRCs** [1] - 24:8
**create** [6] - 14:14, 15:15, 15:20, 18:7, 48:16, 52:10
**creates** [1] - 46:9
**CRR** [2] - 86:20, 86:22

**crystal** [1] - 62:25
**crystal-clear** [1] - 62:25
**current** [14] - 7:1, 21:11, 23:14, 23:17, 24:1, 24:4, 24:9, 29:8, 29:14, 30:6, 30:8, 32:15, 43:16
**Current** [1] - 31:9
**cycle** [8] - 8:16, 9:5, 30:10, 31:23, 50:19, 54:7, 54:17, 54:25, 55:2, 55:5, 55:6, 62:2, 62:10, 62:14, 62:17, 74:24
**cycles** [1] - 54:13
**cyclic** [1] - 75:25

**D**

**damages** [1] - 4:5
**dashed** [1] - 23:6
**data** [82] - 5:23, 6:22, 6:23, 7:3, 7:7, 12:8, 13:9, 14:4, 14:17, 14:19, 15:16, 15:20, 17:18, 18:23, 18:24, 19:5, 19:22, 20:8, 21:5, 21:18, 22:2, 22:21, 22:23, 23:9, 23:10, 23:11, 23:13, 23:23, 23:24, 24:1, 24:5, 24:12, 24:13, 24:21, 29:8, 29:9, 29:12, 29:14, 30:9, 33:20, 33:21, 34:3, 35:12, 37:8, 39:16, 41:21, 42:20, 43:4, 43:15, 44:22, 50:4, 50:10, 50:11, 51:3, 52:5, 54:12, 54:14, 54:16, 55:3, 60:2, 61:7, 61:24, 61:25, 62:19, 72:14, 73:3, 73:4, 73:19, 73:23, 74:1, 74:2, 74:3, 74:4, 76:2, 77:3, 77:18, 77:19, 77:21, 78:7
**date** [1] - 86:17
**Davis** [2] - 80:20, 84:23
**Davis'** [2] - 80:20, 81:9
**days** [3] - 6:14, 59:7, 59:9
**deal** [1] - 63:21
**dealing** [3] - 5:21, 27:9, 27:13
**debate** [3] - 28:18, 33:3, 55:11
**debated** [1] - 23:7
**decisions** [1] - 27:6
**deck** [1] - 42:8
**decompose** [8] - 16:16, 16:19, 48:14, 48:15, 48:22, 49:6, 51:20, 61:18
**decomposing** [1] - 53:10
**decomposition** [26] - 16:5, 16:6, 16:8, 16:12, 16:14, 16:23, 48:8, 48:18, 48:19, 49:3, 51:15, 53:11, 53:24, 54:2, 56:11, 56:17, 57:6, 57:17, 58:6, 58:10, 60:19, 61:15, 61:25, 62:3, 62:15, 78:5
**defined** [2] - 14:14, 15:21
**definition** [4] - 12:20, 59:2, 73:3, 80:4
**degree** [1] - 7:22
**delete** [1] - 63:6
**demonstration** [1] - 5:19
**demonstrative** [1] - 5:16
**dependent** [2] - 21:25, 57:25
**deposition** [2] - 55:24, 62:24
**described** [5] - 22:25, 33:18, 36:16, 52:6, 69:7
**describes** [3] - 23:12, 31:4, 34:14
**description** [1] - 37:20

**descriptive** [1] - 82:13
**designer** [1] - 34:18
**detail** [2] - 53:19, 78:22
**details** [1] - 28:1
**determination** [1] - 7:8
**determined** [1] - 65:1
**determining** [1] - 83:3
**device** [1] - 71:8
**deviser** [2] - 6:4, 6:13
**differ** [1] - 79:20
**difference** [13] - 12:10, 12:19, 15:8, 17:19, 17:25, 18:6, 18:13, 25:23, 26:3, 26:6, 41:19, 49:25, 58:20
**differences** [1] - 79:21
**different** [25] - 7:22, 9:14, 10:6, 10:22, 11:9, 18:19, 27:9, 30:12, 30:17, 32:7, 32:13, 32:25, 34:10, 34:19, 34:20, 36:18, 37:12, 40:11, 41:6, 44:22, 49:21, 59:6, 66:6, 66:9, 70:9
**digital** [1] - 5:22
**digits** [1] - 6:11
**dire** [1] - 80:10
**direct** [3] - 17:10, 29:4, 38:4
**directly** [1] - 41:3
**disagree** [2] - 20:15, 28:13
**disagreeing** [1] - 25:22
**disagreement** [11] - 9:12, 12:14, 12:23, 12:25, 16:1, 45:8, 45:9, 45:19, 45:21, 46:4, 62:25
**disagreements** [1] - 45:7
**disclose** [1] - 11:2
**disclosed** [3] - 8:25, 11:10, 32:21
**discloses** [2] - 34:17, 37:10
**disclosure** [4] - 25:16, 25:20, 32:4, 33:8
**discuss** [1] - 4:14
**discussed** [1] - 48:3
**discussing** [2] - 23:21, 41:3
**discussion** [4] - 17:11, 25:6, 28:21, 45:6
**dispute** [14] - 5:16, 47:25, 48:3, 48:5, 48:6, 48:7, 48:9, 48:13, 52:14, 52:21, 55:9, 62:23, 65:25
**disputes** [2] - 65:17, 66:4
**distinction** [1] - 74:13
**divide** [4] - 6:4, 6:12, 6:15, 12:8
**divided** [3] - 14:17, 17:17, 77:3
**divides** [1] - 18:25
**dividing** [3] - 17:14, 24:22, 51:3
**division** [6] - 5:23, 7:3, 17:17, 21:3, 21:5, 31:19
**divisions** [3] - 18:10, 19:21, 22:21
**docket** [1] - 78:19
**document** [3] - 81:24, 82:2, 82:17
**documents** [1] - 65:20
**done** [14] - 20:18, 24:16, 32:8, 34:8, 41:17, 64:3, 64:9, 64:22, 72:23, 74:24, 84:23, 85:6, 85:19
**double** [1] - 35:3
**down** [9] - 11:11, 11:18, 12:22, 21:25,

30:9, 48:2, 49:7, 57:10, 64:5
**Dr** [19] - 9:12, 11:3, 11:19, 11:24, 20:10, 20:15, 32:12, 32:22, 33:5, 33:19, 35:14, 47:7, 55:14, 55:24, 56:20, 60:8, 65:12, 83:25, 84:4
**draft** [2] - 64:3, 68:3
**dramatic** [1] - 79:21
**DTX** [1] - 67:5
**due** [1] - 55:19
**during** [2] - 4:11, 64:23

# E

**e.g** [2] - 74:5, 77:20
**easier** [3] - 70:5, 86:9, 86:10
**easily** [1] - 32:8
**easy** [2] - 27:6, 36:14
**EC** [1] - 8:4
**efficient** [2] - 34:23, 35:2
**effort** [1] - 65:9
**either** [6] - 5:3, 13:23, 25:3, 33:14, 51:14, 84:12
**elaborate** [1] - 40:8
**electronic** [1] - 86:17
**embodiment** [20] - 10:21, 11:10, 13:15, 20:6, 24:17, 32:23, 33:1, 34:8, 35:17, 36:15, 37:3, 37:13, 37:19, 38:13, 41:18, 45:10, 46:23, 54:3, 54:13
**embodiments** [7] - 20:25, 32:20, 33:7, 36:15, 45:15, 46:1, 69:6
**end** [19] - 4:19, 13:20, 14:6, 14:16, 15:1, 19:18, 20:8, 21:10, 26:1, 46:9, 46:22, 47:7, 47:9, 49:19, 51:1, 51:8, 52:24, 53:12, 54:17
**engaging** [1] - 32:1
**entered** [2] - 63:24, 78:19
**entertain** [2] - 65:4, 82:12
**entire** [18] - 6:20, 10:12, 11:14, 12:2, 12:21, 13:5, 15:14, 16:20, 51:20, 52:10, 52:18, 52:25, 53:7, 54:15, 69:10, 69:14, 73:13, 77:21
**entitled** [1] - 86:18
**equal** [2] - 14:17, 77:2
**equivalent** [4] - 51:2, 73:4, 74:4, 77:19
**error** [14] - 7:9, 12:7, 13:19, 13:25, 14:1, 14:12, 17:22, 18:3, 19:24, 46:13, 46:19, 47:4, 47:9, 68:6
**essentially** [3] - 34:8, 46:10, 49:17
**Ethernet** [1] - 9:20
**eventually** [3] - 46:22, 47:2, 50:6
**exactly** [1] - 10:10
**example** [18] - 7:17, 13:11, 20:19, 21:3, 26:7, 31:8, 34:21, 48:22, 49:16, 50:14, 59:5, 60:14, 62:7, 69:20, 71:3, 73:21, 82:23
**exception** [2] - 4:4, 25:10
**exceptions** [2] - 28:3, 28:4
**exclude** [5] - 25:19, 34:8, 35:17, 56:24, 67:11
**excluded** [2] - 65:8, 66:20

**exclusion** [1] - 45:14
**exclusive** [8] - 9:4, 16:13, 41:19, 41:20, 41:21, 48:16, 58:4, 58:9
**exclusive-or** [7] - 9:4, 16:13, 41:19, 41:20, 41:21, 58:4, 58:9
**execute** [1] - 39:9
**executed** [1] - 21:20
**exhibit** [1] - 63:21
**Exhibit** [3] - 55:25, 65:25, 66:4
**exhibits** [2] - 4:10, 64:14
**existence** [1] - 70:24
**existing** [4] - 24:10, 24:11, 28:20
**expert** [3] - 9:13, 79:19, 84:11
**experts** [1] - 67:17
**explain** [4] - 10:24, 17:9, 20:14, 27:21
**explicit** [1] - 69:6
**expressly** [1] - 42:12
**extent** [1] - 27:11

# F

**face** [2] - 58:7, 75:22
**fact** [8] - 11:19, 14:7, 35:11, 37:23, 70:9, 71:7, 73:23, 84:4
**fairly** [2] - 16:18, 36:2
**families** [1] - 9:21
**family** [2] - 7:24, 8:3
**far** [2] - 9:23, 42:14
**fashion** [4] - 25:8, 41:17, 51:8, 51:10
**faster** [2] - 54:18, 59:11
**favors** [2] - 46:24, 63:7
**fed** [4] - 24:14, 43:5, 71:6, 74:12
**Federal** [1] - 27:5
**feed** [5] - 21:10, 29:15, 32:15, 34:3, 50:18
**feedback** [18] - 29:10, 29:11, 29:14, 29:17, 33:23, 34:23, 35:15, 37:22, 38:2, 38:3, 39:1, 43:8, 43:10, 70:11, 70:22, 70:24, 71:18, 75:20
**feeding** [2] - 17:14, 29:8
**feeds** [3] - 23:10, 43:18, 74:21
**few** [3] - 8:19, 64:5, 79:9
**fewer** [2] - 28:1, 58:18
**fight** [2] - 40:5, 49:7
**fights** [1] - 16:7
**Figure** [51] - 10:19, 10:21, 11:11, 23:1, 23:2, 23:5, 23:8, 23:21, 23:24, 25:3, 25:15, 27:16, 27:17, 28:2, 29:5, 29:7, 29:21, 29:24, 30:5, 31:15, 33:21, 33:22, 34:2, 35:7, 38:1, 38:23, 41:5, 41:7, 41:20, 41:23, 42:4, 42:7, 42:11, 43:12, 43:14, 43:17, 44:5, 44:18, 48:22, 49:15, 50:3, 56:4, 73:13, 73:15, 73:19, 74:2, 74:13, 74:19
**figure** [7] - 38:15, 41:5, 51:6, 51:9, 73:13, 73:17, 79:16
**figures** [2] - 35:1, 74:11
**file** [2] - 34:1, 67:10
**final** [19] - 4:14, 19:25, 20:1, 21:12, 21:22, 22:6, 24:19, 26:13, 47:4, 47:9,

47:20, 48:4, 48:7, 58:22, 62:4, 68:9, 71:6, 78:4, 79:9

**fine** [5] - 61:22, 67:23, 71:22, 81:14, 82:14
**finish** [1] - 72:3
**first** [46] - 6:21, 6:22, 17:12, 18:20, 23:6, 28:10, 28:12, 28:14, 28:16, 30:13, 31:1, 31:20, 36:3, 36:5, 36:15, 36:16, 37:14, 40:25, 42:20, 42:21, 58:1, 58:8, 59:7, 64:14, 68:4, 68:16, 68:20, 69:20, 70:2, 70:19, 72:3, 75:16, 75:17, 75:25, 76:2, 76:3, 76:4, 76:7, 76:10, 76:12, 76:15, 76:21, 79:11, 85:3
**flip** [2] - 23:15, 41:23
**flip-flops** [1] - 41:23
**flops** [1] - 41:23
**flow** [3] - 59:10, 59:13, 59:14
**focus** [1] - 83:3
**focused** [1] - 51:17
**focusing** [1] - 18:20
**following** [6] - 9:16, 34:18, 43:11, 49:9, 52:14, 57:8
**foreclose** [3] - 69:4, 69:5, 71:1
**foreclosed** [1] - 70:12
**foregoing** [1] - 86:17
**form** [6] - 4:22, 16:16, 37:11, 65:1, 83:18, 83:20
**format** [1] - 52:22
**forth** [2] - 81:24, 82:1
**forward** [21] - 6:16, 6:17, 6:23, 7:9, 7:16, 12:11, 14:21, 15:4, 15:9, 17:20, 17:23, 19:14, 19:16, 20:6, 22:10, 22:11, 26:3, 27:7, 45:9, 46:2, 77:5
**four** [6] - 31:4, 36:23, 36:25, 37:1, 44:14, 74:1
**fourth** [2] - 75:4, 75:5
**frame** [2] - 55:9, 72:6
**framing** [1] - 5:15
**free** [1] - 81:12
**full** [2] - 13:9
**fully** [1] - 17:2
**functions** [1] - 31:5
**fundamental** [2] - 45:8, 45:20
**fundamentally** [3] - 18:5, 21:14, 56:10

## G

**gate** [3] - 9:4, 49:13, 49:22
**gates** [22] - 16:13, 16:21, 16:24, 41:19, 41:20, 41:21, 48:17, 49:2, 49:12, 49:14, 49:17, 49:18, 50:22, 50:23, 51:10, 51:11, 51:18, 54:4, 58:5, 58:10
**generally** [2] - 12:6, 21:7
**generate** [6] - 8:5, 12:4, 14:11, 21:23, 40:4, 54:6
**generates** [1] - 77:10
**generating** [2] - 37:7, 54:24
**generator** [1] - 19:1
**Gilstrap** [1] - 80:19
**given** [6] - 37:1, 48:25, 65:6, 72:14

**grade** [1] - 6:14
**grasp** [1] - 6:10
**great** [2] - 58:17, 78:22
**greater** [1] - 13:25
**groupings** [1] - 6:14
**guess** [2] - 64:14, 68:20

## H

**half** [1] - 63:16
**hand** [3] - 10:23, 42:14, 50:11
**handle** [1] - 24:9
**handling** [1] - 26:11
**handout** [1] - 28:9
**happy** [3] - 56:21, 82:12, 83:9
**hard** [1] - 71:19
**hardwired** [12] - 12:8, 28:17, 28:18, 28:19, 28:23, 36:25, 37:2, 37:8, 37:12, 76:11, 76:12, 76:13
**header** [2] - 8:1, 8:6
**Heading** [1] - 63:4
**hear** [10] - 5:7, 17:2, 35:20, 40:19, 45:1, 54:20, 68:19, 71:10, 71:25, 85:1
**heard** [2] - 17:24, 45:13
**hearing** [1] - 74:17
**hedonic** [2] - 65:7, 85:16
**hedonics** [2] - 65:11, 67:6
**help** [3] - 27:21, 59:5, 59:18
**helpful** [5] - 10:17, 17:7, 30:19, 36:10, 82:6
**helps** [2] - 18:17, 23:4
**hesitating** [1] - 34:17
**higher** [1] - 55:10
**highlighted** [8] - 27:20, 29:5, 37:25, 39:1, 39:13, 40:22, 42:1
**histories** [1] - 67:10
**Hitt** [2] - 65:9, 65:18
**hitt** [1] - 65:12
**hobby** [1] - 80:21
**hold** [6] - 31:20, 31:21, 31:24, 34:2, 41:21, 41:24
**Honor** [54] - 5:1, 5:14, 17:12, 23:18, 25:18, 29:23, 32:19, 40:24, 42:4, 42:18, 54:21, 56:15, 56:23, 57:10, 58:23, 61:1, 62:6, 63:11, 65:17, 66:2, 66:13, 67:14, 67:21, 67:23, 68:18, 69:17, 70:7, 70:23, 72:21, 74:8, 75:13, 75:22, 76:9, 76:22, 77:25, 78:1, 78:11, 78:15, 78:21, 79:2, 79:17, 80:2, 80:7, 80:13, 81:3, 81:9, 81:16, 82:7, 82:15, 83:9, 83:13, 84:16, 85:14, 85:22
**hopefully** [3] - 4:19, 64:9, 86:10
**hour** [2] - 63:16, 64:6
**HTLC** [1] - 9:23
**huge** [1] - 61:21
**hydrogen** [11] - 15:13, 18:7, 20:15, 40:5, 40:10, 46:8, 46:23, 47:6, 49:8, 83:1

## I

**i.e** [2] - 48:18, 49:21
**idea** [3] - 22:4, 24:18, 25:14
**identified** [1] - 39:5
**illustrated** [1] - 21:15
**illustration** [2] - 6:3, 59:18
**illustrative** [1] - 43:12
**implement** [3] - 10:25, 25:7, 34:19
**implementation** [8] - 11:4, 25:4, 41:2, 43:14, 54:4, 54:23, 74:1
**implementations** [4] - 25:7, 36:23, 41:17, 53:22
**implemented** [6] - 36:18, 38:21, 41:18, 53:23, 54:1, 54:3
**importantly** [1] - 42:14
**imported** [1] - 76:15
**inclined** [1] - 84:21
**include** [3] - 23:25, 58:3, 58:4
**includes** [4] - 23:12, 23:13, 36:25, 76:2
**incorporated** [3] - 27:2, 30:22, 30:25
**incorporating** [1] - 81:25
**incorrect** [2] - 11:25, 19:10
**increment** [1] - 6:24
**incremental** [15] - 5:19, 17:13, 18:9, 22:19, 24:18, 25:13, 26:12, 29:20, 31:10, 31:13, 31:18, 32:2, 33:25, 43:22, 71:5
**incrementally** [3] - 18:8, 25:15, 77:10
**independent** [4] - 20:3, 21:24, 34:22, 76:11
**independently** [1] - 17:21
**indicate** [2] - 21:20, 35:8
**indicated** [2] - 36:20, 74:15
**indicating** [2] - 23:6, 28:10
**indication** [1] - 47:13
**indiscernible** [2] - 15:18, 74:16
**indiscernible)** [1] - 40:14
**individual** [1] - 73:20
**information** [4] - 8:1, 39:23, 65:11, 81:3
**informs** [1] - 32:3
**infringement** [2] - 52:6, 63:5
**initial** [1] - 51:12
**input** [61] - 5:23, 12:7, 12:20, 12:21, 14:17, 19:22, 21:5, 21:17, 22:2, 22:21, 23:9, 23:11, 23:13, 23:22, 23:23, 23:24, 23:25, 24:3, 24:5, 24:12, 24:21, 29:8, 29:9, 30:9, 34:3, 37:8, 39:17, 39:20, 42:2, 42:15, 43:6, 43:15, 43:20, 43:21, 44:19, 44:25, 49:19, 50:11, 51:12, 52:18, 61:7, 61:8, 61:24, 61:25, 72:14, 73:3, 73:10, 73:15, 73:19, 73:22, 74:1, 74:2, 74:3, 74:20, 76:2, 77:3, 77:18, 78:7
**inputs** [6] - 23:25, 24:1, 30:4, 49:18, 49:19, 49:20
**inquire** [1] - 80:14
**insert** [2] - 70:8

**inside** [7] - 23:7, 26:21, 32:24, 33:1, 35:18, 44:6, 44:11
**instance** [6] - 15:2, 46:7, 80:19, 84:23, 85:15, 85:17
**instant** [1] - 74:9
**instead** [6] - 22:22, 36:23, 51:7, 73:7, 74:16, 78:7
**instruction** [7] - 4:5, 27:1, 35:8, 36:21, 65:5, 75:22, 82:24
**instructions** [12] - 4:3, 4:14, 4:15, 4:19, 21:19, 31:5, 31:7, 63:3, 63:8, 63:10, 83:2, 83:15
**Intel** [6] - 12:24, 66:6, 79:23, 82:24, 85:3, 86:1
**Intel's** [2] - 53:6, 84:11
**intended** [1] - 69:2
**intent** [1] - 69:5
**intention** [1] - 22:7
**interim** [5] - 22:9, 26:2, 47:15, 48:4, 77:4
**introduce** [1] - 65:3
**invalid** [1] - 82:25
**invalidity** [5] - 4:15, 4:19, 47:5, 71:20, 82:22
**invention** [1] - 31:3
**inventor** [1] - 31:3
**invite** [2] - 6:9, 55:23
**involve** [1] - 70:15
**involves** [1] - 37:21
**irrelevant** [2] - 38:17, 39:22
**issue** [24] - 5:6, 5:8, 5:24, 13:1, 16:3, 18:17, 27:4, 32:18, 32:21, 33:11, 35:23, 35:24, 37:10, 44:25, 45:1, 45:12, 65:15, 65:20, 66:9, 66:13, 78:17, 83:24, 85:23, 86:2
**issued** [1] - 83:24
**issues** [8] - 5:11, 65:13, 65:19, 66:21, 68:8, 85:2, 85:3, 85:25
**items** [3] - 4:23, 63:19, 79:10
**iteration** [8] - 6:25, 8:15, 20:18, 24:21, 30:8, 31:20, 32:16, 53:6
**iterations** [4] - 7:6, 7:14, 20:22, 21:4
**iterative** [1] - 47:10
**itself** [5] - 7:12, 28:15, 49:5, 71:8, 76:17

## J

**JACKSON** [1] - 86:20
**Joffre** [14] - 11:21, 11:22, 35:21, 44:1, 45:2, 61:2, 71:12, 71:13, 72:17, 72:24, 75:8, 76:20, 77:14, 78:14
**JOFFRE** [66] - 12:1, 12:17, 12:23, 13:6, 13:14, 14:2, 14:23, 15:5, 15:11, 16:3, 16:11, 35:24, 36:14, 37:23, 38:9, 38:22, 39:2, 39:6, 39:15, 39:18, 39:20, 40:1, 40:8, 44:4, 44:9, 44:11, 44:21, 45:13, 45:17, 45:24, 46:5, 46:16, 46:25, 47:2, 47:17, 47:19, 47:22, 47:24, 48:7, 48:11, 48:13, 49:11, 49:14, 50:2, 50:10, 50:13, 50:16, 51:24, 52:20, 53:3, 53:18, 54:11,

61:5, 61:13, 63:11, 71:14, 72:19, 72:25, 73:3, 73:17, 75:9, 76:22, 77:16, 78:1, 78:3, 78:15
**jointly** [1] - 82:17
**Judge** [5] - 80:19, 80:20, 81:9, 84:23
**jurors** [1] - 81:19
**jurors'** [1] - 80:14
**jury** [7] - 57:1, 80:5, 80:10, 80:15, 81:24, 82:23, 83:2

## K

**keep** [1] - 24:15
**key** [1] - 6:18
**kind** [3] - 56:8, 59:8, 70:16
**known** [5] - 7:23, 9:19, 47:8, 51:15, 58:5

## L

**labeled** [3] - 42:22, 43:4, 44:8
**lack** [2] - 65:1, 73:11
**lane** [2] - 59:19, 59:25
**lanes** [2] - 59:22, 59:24
**language** [35] - 4:7, 7:1, 10:20, 14:10, 15:10, 16:22, 19:13, 20:23, 21:17, 22:9, 23:3, 28:15, 40:17, 41:8, 48:16, 48:20, 49:1, 49:5, 57:11, 58:7, 58:16, 63:6, 68:16, 70:18, 71:16, 71:23, 72:7, 75:23, 76:8, 76:10, 76:16, 77:8, 77:13, 81:25, 82:4
**large** [4] - 18:24, 18:25, 24:8, 26:10
**largely** [1] - 6:1
**larger** [5] - 6:5, 6:12, 9:23, 69:3, 74:15
**last** [9] - 6:25, 11:11, 19:21, 20:18, 21:22, 25:1, 40:19, 44:2
**layer** [2] - 9:21, 9:22
**least** [1] - 68:21
**leave** [1] - 75:2
**leaving** [1] - 19:2
**left** [2] - 10:23, 73:14
**left-hand** [1] - 10:23
**less** [1] - 15:16
**lesser** [3] - 65:6, 78:7, 79:23
**letting** [1] - 59:22
**level** [2] - 55:10, 79:12
**licenses** [3] - 65:3, 65:6, 65:24
**lie** [2] - 11:4, 11:5
**lies** [5] - 13:6, 44:6, 44:11, 52:9, 61:22
**limitation** [1] - 54:16
**limited** [6] - 6:11, 25:24, 58:3, 58:13, 66:10, 66:17
**limits** [1] - 74:23
**line** [20] - 7:21, 14:4, 18:22, 23:6, 23:9, 23:11, 23:20, 23:25, 25:5, 29:9, 30:9, 36:16, 37:6, 41:10, 41:12, 41:13, 42:17, 53:20, 57:12, 57:13
**lined** [1] - 59:20
**lines** [7] - 36:22, 38:4, 38:5, 38:9, 39:8,

73:22, 73:25
**List** [2] - 82:2, 82:8
**list** [3] - 7:21, 9:17, 39:6
**listed** [2] - 25:9, 56:3
**literally** [1] - 59:10
**live** [2] - 65:17, 85:1
**living** [2] - 80:23, 80:25
**look** [28] - 6:18, 7:17, 9:16, 10:16, 11:11, 18:18, 21:18, 23:2, 25:5, 27:8, 31:7, 31:14, 37:24, 42:4, 42:11, 43:12, 57:3, 57:22, 62:16, 63:20, 63:24, 64:7, 64:22, 67:18, 73:13, 74:18, 74:19, 82:18
**looked** [1] - 78:23
**looking** [5] - 17:15, 24:22, 42:6, 42:7, 76:6
**loop** [1] - 47:11
**lunch** [1] - 64:6

## M

**machine** [5] - 8:18, 22:14, 56:9, 60:14, 60:17
**main** [2] - 15:25, 32:4
**maintained** [1] - 36:1
**March** [1] - 86:17
**married** [1] - 80:23
**Marshall** [1] - 80:19
**math** [2] - 5:22, 51:4
**mathematical** [3] - 49:23, 49:24, 51:2
**mathematics** [2] - 5:22, 5:25
**matter** [4] - 26:1, 84:8, 84:20, 86:18
**matters** [1] - 85:1
**mean** [18] - 8:16, 15:6, 16:6, 16:11, 23:7, 25:22, 32:6, 32:10, 35:15, 48:14, 50:8, 51:22, 56:22, 57:4, 59:6, 64:25, 65:24, 71:8
**meaning** [4] - 9:4, 28:9, 76:15, 77:13
**means** [8] - 29:3, 35:13, 40:4, 53:12, 55:5, 56:17, 57:16, 57:18
**meant** [1] - 84:6
**meet** [3] - 16:22, 40:17, 52:12
**memory** [1] - 50:18
**mention** [1] - 27:10
**mentioned** [1] - 82:20
**mere** [2] - 35:11, 71:7
**merits** [1] - 5:9
**method** [5] - 21:22, 33:12, 33:15, 34:14, 36:12
**might** [10] - 10:17, 31:23, 35:22, 38:16, 44:12, 48:3, 55:21, 59:18, 79:23, 80:15
**mind** [3] - 31:3, 32:4, 86:2
**minor** [1] - 72:25
**minutes** [4] - 5:11, 64:5, 67:17, 67:20
**missed** [1] - 48:1
**missing** [1] - 48:6
**misstating** [1] - 26:4
**misunderstanding** [1] - 12:13
**misunderstood** [1] - 37:18
**modulo** [1] - 5:22

**moment** [4] - 4:21, 11:18, 67:18, 67:19
**moot** [4] - 65:8, 65:15, 66:21, 67:5
**morning** [1] - 64:16
**move** [7] - 6:17, 22:22, 31:14, 32:4, 44:2, 44:25, 76:23
**moves** [1] - 36:22
**moving** [2] - 33:8, 59:17
**MR** [223] - 4:25, 5:14, 6:8, 7:11, 7:15, 7:17, 7:20, 8:12, 8:14, 8:17, 8:23, 8:25, 9:10, 9:15, 10:3, 10:8, 10:14, 11:8, 11:16, 11:21, 12:1, 12:17, 12:23, 13:6, 13:14, 14:2, 14:23, 15:5, 15:11, 16:3, 16:11, 17:6, 17:9, 17:24, 18:12, 18:15, 18:18, 19:15, 19:20, 20:10, 20:12, 20:14, 20:21, 21:14, 22:12, 22:18, 23:18, 23:20, 25:1, 26:5, 26:25, 27:15, 27:18, 27:20, 27:25, 28:6, 28:8, 28:12, 29:2, 29:19, 29:22, 30:2, 30:15, 30:20, 30:24, 31:18, 32:10, 32:19, 33:17, 34:16, 35:24, 36:14, 37:23, 38:9, 38:22, 39:2, 39:6, 39:15, 39:18, 39:20, 40:1, 40:8, 40:24, 41:13, 41:15, 42:3, 42:7, 42:11, 42:18, 42:23, 43:1, 43:3, 43:10, 43:21, 44:4, 44:9, 44:11, 44:21, 45:3, 45:13, 45:17, 45:24, 46:5, 46:16, 46:25, 47:2, 47:17, 47:19, 47:22, 47:24, 48:7, 48:11, 48:13, 49:11, 49:14, 50:2, 50:10, 50:13, 50:16, 51:24, 52:20, 53:3, 53:18, 54:11, 54:21, 55:8, 55:23, 56:14, 56:20, 56:22, 57:2, 57:9, 57:15, 57:18, 57:21, 57:25, 58:22, 59:1, 59:4, 60:8, 60:12, 60:22, 60:25, 61:5, 61:13, 62:6, 62:13, 63:11, 63:13, 65:11, 65:16, 66:2, 66:12, 66:15, 66:22, 66:25, 67:4, 67:8, 67:13, 67:14, 67:20, 67:23, 68:18, 69:15, 69:20, 69:24, 70:7, 70:19, 71:12, 71:14, 71:25, 72:9, 72:12, 72:19, 72:21, 72:25, 73:3, 73:17, 74:8, 74:25, 75:5, 75:9, 75:13, 75:21, 76:9, 76:22, 77:7, 77:16, 77:24, 78:1, 78:3, 78:11, 78:15, 78:21, 79:1, 79:5, 79:13, 79:17, 80:1, 80:6, 80:7, 80:12, 80:18, 81:9, 81:15, 81:20, 81:21, 82:7, 82:14, 83:9, 83:12, 83:21, 84:3, 84:8, 84:15, 84:18, 84:19, 85:14, 85:21, 85:25, 86:5, 86:11, 86:12
 **multiple** [6] - 16:7, 44:22, 58:14, 59:16, 60:2, 77:12
 **Multiple** [1] - 36:17
 **must** [2] - 13:18, 58:2

**N**

**narrowed** [1] - 45:6
**narrowing** [1] - 47:24
**near** [3] - 7:18, 17:10, 18:21
**necessarily** [4] - 29:3, 31:22, 62:18, 77:21
**necessary** [2] - 19:25, 43:22
**need** [21] - 5:6, 14:13, 16:19, 24:13, 28:5, 30:7, 45:1, 48:21, 53:7, 54:15,

58:2, 58:15, 67:15, 67:16, 70:8, 76:5, 76:17, 79:14, 80:9, 83:17, 85:6
 **needed** [1] - 6:3
 **needing** [1] - 74:17
 **needs** [6] - 28:13, 28:15, 28:16, 28:17, 58:8, 58:9
 **network** [5] - 9:20, 22:3, 26:10, 73:14, 73:15
 **new** [3] - 4:18, 4:21, 83:18
 **next** [8] - 6:21, 7:2, 15:19, 22:23, 24:13, 31:22, 38:22, 64:23
 **nice** [1] - 52:3
 **nonetheless** [1] - 37:20
 **nothing** [2] - 81:2, 84:16
 **notice** [1] - 23:8
 **noting** [1] - 17:12
 **notion** [1] - 62:21
 **Number** [5] - 6:2, 6:5, 75:11, 77:18, 78:12
 **number** [10] - 6:12, 6:15, 7:3, 15:17, 19:1, 46:12, 46:20, 55:1, 74:11, 78:8
 **Numbers** [1] - 65:25
 **numbers** [1] - 6:15
 **numerical** [1] - 18:25

**O**

**object** [6] - 63:20, 68:11, 71:19, 77:24, 78:1, 81:16
 **objection** [16] - 63:9, 63:13, 71:16, 72:1, 72:7, 75:21, 76:7, 76:18, 76:24, 77:7, 77:15, 77:16, 77:23, 78:9, 78:12, 85:11
 **objections** [14] - 4:2, 4:9, 4:11, 63:21, 64:8, 64:10, 64:14, 68:13, 68:19, 70:3, 72:2, 72:19, 75:11, 76:20
 **obvious** [1] - 68:6
 **obviously** [3] - 5:21, 62:9, 68:7
 **obviousness** [1] - 83:5
 **occurs** [1] - 17:22
 **offer** [3] - 84:21, 84:24, 85:15
 **old** [3] - 59:6, 59:9
 **old-old** [1] - 59:9
 **once** [22] - 9:8, 10:13, 11:15, 12:2, 13:5, 13:13, 15:17, 25:12, 25:18, 25:24, 46:11, 46:18, 50:5, 51:22, 52:5, 52:15, 53:8, 53:17, 55:19, 56:12, 59:24, 68:9
 **one** [101] - 4:4, 4:11, 6:10, 7:22, 8:14, 8:15, 8:16, 8:25, 9:5, 9:6, 9:22, 11:1, 11:6, 11:18, 13:8, 16:7, 16:10, 21:2, 21:10, 22:6, 22:12, 24:9, 24:20, 24:21, 25:10, 28:24, 29:3, 33:2, 35:4, 35:7, 35:9, 36:4, 36:16, 37:1, 37:8, 37:10, 40:9, 42:20, 47:12, 49:21, 49:22, 50:16, 50:22, 50:23, 51:7, 51:10, 52:7, 53:18, 53:20, 54:6, 54:17, 54:25, 55:2, 57:18, 57:21, 58:11, 58:22, 58:24, 59:10, 59:12, 59:20, 59:25, 60:21, 61:4, 61:8, 62:2, 62:6, 62:10, 62:17, 66:11, 67:9, 68:20, 69:10, 69:14, 69:21, 69:22, 70:2,

72:10, 72:11, 72:13, 72:18, 72:20, 72:25, 73:25, 74:12, 75:3, 75:4, 75:5, 75:7, 76:24, 78:4, 78:7, 79:23, 83:4, 84:12, 84:19, 84:20, 86:1, 86:9
 **Operand** [1] - 31:8
 **operate** [1] - 24:7
 **operates** [1] - 18:23
 **operation** [21] - 5:20, 14:3, 14:6, 14:10, 15:21, 18:23, 20:4, 21:21, 23:22, 35:10, 36:4, 36:5, 36:7, 36:20, 40:3, 76:2, 76:3, 77:5, 77:22
 **operations** [5] - 21:20, 31:5, 32:3, 36:17, 39:9
 **opined** [1] - 79:13
 **opines** [1] - 11:3
 **opinions** [1] - 79:19
 **opportunity** [2] - 63:23, 64:7
 **opposed** [2] - 33:13, 42:2
 **optional** [1] - 8:2
 **order** [14] - 15:19, 19:25, 31:18, 43:22, 54:14, 61:7, 61:8, 64:4, 64:8, 64:10, 68:4, 78:17, 83:25, 84:1
 **orders** [4] - 63:24, 64:16, 65:16, 78:18
 **ordinary** [3] - 35:17, 65:6, 79:22
 **organized** [1] - 28:22
 **original** [1] - 19:5
 **otherwise** [5] - 21:1, 40:17, 58:5, 70:25, 79:15
 **ought** [1] - 81:8
 **outcome** [1] - 71:6
 **output** [15] - 30:2, 30:3, 34:1, 39:20, 49:18, 70:10, 70:11, 70:22, 70:24, 71:5, 71:7, 71:17, 74:20, 75:19, 77:2
 **outputs** [1] - 23:23
 **outside** [9] - 11:4, 11:5, 26:18, 33:2, 35:19, 45:10, 45:11, 71:8
 **own** [4] - 28:16, 28:18, 76:12, 76:13

**P**

**package** [1] - 77:21
 **packet** [21] - 9:8, 10:12, 11:14, 12:2, 12:21, 13:1, 13:5, 18:5, 20:8, 20:19, 21:10, 22:13, 22:22, 25:17, 26:10, 26:15, 55:18, 60:15, 62:8, 62:22
 **packets** [10] - 7:25, 8:2, 18:8, 24:7, 25:11, 25:14, 31:11, 55:15, 61:22, 69:3
 **page** [4] - 11:20, 37:24, 38:22, 55:25
 **paragraph** [3] - 11:11, 19:8, 52:8
 **parallel** [69] - 8:22, 9:5, 11:15, 16:5, 16:6, 16:8, 16:12, 16:14, 16:16, 16:21, 16:25, 25:4, 25:8, 41:17, 41:18, 48:8, 48:14, 48:17, 48:18, 48:23, 49:3, 49:6, 51:9, 51:10, 51:15, 51:18, 51:20, 52:2, 52:3, 52:7, 52:10, 52:11, 52:15, 52:16, 52:18, 52:25, 53:10, 53:14, 53:19, 53:23, 54:1, 54:2, 54:4, 54:16, 54:23, 56:10, 56:17, 56:18, 57:6, 57:16, 57:20, 58:6, 58:10, 58:25, 59:12, 59:23, 59:24, 60:1, 60:6, 60:18, 61:7, 61:12, 61:15,

61:19, 61:25, 62:3, 62:15, 78:5
**parallelize** [1] - 59:21
**parenthetical** [1] - 73:24
**part** [11] - 10:16, 23:8, 26:23, 33:5, 38:5, 39:2, 39:5, 40:23, 45:6, 65:2, 85:11
  **partial** [1] - 77:4
  **partially** [1] - 66:3
  **particular** [8] - 7:25, 8:3, 32:23, 33:12, 35:6, 36:20, 75:22, 81:2
  **particularly** [2] - 4:15, 20:25
  **parties** [9] - 12:11, 12:19, 15:8, 16:1, 28:19, 63:1, 79:11, 84:20, 84:24
  **parts** [2] - 29:22, 68:11
  **party** [1] - 85:7
  **passage** [3] - 25:2, 54:22, 57:4
  **passes** [1] - 41:22
  **patent** [32] - 7:18, 9:2, 9:17, 10:6, 10:16, 10:22, 11:2, 18:22, 19:9, 19:19, 19:20, 22:5, 25:10, 25:24, 26:20, 27:18, 27:19, 31:14, 34:14, 35:1, 35:5, 37:10, 37:15, 39:7, 42:5, 42:12, 45:25, 46:16, 56:3, 70:20, 75:17, 75:18
  **patent's** [1] - 25:20
  **patentee** [1] - 32:3
  **patents** [5] - 7:2, 27:7, 27:13, 30:18, 46:15
  **path** [3] - 29:10, 70:11, 70:24
  **paths** [5] - 38:2, 38:3, 70:22, 71:18, 75:20
  **pathway** [8] - 33:23, 35:12, 35:15, 42:1, 42:2, 43:8, 43:10, 44:20
  **pathways** [7] - 34:23, 37:22, 39:1, 39:13, 40:22, 42:17
  **pause** [1] - 40:18
  **pay** [1] - 59:7
  **PCs** [1] - 59:7
  **people** [1] - 34:24
  **perfectly** [1] - 71:22
  **perform** [8] - 21:21, 36:3, 36:5, 36:7, 40:3, 40:10, 46:13, 76:1
  **performed** [3] - 14:11, 33:15, 76:3
  **performing** [1] - 77:22
  **performs** [3] - 23:22, 26:7, 35:9
  **perhaps** [2] - 15:25, 65:5
  **period** [2] - 74:16, 74:18
  **person** [3] - 35:17, 79:15, 79:22
  **pertain** [1] - 10:20
  **phase** [3] - 68:16, 72:3
  **pick** [1] - 41:7
  **piece** [1] - 52:11
  **pieces** [2] - 34:10, 51:18
  **pipelined** [1] - 8:18
  **place** [2] - 53:18, 53:20
  **placed** [1] - 70:25
  **places** [2] - 18:20, 50:21
  **plainly** [1] - 57:4
  **plaintiff** [4] - 5:1, 18:1, 65:2, 84:16
  **Plaintiff's** [1] - 66:4
  **plaintiffs** [1] - 67:21

**plan** [1] - 83:15
**pleases** [1] - 11:21
**plurality** [3] - 21:21, 70:20, 75:18
**point** [28] - 6:10, 6:18, 9:6, 11:8, 13:16, 14:7, 15:12, 16:1, 16:8, 17:3, 23:2, 24:25, 25:1, 39:22, 40:1, 40:14, 40:19, 44:3, 45:3, 46:6, 47:12, 49:4, 53:6, 57:11, 58:22, 61:13, 79:2
  **pointed** [3] - 41:1, 47:7, 56:14
  **pointing** [2] - 21:15, 33:19, 47:4
  **points** [3] - 9:7, 25:5, 25:16
  **polynomial** [23] - 5:23, 6:4, 7:24, 12:8, 14:18, 17:15, 17:17, 18:9, 19:1, 19:2, 19:21, 21:6, 22:21, 24:22, 28:17, 28:18, 31:19, 36:18, 51:3, 76:4, 76:13, 76:14, 77:4
  **polynomials** [16] - 7:21, 9:17, 9:19, 14:11, 25:9, 25:11, 26:8, 28:19, 28:23, 37:1, 37:2, 37:9, 37:12, 39:10, 56:2, 76:12
  **port** [1] - 59:8
  **portion** [9] - 8:1, 10:24, 14:3, 18:2, 24:5, 24:12, 41:1, 41:3, 42:1
  **portions** [1] - 23:13
  **ports** [1] - 59:12
  **position** [4] - 16:17, 16:18, 33:6, 80:11
  **possible** [2] - 7:13, 73:25
  **possibly** [1] - 85:14
  **posted** [2] - 64:16, 64:18
  **potential** [1] - 86:2
  **potentially** [1] - 36:17
  **PowerPoint** [1] - 5:17
  **practical** [1] - 56:7
  **precisely** [1] - 62:18
  **precluding** [1] - 69:1
  **predicate** [1] - 85:10
  **preface** [2] - 17:12, 28:12
  **preference** [2] - 84:22, 85:8
  **preliminary** [4] - 4:3, 63:3, 63:7
  **prepared** [1] - 33:17
  **presented** [2] - 34:11, 65:12
  **pretty** [1] - 10:11
  **previous** [1] - 46:17
  **primarily** [1] - 52:6
  **principal** [1] - 57:2
  **principles** [1] - 5:25
  **printed** [1] - 5:17
  **printer** [1] - 59:9
  **problem** [5] - 11:9, 21:15, 81:5, 83:7, 85:19
  **procedure** [1] - 84:20
  **proceed** [1] - 6:23
  **proceedings** [2] - 86:14, 86:18
  **proceeds** [2] - 19:6, 77:10
  **process** [25] - 6:24, 8:22, 9:7, 9:25, 12:2, 13:5, 21:11, 24:13, 52:15, 52:18, 55:13, 56:18, 58:14, 59:21, 60:6, 61:3, 61:7, 61:12, 61:19, 62:9, 62:14, 62:20, 62:22, 69:12, 69:13
  **processed** [5] - 10:13, 11:1, 11:15,

26:14, 58:15
  **processing** [10] - 20:19, 45:22, 52:16, 55:5, 58:24, 59:16, 60:2, 60:19, 69:10, 78:6
  **processor** [15] - 8:10, 8:21, 13:12, 61:11, 69:1, 71:1, 73:7, 73:12, 73:14, 73:15, 74:10, 74:22, 74:23, 77:19, 77:20
  **processor's** [1] - 73:5
  **processors** [1] - 28:22
  **produce** [1] - 62:2
  **produced** [2] - 21:4, 47:13
  **produces** [2] - 20:16, 20:17
  **proffer** [1] - 85:12
  **proof** [3] - 84:21, 84:24, 85:16
  **proposal** [1] - 71:19
  **propose** [6] - 68:12, 68:17, 70:3, 72:7, 72:16, 72:22
  **proposed** [7] - 4:4, 4:19, 63:6, 69:16, 70:5, 82:4, 83:20
  **proposing** [3] - 68:22, 69:19, 70:18
  **protocol** [1] - 7:11
  **protocols** [9] - 7:24, 8:3, 25:17, 26:9, 26:10, 31:11, 56:2, 56:8, 60:16
  **provide** [1] - 40:11
  **provisional** [17] - 9:1, 26:25, 27:3, 27:8, 27:24, 28:2, 29:1, 29:2, 30:12, 30:13, 30:17, 30:25, 31:4, 31:10, 31:13, 34:25, 36:9
  **purpose** [3] - 56:7, 66:10, 66:17
  **purposes** [2] - 38:17, 84:22
  **push** [1] - 54:14
  **pushing** [1] - 50:25
  **put** [14] - 13:7, 13:17, 15:12, 17:18, 28:1, 41:21, 46:20, 50:4, 50:16, 50:17, 61:25, 73:7, 80:17, 81:18
  **putting** [1] - 36:9
  **puzzle** [1] - 34:10

**Q**

  **qualifies** [2] - 19:18, 33:4
  **qualify** [6] - 19:8, 19:23, 22:5, 22:20, 77:12
  **questionnaire** [1] - 80:15
  **questions** [8] - 63:25, 78:24, 79:1, 79:7, 80:9, 80:11, 80:13, 80:17
  **quickly** [5] - 48:8, 51:4, 52:1, 52:4, 67:19
  **quite** [4] - 20:12, 71:18, 74:13, 79:6

**R**

  **raise** [1] - 84:13
  **rather** [9] - 5:8, 8:1, 27:9, 36:12, 38:5, 44:17, 54:9, 56:18, 63:22
  **reach** [15] - 11:4, 11:5, 26:18, 26:19, 26:21, 32:24, 33:1, 33:8, 33:9, 35:18, 56:6, 58:19, 62:23, 71:2, 71:8
  **reaction** [1] - 74:7

**read** [13] - 9:12, 21:1, 27:10, 33:2, 55:24, 64:15, 68:23, 68:24, 69:16, 72:13, 75:15, 77:1, 79:7
**reading** [10] - 37:5, 49:5, 54:1, 69:6, 71:1, 73:4, 75:6, 75:25, 77:18, 78:4
**Reading** [1] - 77:1
**reads** [1] - 47:6
**ready** [1] - 31:25
**real** [1] - 25:23
**really** [2] - 65:17, 81:2
**reargue** [1] - 68:7
**reargument** [1] - 68:19
**reason** [13] - 9:16, 10:9, 24:4, 24:5, 34:18, 40:5, 43:11, 45:15, 50:4, 54:11, 61:14, 73:9, 73:11
**reasons** [1] - 19:11
**received** [2] - 4:2, 4:9
**recent** [1] - 62:7
**recess** [1] - 64:1
**Recess** [2] - 64:2, 68:1
**recesses** [1] - 4:12
**recommend** [2] - 73:5, 73:6
**reconfigure** [1] - 40:10
**record** [6] - 64:11, 68:13, 75:11, 75:16, 77:1
**recording** [1] - 86:18
**reduced** [1] - 49:24
**redundancy** [1] - 76:1
**refer** [2] - 28:9, 75:24
**reference** [12] - 11:10, 20:25, 22:25, 23:16, 24:10, 27:2, 27:24, 30:20, 31:1, 31:9, 83:1, 83:4
**references** [1] - 83:6
**referred** [3] - 17:16, 49:12, 73:24
**referring** [5] - 10:15, 10:23, 24:6, 42:1, 54:22
**refers** [1] - 18:4
**reflected** [2] - 27:12, 56:2
**regard** [1] - 17:25
**register** [14] - 12:5, 12:16, 15:25, 30:7, 32:14, 34:1, 50:17, 50:20, 70:11, 70:22, 70:24, 71:5, 71:7, 75:20
**registers** [6] - 38:23, 41:23, 42:13, 71:17, 74:20
**regression** [1] - 85:16
**related** [1] - 65:19
**relevant** [2] - 30:25, 31:13
**reliance** [1] - 30:12
**rely** [4] - 18:21, 65:3, 65:9, 65:23
**remainder** [31] - 6:15, 6:16, 6:19, 6:21, 6:22, 6:25, 7:4, 7:10, 7:16, 12:12, 14:6, 14:17, 14:22, 15:9, 17:15, 17:17, 17:20, 17:23, 19:12, 19:9, 19:14, 19:17, 20:6, 21:4, 24:11, 24:23, 45:10, 46:1, 77:3, 77:4
**remainders** [1] - 20:8
**remaining** [4] - 45:7, 66:13, 67:9, 70:14
**remember** [1] - 43:11
**repeat** [2] - 6:24, 82:8
**report** [6] - 9:13, 11:3, 52:6, 65:9,

**reports** [1] - 36:2
**require** [5] - 25:12, 54:23, 69:9, 69:13, 79:1
**required** [1] - 32:20
**requirement** [3] - 22:1, 76:3, 76:14
**requirements** [1] - 77:11
**requires** [2] - 36:3, 69:11
**reserving** [1] - 67:2
**residual** [2] - 24:12, 46:9
**residue** [5] - 15:18, 15:20, 17:16, 32:14, 32:15
**residues** [1] - 18:1
**resolve** [3] - 5:7, 18:17, 65:19
**resolves** [2] - 66:3, 66:11
**respect** [19] - 4:5, 4:10, 7:8, 17:22, 18:6, 18:14, 55:19, 65:7, 66:4, 66:8, 67:1, 67:6, 68:3, 72:11, 78:12, 83:4, 83:5, 85:16, 86:2
**respectfully** [1] - 80:22
**respectively** [1] - 39:10
**respond** [2] - 30:20, 71:22
**response** [3] - 40:21, 40:25, 45:2
**rests** [1] - 85:7
**result** [84] - 12:3, 12:5, 12:6, 12:9, 13:2, 13:8, 13:18, 13:21, 13:23, 14:6, 14:11, 14:14, 14:15, 15:1, 15:15, 15:18, 17:11, 19:3, 19:4, 19:8, 20:3, 20:5, 20:7, 20:16, 20:17, 20:22, 21:8, 21:23, 22:1, 22:3, 22:4, 22:5, 22:11, 22:13, 22:15, 24:19, 24:20, 25:25, 26:2, 30:6, 37:7, 38:24, 40:4, 40:9, 40:11, 45:21, 46:10, 46:17, 47:3, 47:5, 47:7, 47:8, 47:11, 47:14, 47:16, 47:18, 47:20, 47:21, 49:20, 50:7, 50:20, 51:1, 52:24, 53:12, 54:6, 54:17, 54:25, 61:6, 61:9, 61:24, 62:2, 65:4, 70:14, 70:25, 71:4, 77:2, 77:4, 77:22, 78:6
**results** [12] - 18:1, 18:10, 19:23, 19:24, 20:23, 22:9, 22:20, 23:23, 48:4, 61:23, 69:2, 77:12
**resume** [1] - 67:24
**retired** [2] - 80:24, 81:1
**retirement** [1] - 81:1
**review** [5] - 4:11, 67:16, 78:20, 78:25, 82:5
**revised** [2] - 82:21, 83:20
**revisions** [1] - 63:6
**right-hand** [2] - 42:14, 50:11
**RMR** [1] - 86:22
**RMR-CRR** [1] - 86:22
**road** [1] - 59:19
**RPR** [1] - 86:20
**RPR-CRR** [1] - 86:20
**ruling** [2] - 65:19, 67:6
**run** [4] - 9:3, 12:25, 15:15
**running** [1] - 20:4

**S**

**satisfactory** [1] - 84:25
**satisfies** [1] - 56:5
**satisfy** [1] - 58:16
**school** [1] - 6:14
**scope** [1] - 45:11
**screen** [2] - 80:17, 81:18
**second** [24] - 14:3, 28:5, 28:14, 28:17, 36:6, 36:7, 37:3, 37:13, 37:14, 40:11, 58:2, 68:9, 70:19, 72:10, 72:11, 72:13, 72:18, 75:17, 76:10, 76:13, 76:16, 76:23, 76:25, 85:5
**see** [22] - 4:6, 5:12, 11:20, 17:3, 21:15, 22:15, 29:24, 37:25, 38:10, 38:20, 39:8, 49:16, 50:11, 50:13, 50:22, 51:11, 53:21, 57:2, 63:24, 73:13, 78:18, 85:18
**seem** [8] - 4:16, 27:8, 28:25, 30:16, 32:17, 33:11, 36:10, 43:8
**segments** [1] - 12:22
**selected** [3] - 21:23, 23:21, 37:8
**send** [1] - 26:15
**sending** [1] - 22:13
**sense** [11] - 13:1, 27:10, 35:25, 38:17, 45:12, 46:3, 48:25, 56:6, 56:9, 60:7, 62:12
**sent** [3] - 18:5, 19:5, 19:10
**sentence** [1] - 38:20
**separate** [15] - 27:11, 27:24, 28:16, 28:20, 28:23, 36:19, 36:24, 36:25, 37:19, 44:15, 52:16, 70:21, 71:17, 75:19, 83:18
**separately** [1] - 44:16
**separation** [1] - 36:12
**serial** [41] - 11:1, 16:14, 16:20, 16:24, 25:4, 25:6, 41:2, 41:6, 41:11, 41:16, 41:22, 42:4, 43:14, 48:14, 48:19, 48:21, 49:2, 50:3, 51:5, 51:8, 51:14, 53:10, 53:11, 53:22, 53:24, 54:1, 54:12, 54:14, 57:5, 57:7, 57:14, 57:15, 57:18, 58:6, 58:11, 58:14, 59:2, 59:9, 61:15, 61:16, 78:5
**serially** [1] - 56:18
**series** [1] - 42:13
**set** [9] - 8:18, 9:3, 49:2, 51:10, 52:23, 68:7, 69:2, 69:10
**sets** [2] - 75:25, 81:24
**setting** [1] - 82:1
**settlement** [1] - 65:4
**several** [2] - 19:10, 56:1
**shape** [1] - 29:25
**share** [4] - 39:23, 70:22, 71:17, 75:19
**shared** [14] - 16:3, 23:11, 29:10, 33:5, 33:15, 33:20, 34:5, 38:17, 39:21, 42:17, 42:19, 43:8, 43:10, 44:12
**sharing** [26] - 27:4, 27:12, 29:1, 29:2, 29:3, 31:17, 32:9, 32:11, 32:12, 33:11, 33:14, 34:15, 34:22, 35:13, 35:14, 35:15, 35:22, 35:24, 36:12, 37:22, 38:3, 44:18, 44:19, 44:25, 48:5, 70:16

**sheer** [2] - 12:15, 15:24
**shift** [8] - 12:15, 15:24, 50:5, 50:6, 50:8, 50:19
**shifted** [1] - 50:23
**shorthand** [1] - 36:1
**show** [2] - 29:3, 44:18
**showing** [4] - 6:19, 10:19, 42:12, 43:4
**shown** [19] - 23:24, 26:24, 33:23, 36:15, 38:12, 38:15, 41:11, 41:16, 41:20, 44:6, 50:3, 50:17, 50:21, 51:6, 51:13, 52:5, 53:21, 53:24, 57:14
**shows** [7] - 24:17, 27:11, 29:1, 29:2, 29:7, 31:6, 38:23
**side** [5] - 4:18, 5:10, 10:24, 50:11, 73:14
**sideline** [1] - 13:2
**sides** [1] - 4:4
**sides'** [1] - 5:9
**similar** [2] - 27:2, 38:21
**simple** [4] - 5:18, 49:17, 49:23, 49:24
**simplified** [1] - 64:25
**simplify** [1] - 4:17
**simply** [9] - 9:25, 46:6, 47:3, 51:17, 58:14, 68:24, 70:23, 75:24, 81:11
**single** [13] - 18:24, 23:24, 24:3, 30:3, 34:1, 34:5, 36:24, 55:6, 59:19, 59:25, 62:14, 74:24, 80:4
**sit** [1] - 11:17
**situation** [1] - 59:15
**six** [1] - 6:11
**size** [3] - 73:4, 74:4, 77:19
**sizes** [2] - 25:17, 26:10
**skill** [5] - 20:24, 35:18, 79:12, 79:22, 79:23
**slide** [3] - 28:10, 42:6, 42:8
**Slide** [12] - 6:2, 6:9, 6:18, 6:23, 10:18, 10:19, 11:12, 27:22, 28:8, 40:22, 42:1
**slides** [1] - 37:24
**slightly** [4] - 55:10, 63:4, 63:6, 79:20
**slip** [1] - 74:15
**slow** [1] - 57:10
**small** [1] - 51:19
**smaller** [1] - 6:14
**snapshot** [1] - 74:17
**solely** [1] - 18:4
**sometimes** [2] - 5:22, 84:23
**somewhat** [2] - 4:16, 45:6
**sorry** [11] - 28:9, 38:7, 41:12, 42:8, 45:3, 66:7, 66:15, 71:13, 71:21, 75:5, 78:3
**sort** [3] - 21:12, 51:7, 53:8
**sound** [1] - 86:18
**sounds** [3] - 43:19, 71:20, 82:14
**SPEAKER** [4] - 5:2, 64:17, 64:20, 64:24
**specific** [9] - 15:12, 31:5, 57:11, 58:9, 70:18, 72:16, 72:22, 80:12, 83:2
**specifically** [3] - 15:12, 35:6, 46:7
**specification** [18] - 18:17, 20:23, 22:25, 23:12, 30:18, 32:5, 33:18, 34:9, 36:11, 37:21, 41:1, 53:16, 53:19, 54:22, 57:4,

58:12, 62:16, 69:7
**spouse** [3] - 80:25, 81:1
**stage** [1] - 46:2
**stand** [1] - 78:2
**standard** [3] - 80:16, 80:21, 81:10
**standing** [1] - 65:1
**stark** [1] - 47:7
**start** [5] - 27:15, 35:22, 61:21, 68:15, 84:1
**starting** [2] - 55:25, 75:12
**state** [19] - 7:1, 21:11, 23:14, 23:17, 24:1, 24:4, 24:10, 29:8, 29:14, 30:6, 30:8, 32:15, 41:21, 41:24, 43:16, 43:17, 76:5
**State** [1] - 31:9
**statement** [2] - 45:12, 46:3
**statements** [1] - 73:21
**step** [2] - 21:22, 39:21
**steps** [2] - 6:20, 68:3
**stick** [2] - 15:14, 21:9
**still** [3] - 30:23, 41:25, 59:15
**stipulated** [1] - 79:11
**stone** [14] - 11:3, 11:19, 11:24, 20:10, 20:15, 32:12, 32:22, 33:5, 33:19, 35:14, 55:14, 55:24, 60:8, 84:4
**Stone** [3] - 36:2, 52:6, 84:7
**stone's** [2] - 9:12, 56:20
**stone..** [1] - 84:9
**stored** [1] - 19:5
**storing** [1] - 30:6
**Stragent** [5] - 12:11, 63:4, 76:20, 79:18, 83:23
**Stragent's** [1] - 79:21
**stricken** [1] - 77:9
**strictly** [1] - 84:5
**strikes** [1] - 32:6
**structural** [1] - 52:22
**study** [1] - 78:22
**stuff** [1] - 38:16
**style** [11] - 22:24, 24:18, 25:13, 26:12, 26:17, 29:6, 29:20, 31:10, 31:14, 32:1, 43:22
**styles** [1] - 32:7
**subject** [1] - 78:11
**submit** [3] - 25:18, 80:12, 82:18
**submitted** [2] - 55:25, 80:10
**subsequently** [1] - 13:9
**substitute** [2] - 76:8, 76:9
**successive** [2] - 77:5, 77:11
**such-and-such** [1] - 83:6
**suffice** [1] - 16:22
**sufficient** [2] - 52:12, 52:17
**sufficiently** [1] - 30:17
**suggest** [5] - 35:1, 64:5, 64:8, 80:22, 82:11
**suggested** [5] - 9:1, 63:4, 72:5, 74:14, 81:10
**suggesting** [2] - 10:6, 18:9
**suggestions** [4] - 68:5, 72:11, 72:12, 75:7

**suggests** [3] - 33:13, 34:25, 45:15
**sum** [1] - 48:9
**supplemental** [3] - 9:12, 82:21, 83:15
**supplementing** [1] - 84:1
**suppose** [1] - 56:16
**supposed** [2] - 18:16, 83:3
**sustained** [1] - 85:11

**T**

**TAG** [1] - 65:19
**talks** [7] - 21:19, 22:10, 22:12, 25:15, 41:1, 41:4, 58:1
**taught** [2] - 21:6, 34:9, 35:16
**teaches** [4] - 26:20, 31:13, 35:6, 58:13
**teaching** [1] - 25:20
**teachings** [1] - 56:4
**technology** [1] - 27:7
**ten** [3] - 5:24, 63:17, 63:23
**tend** [1] - 27:6
**term** [1] - 31:6
**Terminology** [2] - 82:3, 82:10
**terms** [2] - 34:11, 72:6
**testifies** [1] - 85:7
**testify** [1] - 85:13
**testimony** [3] - 55:24, 62:24, 85:12
**THE** [222] - 4:1, 5:4, 6:6, 7:5, 7:13, 7:16, 7:19, 8:10, 8:13, 8:16, 8:21, 8:24, 9:6, 9:11, 10:1, 10:5, 10:11, 11:7, 11:13, 11:17, 11:23, 12:10, 12:18, 13:4, 13:12, 13:23, 14:21, 15:3, 15:6, 15:23, 16:9, 17:1, 17:8, 17:19, 18:11, 18:13, 18:16, 19:13, 19:19, 20:2, 20:11, 20:13, 20:20, 21:13, 22:8, 22:17, 23:16, 23:19, 24:24, 25:21, 26:23, 27:3, 27:17, 27:19, 27:23, 28:5, 28:7, 28:11, 28:25, 29:17, 29:21, 30:1, 30:11, 30:16, 30:22, 31:16, 32:6, 32:17, 33:10, 34:13, 35:20, 36:8, 37:17, 38:7, 38:19, 38:25, 39:4, 39:13, 39:17, 39:19, 39:24, 40:7, 40:18, 41:12, 41:14, 41:25, 42:6, 42:9, 42:16, 42:22, 42:24, 43:2, 43:7, 43:19, 43:24, 44:8, 44:10, 44:18, 44:24, 45:5, 45:16, 45:18, 45:25, 46:15, 46:23, 47:1, 47:15, 47:18, 47:20, 47:23, 48:1, 48:10, 48:12, 49:9, 49:12, 49:25, 50:8, 50:12, 50:15, 51:22, 52:13, 53:2, 53:15, 54:8, 54:19, 55:4, 55:21, 56:13, 56:16, 56:21, 56:25, 57:7, 57:14, 57:16, 57:20, 57:24, 58:20, 58:24, 59:3, 60:4, 60:10, 60:21, 60:23, 61:2, 61:10, 62:4, 62:11, 63:2, 63:12, 63:14, 64:3, 64:19, 64:21, 64:25, 65:15, 65:22, 66:7, 66:14, 66:16, 66:24, 67:1, 67:5, 67:9, 67:15, 67:22, 67:24, 68:2, 69:8, 69:18, 69:22, 69:25, 70:17, 71:10, 71:13, 71:24, 72:2, 72:10, 72:17, 72:20, 72:24, 73:2, 73:16, 74:6, 74:23, 75:2, 75:8, 75:10, 75:15, 76:5, 76:18, 76:23, 77:14, 77:17, 78:2, 78:4, 78:14, 78:16, 78:24, 79:3, 79:9, 79:14, 80:3, 80:8, 80:16,

81:5, 81:14, 81:17, 81:22, 82:9, 82:16, 83:11, 83:14, 83:22, 84:6, 84:10, 84:17, 85:10, 85:18, 85:23, 86:4, 86:7, 86:13
**theory** [1] - 18:2
**therefore** [4] - 9:24, 32:16, 34:5, 46:13
**they've** [1] - 37:25
**thinks** [1] - 81:4
**third** [1] - 72:20
**three** [3] - 19:12, 34:11, 63:19
**timing** [1] - 85:5
**today** [6] - 4:24, 59:6, 60:11, 73:10, 79:8, 86:6
**together** [17] - 10:17, 24:2, 24:14, 28:1, 29:9, 35:5, 52:23, 68:23, 68:24, 69:16, 72:13, 75:6, 80:4, 81:18, 82:4, 82:17, 83:20
**tomorrow** [4] - 4:20, 82:5, 82:19, 83:16
**TONYA** [1] - 86:20
**took** [2] - 41:3, 53:25
**top** [4] - 10:24, 19:11, 23:5, 30:4
**transcript** [2] - 79:15, 86:17
**transmission** [1] - 69:14
**transmit** [1] - 22:2
**transmitted** [1] - 14:5
**trapezoidal** [1] - 29:25
**travel** [2] - 29:15, 59:23
**treated** [1] - 17:21
**treating** [1] - 26:1
**trial** [1] - 67:3
**true** [4] - 37:23, 61:14, 65:10, 84:11
**try** [8] - 21:2, 49:10, 56:5, 56:6, 63:18, 63:20, 64:22, 72:4
**trying** [4] - 20:21, 32:22, 33:2, 33:12
**turn** [1] - 6:9
**turned** [2] - 53:25, 57:6
**turns** [2] - 51:1, 62:1
**twice** [1] - 57:10
**two** [40] - 5:9, 6:19, 6:23, 16:24, 18:19, 19:11, 23:12, 23:25, 24:1, 24:14, 26:4, 27:13, 29:22, 30:18, 32:7, 36:15, 40:2, 40:12, 40:14, 40:15, 40:24, 45:20, 49:2, 49:18, 49:19, 49:20, 51:17, 51:18, 53:5, 57:11, 58:15, 59:22, 63:24, 64:16, 65:17, 68:3, 68:20, 70:9, 80:3, 81:17
**typically** [2] - 24:7, 34:24

## U

**ultimately** [2] - 14:9, 20:16
**unclear** [2] - 73:6, 73:9
**under** [15] - 12:3, 14:9, 16:12, 19:19, 19:20, 20:4, 21:6, 46:15, 46:16, 48:15, 48:20, 63:4, 70:10, 70:14
**understood** [3] - 21:7, 37:17, 37:18
**UNIDENTIFIED** [4] - 5:2, 64:17, 64:20, 64:24
**unit** [1] - 18:23
**unnecessarily** [1] - 35:2
**up** [34] - 4:7, 6:13, 8:18, 9:3, 10:1, 10:4, 10:15, 25:24, 30:3, 31:6, 35:3, 35:25,

38:10, 41:7, 48:9, 49:2, 49:7, 51:10, 51:14, 52:7, 52:23, 53:8, 55:16, 59:12, 59:20, 69:2, 76:19, 78:2, 80:4, 81:18, 81:23, 82:4, 82:17
**update** [3] - 7:4, 29:16, 30:6
**useful** [2] - 5:15, 6:10
**uses** [1] - 76:4

## V

**value** [15] - 6:5, 6:20, 6:25, 14:16, 15:14, 18:4, 18:25, 19:1, 19:9, 24:1, 24:3, 26:15, 46:12, 47:13, 77:2
**values** [1] - 43:16
**varies** [1] - 80:18
**verdict** [3] - 4:22, 83:18, 83:20
**verdicts** [1] - 83:19
**versus** [2] - 16:7, 48:4
**view** [4] - 32:13, 47:15, 53:16, 66:6
**virtue** [2] - 54:5, 54:24
**voir** [1] - 80:10

## W

**wafers** [1] - 83:19
**wait** [1] - 38:19
**walk** [1] - 19:11
**walked** [1] - 56:1
**wants** [1] - 31:23
**ways** [2] - 34:20, 39:15
**weekend** [1] - 82:18
**weight** [1] - 65:6
**well-known** [4] - 7:23, 9:19, 47:8, 51:15
**whereas** [1] - 20:5
**whole** [8] - 9:8, 14:7, 15:16, 16:8, 40:1, 40:13, 49:4, 68:7
**wide** [4] - 8:7, 8:8, 9:2, 31:2
**wire** [3] - 59:11, 59:13, 59:14
**wired** [1] - 51:3
**witness** [3] - 85:1, 85:7, 85:13
**witness'** [1] - 85:12
**witnesses** [1] - 84:11
**wood** [1] - 84:9
**Woods** [2] - 83:25, 84:6
**word** [3] - 62:4, 73:7, 73:12
**worded** [1] - 62:17
**words** [2] - 32:21, 52:17
**world** [1] - 60:1
**writing** [1] - 85:19
**written** [3] - 32:14, 52:21, 84:24

## X

**XO** [2] - 49:12, 49:13
**XOR** [10] - 9:4, 16:20, 16:24, 48:17, 49:2, 49:14, 50:22, 54:3, 58:5

## Y

**you-all** [1] - 78:18

## Z

**zero** [7] - 13:24, 13:25, 14:6, 49:20, 49:21
**zones** [1] - 18:7